21 NOVEMEBR 2024

Case#

United States Court of Appeals for the District of Columbia

Mark Allan Edwards )

Petitioner )

)    Petition for Review

)    UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV 27 2024

RECEIVED

Postal Regulatory Commission, )

United States Post Office, )

Respondents )

Petition for Review of Postal Regulatory Commission's Orders #6688 issued 18 September 2023, #7552 issued 19 September 2024 and #7845 issued 30 October 2024 under PRC Docket#2023-6

Mark Allan Edwards

208 Celtic Lane

Clayton, GA 30525

wandyryr@aol.com

703-439-0949

Pro Se

## Table of Authorities

39 United States Code 3662(a)

39 United States Code 3663

39 United States Code 401(2)

39 United States Code 403(c)

Administrative Procedure Act

Postal Reorganization Act 1970 (In the record, Complainant's Opening Brief)

Postal Operations Manual

Rural Route Carrier's handbook PO-603

Postal Reorganization Act 1970 (In the record, Complainant's Opening Brief)

Eggers v USPS (436 F. Supp.138 (W.D. Va. 1977))

Chevron, U.S.A., INC., Petitioner, v. Natural Resources Defense Council, INC. (467 U.S. 837 104 S. Ct. 2778 81 L.Ed.2d 694 (In the record Complainant's Opening Brief)

## Table of Contents

Petition for Review of Postal Regulatory Commission's Orders 6688, 7552, 7845

Attachment 1 PRC Order 6688

Attachment 2 PRC Order 7552

Attachment 3 PRC Order 7845

## Abbreviations

USC – United States Code

APA - Administrative Procedure Act

PRC – Postal Regulatory Commission

USPS – United States Post Office

POM – Postal Operations Manual

Jurisdictional Statement: 39 USC 3663 states

"A person, including the Postal Service, adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission may, within 30 days after such order or decision becomes final, institute proceedings for review thereof by filing a petition in the United States Court of Appeals for the District of Columbia. The court shall review the order or decision in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, on the basis of the record before the Commission."

Under the APA and the statue above this court is expressly authorized to review the

PRC's final Order (7552 and 7845) and the corresponding record. Mark Edwards is

the owner of the home at 208 Celtic Lane, Clayton, GA and is the complainant

under PRC Docket 2023-6 for which PRC Orders 6688, 7552 and 7845 are issued.

These orders denied the Complainant's request for resumption of delivery of

oversized packages to his residence **not** in accordance with the USPS' Postal

Operations Manual paragraph 631.8 Correction of Improper mode of Delivery.

Statement of Issues and Case:

USPS, the defendant, stopped, without notice, delivery of oversized packages to the

Complainant's residence at 208 Celtic Lane, Clayton, Georgia on or about March

2022. The USPS stated it had provided this Mode of Delivery for over two years.

Mode of Delivery is defined under Postal Operations Manual 631.1 as delivery to a

point whether centralized, sidewalk, curbside or, in this case, door delivery. Once a mode of delivery is established or extended, even if improper, POM 631.8 states "In the event an improper mode of delivery is established or extended by a postal carrier or manager, the service will be withdrawn with a thirty (30) day advance notice to the affected customer(s), provided that the error is detected and the customer is notified within one (1) year. If the error is not detected and the customer is not notified within one (1) year of the date delivery is established or extended, **the improper service remains in place unless the customer consents to the delivery mode change**."

The Complainant attempted resolution in person with the local postal supervisor and current Post Master Colby Nichols, again via an USPS online complaint and through the PRC in April 2023 via PRC website and formally 30 June 2023 (PRC Docket 2023-6). In response to the original complaint the Post Master stated that the Complainant's home was over ½ mile from the mailbox and thus delivery of oversized packages was not allowed per the Rural Route carrier's Handbook PO-603 and that POM 631.8 did not apply. Safety was not mentioned as an issue at this time. In answering the PRC complaint on 7 April 2023, the USPS District Manager (Michelle Logan) for Georgia Consumer Affairs referred the matter back to the same Post Office for resolution information. Ms. Logan in her letter in response to the Petitioner conceded delivery of oversized packages to the Complainant's door "was

the established mode of delivery for a period of time" but "determined that your driveway is too narrow to permit a safe turnaround for the carrier", and this would explain why delivery to your door was "curtailed." The Clayton Post Master confirmed this mode of delivery was in effect for over two years. There was no mention of the distance away from the mailboxes or line of travel as being an issue in her letter. The Complainant's driveway has always had a dedicated turnaround spot for safety that is readily visible had a proper assessment of the driveway had been made.

The Complainant's formal complaint to the PRC in June 2023 alleging nonconformance standard under 39 USC 366(a), 39 USC 401(2) and 403(c) with the safety falsehood in the Clayton Post Master's driveway assessment as retaliation and undue discrimination against Complainant as there was another house over 1/2 mile from the carrier's route receiving oversized package delivery.

Under PRC Order 6688 the PRC dismissed the complainant's argument under 39 USC 401(2) and directed findings of facts under the 403(c)-discrimination argument.

The PRC too narrowly interpreted 39 USC 3662(a) as it applies to complaints under 39 USC 401(2). The Commission claims it only has jurisdiction under 401(2) in scenarios where the Postal Service "adopts, amends, or repeals" rules or regulations inconsistent with title 39. By this narrow standard the Commission effectively allows

the Postal Service to not operate in conformance to any of its regulations or requirements. 39 USC 3662(a) states:

"Any interested person (including an officer of the Postal Regulatory Commission representing the interests of the general public) who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter (or regulations promulgated under any of those provisions) may lodge a complaint with the Postal Regulatory Commission ..."

39 USC 3662a states that the Commission has jurisdiction over regulations promulgated under 39 USC 401(2). 39 USC 401(2) promulgates regulations "... as may be necessary to execute its functions under Title 39 and such other functions as may be assigned to the Postal Service under any provisions of law outside of Title 39." The Postal regulations contained in the POM are necessary to execute Postal functions under Title 39 and are therefore exactly those regulations referred to in 39 USC 401(2), in this case the requirements under POM 631.81. By the USPS not following POM 631.8 it is plainly "not operating in conformance" with regulations promulgated under 401(2).

PRC Order 6688 in addressing the Complaint under 39 USC 403(c) referred to Egger v USPS, 436 F. Supp.138 (W.D. Va. 1977) in resolving outstanding issues of fact required to resolve whether a violation of 39 USC 403(c) occurred. In Egger v USPS, an undergraduate student residing in Lambeth Field Apartments at the University of Virginia sued to start direct delivery to his apartments. Egger argued that a

structurally similar location, 583 Brandon Ave, had the same situation as his and was in violation of USPS policy. However, Egger v USPS states "When the Postal Service learned that the Brandon Avenue apartment complex was occupied solely by unmarried students, they suspended direct delivery and provided only delivery in bulk. However, the Postal Service eventually **resumed direct delivery to 583 Brandon Avenue in accordance with Postal Service policy that carrier service once extended, even if extended erroneously, will not be terminated**." The complainant's argument did not ask for a new or changed Mode of Delivery but rather resumption of an "Established Mode of Delivery" that already existed as was the case with 583 Brandon Avenue in Egger v USPS. The PRC directed a Presiding Officer to resolve two outstanding issues of fact necessary to resolve whether a violation of 39 USC 403(c) occurred as:

1. Whether any similarly situated postal customers in the Complainant's neighborhood are receiving delivery of oversized packages to their doors.

2. Whether postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to the Complainant's residence.

In his rationale for finding of fact #1, the Presiding Officer determined that the home the complainant identified, 565 Celestial Drive, as receiving oversized package delivery was .5 miles from the carrier's route. Not "within .5 miles" as is the standard in the Rural Route Carrier's handbook. He deemed the measurements "reasonable"

and that mathematically determining distance wasn't necessary. Ironically, by all distance evidence presented by both parties held the distance to be over .5 miles, albeit measured in tens of feet. Additionally the USPS at one point even told the owner of 565 Celestial Drive that her home was over .5 miles and wouldn't receive package delivery but changed its position with the Petitioner had packages delivered to that address.

The Presiding Officer for finding of fact #2 dismissed POM 631.8 entirely even though it was the very non-discriminatory processes necessary for this case "Correction of an Improper Mode of Delivery". The Presiding Officer only determined that following the Rural Route Carrier handbook .5 mile rule wasn't discriminatory.

In PRC orders 7552 and 7845, the PRC adopted all Presiding Officer's conclusions and recommendations and dismissed the Complaint's arguments and objections.

Argument and Relief.

The PRC, misinterprets 39 USC 3662(a) as it pertains to "regulations promulgated under any of those provisions", in this case regulations necessary for the 'operations' of Postal Service, specifically POM 631.8. These regulations promulgated must be reviewed by the "not in conformance" standard of 39 USC 3662(a) not the 401(2) "adopt, amend or repeal" standard. The USPS itself admittingly failed it obligations

under the Rural Route Carrier's .5 mile rule in delivering oversized packages to 208 Celtic Lane and did so for over two years invoking the POM 631.8 rule ("grandfathering"). Now by simply following the .5 mile rule the USPS is failing to conform to their own rule under POM 631.8.

Under the discrimination portion of the complaint the PRC is ignoring both objective fact, distance, for a subjective standard "reasonable" and the non-discriminatory process (POM 631.8) in correcting the improper mode of delivery. Under the 'reasonable' standard the Post Office has unfettered discretion to determine within or dismiss distances as they see fit and, in this case, they did both just to support their argument when it was convenient.

The Petitioner requests correction of the PRC's orders to the effect that the USPS, by writ of Mandamus, needs to comply with its own regulations under POM 631.8 and resume deliveries of oversized packages to 208 Celtic Lane, Clayton, Georgia.

This Petition complies with United States Court of Appeals for the District of Columbia Brief and Appendix Compliance checklist for Pro Se and Attorney filers and FRAP rules referenced therein. This Petition contains 1846 words.

Mark Allan Edwards

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV 27 2024

RECEIVED

Postal Regulatory Commission
Submitted 09/18/2023 10:45 AM
Filing ID: 126367
Accepted 9/18/2023
ORDER NO. 6688

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Before Commissioners: Michael Kubayanda, Chairman;
Mark Acton, Vice Chairman;
Ann C. Fisher;
Ashley E. Poling; and
Robert G. Taub

Complaint of Mark Allan Edwards    Docket No. C2023-6

ORDER PARTIALLY DENYING UNITED STATES POSTAL SERVICE'S
MOTION TO DISMISS AND NOTICE OF LIMITED FORMAL PROCEEDINGS

(Issued September 18, 2023)

I. INTRODUCTION

On July 7, 2023, Mark Allan Edwards (Complainant) filed a complaint pursuant to 39 U.S.C. §§ 3662(a), 401(2), and 403(c) with the Commission challenging the Postal Service's decision to terminate delivery of oversized packages to his front door.[1]  On July 27, 2023, the Postal Service filed a motion to dismiss the Complaint.[2]  Complainant did not respond to the Motion to Dismiss.

For the reasons discussed below, the Commission concludes that the Complaint raises material issues of fact, and therefore denies in part the Postal Service's Motion to

---

[1] Complaint of Mark Allan Edwards, July 7, 2023 (Complaint).  Citations to the Complaint will be to the page number of the PDF.

[2] United States Postal Service's Motion to Dismiss, July 27, 2023 (Motion to Dismiss).

Dismiss pursuant to 39 U.S.C. § 3662(b) and 39 C.F.R. § 3022.30(a)(1). Accordingly, the Commission appoints a presiding officer to set a procedural schedule and conduct limited discovery for the purpose of determining the disputed issues of fact in the case. 39 C.F.R. § 3030.21. The scope of the discovery proceeding will be limited only to fact-finding conducted by the presiding officer on the specific matters of fact identified in this order.

## II.    BACKGROUND

### A.    General Background

Complainant is an individual resident of Clayton, Georgia and resides in the Mountain Creek Estates housing development. Complaint at 2; Motion to Dismiss at 3. The approved method of delivery for Mountain Creek Estates is central delivery with cluster mailboxes located at the entrance of the community, which is more than one-half mile from Complainant's home. Complaint at 1; Motion to Dismiss at 3. The Complaint alleges that from December 2019 until March 2022, the Postal Service delivered oversized packages to his door, even though it was more than one-half mile away from the centralized mailbox location. Complaint at 1.

### B.    Federal Court Proceedings

After the Postal Service stopped delivery of oversized packages, Complainant filed suit in the Northern District of Georgia, and sought resumption of that delivery and alleged a violation of the Postal Operations Manual. Complaint, *Edwards v. United States Postal Service*, No. 2:22-CV-160-SCJ (N.D. Ga. Aug. 15, 2022); Amended Complaint by Court Order, *Edwards v. United States Postal Service*, No. 2:22-CV-160-SCJ (N.D. Ga. Dec. 15, 2022). The United States filed a Motion to Dismiss in which it argued that the district court lacked subject matter jurisdiction to consider the complaint because Complainant failed to identify a specific statute that expressly waived sovereign immunity and the complaint raised a service-related claim over which the

Docket No. C2023-6                    - 3 -                    Order No. 6688

Commission has exclusive jurisdiction.  Memorandum in Support of Defendant's Motion to Dismiss at 3-8, *Edwards v. United States Postal Service*, No. 2:22-CV-160-SCJ (March 6, 2023).  The motion to dismiss is pending before the district court.

### C.    Complaint

While his case was pending in federal district court, Complainant filed the Complaint with the Commission.  As noted above, he alleges that from December 2019 until March 2022, the Postal Service delivered oversized packages that would not fit into his mailbox to his door.  Complaint at 2.  The Complaint alleges that because the Postal Service delivered oversized packages to his door for over 2 years, it improperly changed that mode of delivery without his consent in violation of the Postal Operations Manual (POM) §§ 631.1 and 631.8 and 39 U.S.C. § 401(2).  *Id.* at 2-3.

The Complaint further asserts that Complainant was given inconsistent reasons for the change in the method of delivery.  *Id.* at 4-6.  First, he asserts, he was told the change was prompted by safety concerns in that his driveway was "'too narrow for a safe turnaround for the carrier.'"  *Id.* at 4-5.  Complainant then asserts that after he filed an informal complaint with the Commission, a letter carrier informed him that delivery of oversized packages to his door was discontinued because his home was too far from the central delivery point.  *Id.* at 5.  The Complaint alleges that this constituted improper retaliation.  *Id.* at 4-5.

Finally, the Complaint also alleges that because, currently, the Postal Service "delivers to homes on the first western circular road with the furthest home getting oversized package delivery just over 1/2 mile from the [cluster] mailboxes[,]" discontinuing delivery to Complainant's home, which is similarly situated to other homes that receive delivery of oversized packages, constitutes discrimination in violation of 39 U.S.C. § 403(c).  *Id.* at 4-6.  Complainant requests that the Commission order the Postal Service to resume delivery of oversized packages to his door as a remedy to this alleged discrimination.  *Id.* at 9-10.

### D.    Motion to Dismiss

In its Motion to Dismiss, the Postal Service asserts that the Commission lacks jurisdiction over the claims related to POM § 631.81 and retaliation because those claims do not fall under the enumerated bases for jurisdiction set forth in 39 U.S.C. § 3662(a).  Motion to Dismiss at 6-10.  While the Complaint references 39 U.S.C. § 401(2), which is an enumerated basis to bring a complaint, that statute applies only to scenarios where the Postal Service adopts, amends, or repeals rules or regulations inconsistent with title 39.  *Id.* at 8-9.  Since, according to the Postal Service, application of POM § 631.8, even if incorrect, does not involve the Postal Service "adopting, amending, or repealing" a rule or regulation in a manner that is inconsistent with title 39, the Commission lacks jurisdiction over the claim.  *Id.* at 9-10.

Regarding, the 39 U.S.C. § 403(c) discrimination claim, the Postal Service asserts that Complainant fails to state a claim for which relief may be granted.  *Id.* at 11-14.  For purposes of the Motion to Dismiss, the Postal Service accepted as fact that "customers in Mountain Creek Estates and elsewhere in Rabun County who live more than one-half mile from the carrier's line of travel or delivery route" receive delivery of oversized packages to their doors.  *Id.* at 12.  Still, the Postal Service argues, Complainant cannot succeed on a 39 U.S.C. § 403(c) claim because there is a rational and legitimate basis to deny the same delivery to Complainant – it "is contrary to section 331.21 of PO-603, which limits door delivery of oversized packages to residences and businesses 'on the line of travel, or within one-half mile of the route . . . .'"  *Id.* (quoting the Postal Service's Rural Carrier Duties and Responsibilities Handbook (PO-603) § 331.21).

## III.    COMMISSION ANALYSIS AND LIMITED DISCOVERY

The Commission finds that the pleadings raise issues of fact relevant to whether the actions or inactions of the Postal Service violate 39 U.S.C. § 403(c).  Viewed in the light most favorable to Complainant, the allegations in the Complaint may raise a cognizable claim of undue or unreasonable discrimination.  The Commission also

recognizes that the Postal Service has the legal obligation to "adopt, amend, and repeal such rules and regulations, . . . as may be necessary in the execution of its functions" under title 39.[3] Accordingly, the Commission's role in this inquiry is not to question that obligation, but to determine if the current postal policy, as applied to the Complainant, presents a potential violation of 39 U.S.C. § 403(c).[4]

### A.     Violations of POM § 631.8 and Retaliation

The Commission has jurisdiction over complaints that meet the statutory requirements of 39 U.S.C. § 3662(a).  Section 3662(a) permits any interested person, including the Public Representative, to file a complaint with the Commission if they believe the Postal Service is not operating in conformance with the requirements of 39 U.S.C. chapter 36; 39 U.S.C. §§ 101(d), 401(2), 403(c), 404a, or 601; or any regulations promulgated under any of these provisions.[5] Within 90 days after receiving a complaint under section 3662(a), the Commission must either (1) begin proceedings on the complaint upon finding that such complaint raises material issues of fact or law; or (2) issue an order dismissing the complaint.[6] The Commission must issue a written statement setting forth the bases of its determination.  39 U.S.C. § 3662(b)(1)(B).

The first two claims raised by Complainant are (1) that the Postal Service violated POM § 631.8 and (2) the Postal Service improperly retaliated against him for making a complaint after the Postal Service discontinued door delivery of oversized packages.  While the alleged violation of POM § 631.8 refers to 39 U.S.C. 401(2), which is an enumerated basis of the Commission's complaint jurisdiction, because

---

[3] *See* 39 U.S.C. § 401(2).

[4] The Commission's authority, should a complaint be justified, is to "order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance . . . ." *See* 39 U.S.C. § 3662(c).

[5] 39 U.S.C. § 3662(a); *see* 39 C.F.R. § 3022.2.  The Public Representative is an officer of the Commission representing the interests of the general public.  39 U.S.C. §§ 3662(a), 505.

[6] 39 U.S.C. § 3662(b)(1)(A); *see* 39 C.F.R. § 3022.30(a).

Complainant alleges that the Postal Service is violating a provision of the POM untethered to any statute or regulation, it fails to invoke the Commission's jurisdiction under 39 U.S.C. § 3662(a).

As the Postal Service argues, and the Commission has previously concluded,[7] the mere reference to 39 U.S.C. § 401(2) does not create a tether for jurisdiction over the claim because it applies only to scenarios where the Postal Service adopts, amends, or repeals rules or regulations inconsistent with title 39. Motion to Dismiss at 8-9. And because, as the Postal Service correctly argues, application of POM § 631.8, even if incorrect, does not involve the Postal Service "adopting, amending, or repealing" a rule or regulation in a manner that is inconsistent with title 39, *id.* at 9-10, the Commission lacks jurisdiction over the claim. Second, a claim for retaliation does not fall within any of the enumerated bases of the Commission's complaint jurisdiction as it does not implicate the requirements of 39 U.S.C. chapter 36; 39 U.S.C. §§ 101(d), 401(2), 403(c), 404a, or 601; or any regulations promulgated under any of these provisions.[8]

Complainant objects to the Postal Service's alleged noncompliance with its own regulations, not to the regulations themselves. Thus, the Complaint does not fall within the Commission's jurisdiction under 39 U.S.C. § 401(2) and neither of the first two claims are encompassed under the Commission's complaint jurisdiction. Therefore, the Postal Service's Motion to Dismiss is granted as to these two claims.

## B.    Undue Discrimination

Complainant's third claim alleges a potential violation of 39 U.S.C. § 403(c) because other similarly situated members of his community are receiving delivery of oversized packages to their doors. Complaint at 4-6. The Postal Service is prohibited

---

[7] *See* Docket No. C2015-1, Order Granting Motion to Dismiss, March 4, 2015, at 6-7 (Order No. 2377); Docket No. C2015-3, Order Dismissing Complaint, August 26, 2015, at 18 (Order No. 2687).

[8] 39 U.S.C. § 3662(a).

from making any undue or unreasonable discrimination among mail users. 39 U.S.C. § 403(c). When evaluating claims of discrimination among mail users, the Commission follows the guidance set forth in *Egger v. USPS*, 436 F. Supp. 138 (W.D. Va. 1977). In *Egger*, the district court held that it is "obvious that the Postal Service may provide different levels of delivery service to different groups of mail users so long as the distinctions are reasonable." *Egger*, 436 F. Supp. at 142. Thus, the Postal Service may differentiate among customers where the differences have a rational basis.[9]

Thus, in order to state a claim for a violation of 39 U.S.C. § 403(c), the Commission requires a complainant to plead three things: (1) the complainant is receiving less favorable services than those provided to one or more other postal customers, (2) the complainant is similarly situated to those postal customers receiving more favorable service, and (3) there is no rational or legitimate basis for denying the complainant the more favorable service currently being provided to those similarly situated postal customers.[10]

The Postal Service, solely for the purposes of the Motion to Dismiss, accepts that Complainant can meet the first two prongs. Motion to Dismiss at 12. The third prong of the test used to determine whether a 403(c) claim is actionable is that there is no rational or legitimate basis for the Postal Service to deny the Complainant the more favorable rates or terms and conditions offered to others.[11] The Postal Service argues that delivery to homes outside of the half-mile radius violates Postal Service policy, and that constitutes a legitimate basis for the Postal Service to deny Mr. Edwards more favorable rates, terms, or conditions offered to others. Motion to Dismiss at 12-13.

---

[9] *See* Docket No. C2015-2, Order Granting Motion to Dismiss, July 15, 2015, at 12 (Order No. 2585).

[10] *See* Docket No. C2020-2, Order Granting the Postal Service's Motion to Dismiss Complaint with Prejudice, April 28, 2020, at 8 (Order No. 5491) (citing Docket No. 2009-1, Order on Complaint, April 20, 2011, at 28 (Order No. 718)).

[11] Docket No. C2020-2, Order Granting the Postal Service's Motion to Dismiss Complaint with Prejudice, April 28, 2020, at 8 (Order No. 5491) (citing Docket No. 2009-1, Order on Complaint, April 20, 2011, at 28 (Order No. 718)).

The Commission finds that this argument ignores the fact that, if Complainant can meet the first two prongs of the test, it means that other customers are receiving those exact "rates or terms and conditions" in violation of Postal Service policy. Accepting the Postal Service's argument on this point would in effect request the Commission to ignore potential discrimination because its preferential treatment of other customers violates its own policies. Thus, the Commission finds the Postal Service's arguments on the Complaint's failure to state a claim unpersuasive. Therefore, the Postal Service's Motion to Dismiss is denied as it relates to the potential violation of 39 U.S.C. § 403(c) pursuant to 39 U.S.C. § 3662(b).

The outstanding issues of fact required to resolve whether a violation of 39 U.S.C. § 403(c) occurred are:

1.   Whether any similarly situated postal customers in Complainant's neighborhood are receiving delivery of oversized packages to their doors.

2.   Whether postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to Complainant's residence.

Pursuant to 39 C.F.R. § 3010.106, the Commission appoints John Avila to serve as presiding officer to ascertain outstanding issues of material fact in this matter. Parties may request that the presiding officer obtain specific discovery but may not independently propound discovery. The presiding officer shall examine the disputed issues identified above and provide a public, written intermediate decision including findings of fact and conclusions of law on the issues raised in this proceeding. 39 C.F.R. § 3010.335.

The Commission finds good cause to waive the appointment of an officer of the Commission designated to represent the interests of the general public in this proceeding as required by 39 C.F.R. § 30.30(c) because the violations alleged in the Complaint pertain solely to Complainant rather than the general public.

IV. ORDERING PARAGRAPHS

*It is ordered*:

1. The Commission finds that the Complaint of Mark Allan Edwards, filed July 7, 2023, raises material issues of fact.

2. The United States Postal Service's Motion to Dismiss the Complaint of Mark Allan Edwards, filed July 27, 2023, is granted on all grounds except for the claim related to the alleged violation of 39 U.S.C. § 403(c).

3. Pursuant to 39 C.F.R. § 3010.106, the Commission appoints John Avila as a presiding officer in this proceeding.

4. Parties may request that the presiding officer obtain specific discovery but may not independently propound discovery.

5. The presiding officer shall, pursuant to 39 C.F.R. § 3010.335, provide a public written intermediate decision including findings of fact and conclusions of law on the issues raised in this proceeding.

6. The Secretary shall arrange for publication of this Order in the *Federal Register*.

By the Commission.

Erica A. Barker
Secretary

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV 27 2024

RECEIVED

Postal Regulatory Commission
Submitted 09/19/2024 03:59 PM
Filing ID: 130872
Accepted 9/19/2024
ORDER NO. 7552

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Before Commissioners:

Michael Kubayanda, Chairman;
Thomas G. Day, Vice Chairman;
Ann C. Fisher;
Ashley E. Poling; and
Robert G. Taub

Complaint of Mark Allan Edwards

Docket No. C2023-6

ORDER GRANTING THE MOTION FOR LEAVE TO REPLY, OVERRULING THE
COMPLAINANT'S EXCEPTIONS, ADOPTING THE PRESIDING OFFICER'S
INTERMEDIATE DECISION, AND DISMISSING WITH PREJUDICE THE COMPLAINT
OF MARK ALLAN EDWARDS

(Issued September 19, 2024)

I. INTRODUCTION

On July 7, 2023, Mark Allan Edwards (Complainant) filed a complaint pursuant to
39 U.S.C. §§ 3662(a), 401(2), and 403(c) with the Commission challenging the Postal
Service's decision to terminate delivery of oversized packages to his door.[1] On
September 18, 2023, the Commission granted the Postal Service's Motion to Dismiss[2]
in part, dismissed the 39 U.S.C. §§ 3662(a) and 401(2) claims, and appointed a
presiding officer to issue an intermediate decision to resolve the outstanding issues of

---

[1] Complaint of Mark Allan Edwards, July 7, 2023 (Complaint). Citations to the Complaint will be
to the page number of the PDF.

[2] United States Postal Service's Motion ⬛⬛⬛⬛⬛⬛⬛, July 27, 2023 (Motion to Dismiss).

fact and conclusions of law necessary to determine whether a violation of 39 U.S.C. § 403(c) occurred.[3]  On April 8, 2024, the Presiding Officer filed his intermediate decision that concluded that the Complainant failed to demonstrate that other similarly situated postal customers received door delivery of oversized packages or that the process used by the Postal Service in discontinuing door delivery of oversized packages to his home was discriminatory and recommended that the Commission dismiss the Complaint.[4]  On May 7, 2024, Complainant filed his brief on exceptions to the Presiding Officer's Intermediate Decision (POID).[5]  On May 28, 2024, the Postal Service filed its brief in opposition to the exceptions.[6]  Complainant then filed a motion for leave to reply on June 3, 2024,[7] and the Postal Service filed a response to that motion on June 10, 2024.[8]

For the reasons discussed below, the Commission grants Complainant's Motion for Leave to Reply, overrules the exceptions raised by Complainant, adopts the POID's findings of facts and conclusions of law, and dismisses the Complaint with prejudice.

---

[3] Order Partially Denying United States Postal Service's Motion to Dismiss and Notice of Limited Formal Proceedings, September 18, 2023, at 8 (Order No. 6688).

[4] Presiding Officer's Intermediate Decision and Findings of Fact and Conclusions of Law, April 8, 2024, at 2 (POID).

[5] Objections to the Presiding Officer's Intermediate Decision in the Complaint of Mark Allan Edwards, May 7, 2024 (Brief on Exceptions).  Citations to the Brief on Exceptions will be to the page number of the PDF.

[6] Brief of the United States Postal Service in Opposition to Complainant's Objections to the Presiding Officer's Intermediate Decision, May 28, 2024 (Brief in Opposition).

[7] Motion for Leave to File Surrebuttal Brief Addressing Defendant's Newly Presented Arguments and Evidence in their Brief Concerning Objections to the Presiding Officer's Intermediate Decision in the Complaint of Mark Allan Edwards for the Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, June 3, 2024 (Motion for Leave to Reply).

[8] United States Postal Service Response to Complainant's Motion for Leave to Reply, June 10, 2024 (Response to Motion for Leave to Reply).

## II.     BACKGROUND

### A.     Factual Background

The following facts are undisputed.  Mark Allan Edwards (Complainant) is an individual resident of Clayton, Georgia and resides at 208 Celtic Lane, in the Mountain Creek Estates housing development.  Complaint at 2; Motion to Dismiss at 3.  The approved method of delivery for Mountain Creek Estates is central delivery with cluster mailboxes located at the entrance of the community, which is more than one-half mile from Complainant's home.  Complaint at 2; Motion to Dismiss at 3.  The Complaint alleged that from December 2019 until March 2022, the Postal Service delivered oversized packages to his door, even though it was more than one-half mile away from the centralized mailbox location.  Complaint at 2; Motion to Dismiss at 3.  From March 2022 onward, the Postal Service ceased delivering oversized packages to Complainant's door.  Complaint at 2; Motion to Dismiss at 3.

### B.     Federal Court Proceedings

After the Postal Service stopped delivering oversized packages to his door, Complainant filed a complaint in the Northern District of Georgia which sought resumption of door delivery for oversized packages and alleged a violation of the Postal Operations Manual (POM).  Complaint, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (N.D. Ga. Aug. 15, 2022); Amended Complaint by Court Order, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (N.D. Ga. Dec. 15, 2022).  The United States filed a motion to dismiss in which it argued that the district court lacked subject matter jurisdiction to consider the complaint because Complainant failed to identify a specific statute that expressly waived sovereign immunity, and the complaint raised a service-related claim over which the Commission had exclusive jurisdiction.  Memorandum in Support of Defendant's Motion to Dismiss at 3-8, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (March 6, 2023).

The Northern District of Georgia found that Complainant failed to identify a specific waiver of sovereign immunity and that it lacked subject matter jurisdiction over the claims presented and granted the motion to dismiss without prejudice for Complainant to seek relief before the Commission. Order Granting Defendant's Motion to Dismiss at 22, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (November 21, 2023). Specifically, the district court found that Complainant failed to provide a basis for it to conclude that the Postal Service waived its sovereign immunity. *Id.* at 9. Furthermore, the district court determined that the Postal Service's deliberate noncompliance with the POM did not create an action in tort because it did not constitute an injury under Georgia law. *Id.* at 17-18. Additionally, the district court concluded that it lacked subject matter jurisdiction to proceed in mandamus or equity because Complainant had "an adequate remedy at law through the complaint procedure of the Postal Regulatory Commission pursuant to 39 U.S.C. § 3662." *Id.* at 18-19. Finally, the district court determined that although 39 U.S.C. § 409(a) conferred upon it "original but not exclusive jurisdiction over all actions brought by or against the Postal Service" the POM could not "provide a legal framework for subject matter jurisdiction in this case." *Id.* at 19-21.

C.    Procedural Background

On July 7, 2023, Complainant filed a complaint pursuant to 39 U.S.C. §§ 3662(a), 401(2), and 403(c) with the Commission challenging the Postal Service's decision to terminate delivery of oversized packages to his front door. Complaint at 2. On July 27, 2023, the Postal Service filed a Motion to Dismiss the Complaint. Motion to Dismiss at 1. Complainant did not respond to the Motion to Dismiss. On September 18, 2023, the Commission concluded that the Complaint raised material issues of fact and denied in part the Postal Service's Motion to Dismiss pursuant to 39 U.S.C. § 3662(b) and 39 C.F.R. § 3022.30(a)(1). Order No. 6688 at 1-2. The Commission appointed a presiding officer to set a procedural schedule, conduct limited discovery for the purpose of determining the disputed issues of fact in the case, and prepare a written, intermediate

decision including findings of fact and conclusions of law on the issues raised. *Id.* at 8; 39 C.F.R. § 3010.106.

During the limited discovery period, on October 20, 2023, Complainant filed a motion for reconsideration of Order No. 6688, alleging that he was not properly served with Order No. 6688 and that the Commission erred in dismissing his 39 U.S.C. § 401(2) claim on jurisdictional grounds.[9] The Commission denied the Motion for Reconsideration on November 1, 2023.[10] On November 21, 2023, the Postal Service filed a motion requesting that the Commission correct Order No. 6688.[11] On November 30, 2023, the Complainant filed an opposition to defendant's correction of the Commission's Order No. 6688.[12] The Commission granted the Motion to Correct on December 1, 2023, and issued a Notice of Errata correcting an inadvertent mischaracterization of the Postal Service's position in one sentence.[13]

On April 8, 2024, the Presiding Officer filed his intermediate decision and concluded that Complainant "has not shown that other similarly situated postal customers in his neighborhood receive door delivery of oversized packages." POID at 2. The Presiding Officer further found that Complainant had not "demonstrated that the process by which the Postal Service discontinued door delivery to his residence was discriminatory." *Id.* On May 7, 2024, Complainant filed his Brief on Exceptions to the POID and raised eight exceptions. Brief on Exceptions at 2-10. On May 28, 2024, the Postal Service filed its Brief in Opposition to the exceptions. Brief in Opposition at 1.

---

[9] *See* Motion to Reconsider Postal Regulatory Order No. 6688, October 20, 2023 (Motion for Reconsideration).

[10] Order Denying Motion for Reconsideration, November 1, 2023 (Order No. 6770).

[11] United States Postal Service Motion Requesting that the Postal Regulatory Commission Correct Order No. 6688, November 21, 2023 (Motion to Correct).

[12] Opposition to Defendant's Correction of Postal Regulatory Commission's Order 6688, November 30, 2023 (Opposition). Although the Opposition was not timely filed, *see* 39 U.S.C. § 3010.160(b), nor accompanied by a motion for late acceptance, the Commission accepts the filing. Citations to the Opposition will be to the page number of the PDF.

[13] Order Granting Motion Requesting that the Postal Regulatory Commission Correct Order No. 6688, December 1, 2023 (Order No. 6820); Notice of Errata, December 1, 2023 (Notice of Errata).

Complainant then filed a Motion for Leave to Reply on June 3, 2024, which argued that the Postal Service injected new arguments and facts in its Brief in Opposition. Motion for Leave to Reply at 2-7. The Postal Service filed a response in opposition to that motion on June 10, 2024. Response to Motion for Leave to Reply at 1.

D.   The Complaint

While his case was pending in federal district court, Complainant filed the instant Complaint with the Commission. In the Complaint, he alleged that from December 2019 until March 2022, the Postal Service delivered packages that were too large for his mailbox to his door. Complaint at 2. The Complaint also asserted that because the Postal Service delivered oversized packages to his door for over 2 years, it improperly changed that mode of delivery without his consent in violation of the POM §§ 631.1 and 631.8 and 39 U.S.C. § 401(2). *Id.* at 2-3.

The Complaint further stated the Postal Service gave inconsistent reasons for the change and shifted those reasons in retaliation for him filing a complaint. *Id.* at 4-6. First, he alleges that in a letter dated June 9, 2022, the Postal Service stated that it discontinued door delivery to his home because it was more than one-half mile from the route of travel. *Id.* at 2. Next, he states that in April of 2023, after he lodged an online complaint with the Commission that was forwarded to the Postal Service, he received a letter that stated the Postal Service discontinued door delivery of oversized parcels because his driveway was "'too narrow for a safe turnaround for the carrier' . . . ." *Id.* at 4-5. Finally, he stated that in May 2023, a letter carrier admitted to him "that he had no issue with the driveway specifically because of the driveway's turnaround spot." *Id.* at 5.

Finally, the Complaint also alleged that because, at the time the Complaint was filed, the Postal Service "deliver[ed] to homes on the first western circular road with the furthest home getting oversized package delivery just over 1/2 mile from the [cluster] mailboxes[,]" discontinuing delivery to Complainant's home, which was similarly situated to other homes that received delivery of oversized packages, constituted discrimination in violation of 39 U.S.C. § 403(c). *Id.* at 4-6. As a remedy for the alleged discrimination,

Complainant requested that the Commission order the Postal Service to resume delivery of oversized packages to his door. *Id.* at 9-10.

E.      Motion to Dismiss

The Postal Service filed a Motion to Dismiss that asserted that the Commission lacked jurisdiction over the claims rooted in violations of POM § 631.8 and retaliation because those claims do not fall under the enumerated bases for jurisdiction set forth in 39 U.S.C. § 3662(a). Motion to Dismiss at 6-10. Regarding the claim rooted in 39 U.S.C. § 401(2), the Postal Service argued that the statute applies only to scenarios where it adopts, amends, or repeals rules or regulations inconsistent with title 39. *Id.* at 8-9. Since, according to the Postal Service, application of POM § 631.8, even if incorrect, did not involve the Postal Service "adopting, amending, or repealing" a rule or regulation in a manner that is inconsistent with title 39, the Commission lacked jurisdiction over the claim. *Id.* at 9-10.

Finally, regarding, the 39 U.S.C. § 403(c) discrimination claim, the Postal Service argued that Complaint failed to state a claim for which relief may be granted. *Id.* at 11-14. While, for the purposes of the Motion to Dismiss, the Postal Service accepted as true that "customers in Mountain Creek Estates and elsewhere in Rabun County who live more than one-half mile from the carrier's line of travel or delivery route" receive delivery of oversized packages to their doors. *Id.* at 12. Nonetheless, the Postal Service argued, Complainant could not succeed on a 39 U.S.C. § 403(c) claim because there was a rational and legitimate basis to deny the same delivery to Complainant – it was "contrary to section 331.21 of PO-603, which limits door delivery of oversized packages to residences and businesses 'on the line of travel, or within one-half mile of the route . . . .' " *Id.* (quoting the Postal Service's Rural Carrier Duties and Responsibilities Handbook (PO-603) § 331.21).

The Commission granted the Motion to Dismiss in part and found that it lacked jurisdiction over the alleged violations of POM § 631.8 and retaliation because those bases were not specifically enumerated in 39 U.S.C. § 3662(a). Order No. 6688 at 5-6.

As to the undue discrimination claim rooted in 39 U.S.C. § 403(c), however, the Commission concluded that based on the Postal Service's representations for the purposes of the Motion to Dismiss, Complainant could conceivably state a claim for which relief could be granted and that there were two outstanding issues of fact that required resolution. *Id.* at 7-8. The Commission appointed a presiding officer to resolve the issues of material fact, examine the issues in dispute, and issue a "public, written intermediate decision including findings of fact and conclusions of law on the issues raised in this proceeding." *Id.* at 8.

### F.    Limited Discovery Period

During the limited discovery period, the Presiding Officer issued information requests to both the Complainant and to the Postal Service.[14] The Presiding Officer also issued three rulings setting forth the procedure and timelines governing this proceeding.[15] In lieu of a live hearing, the parties agreed to submit briefing on the two issues of material fact, including any sworn witness declarations, written responses to cross-examination, documents, or other relevant material the parties relied upon in support of their positions. POR No. 3 at 1-3. Those two issues of material fact were:

1.    Whether any similarly situated postal customers in Complainant's neighborhood are receiving delivery of oversized packages to their doors.

2.    Whether postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to Complainant's residence.

Order No. 6688 at 8.

---

[14] Presiding Officer's Information Request No. 1, November 7, 2023 (POIR No. 1); Presiding Officer's Information Request No. 2, November 7, 2023 (POIR No. 2).

[15] Presiding Officer's Ruling Scheduling Prehearing Videoconference and Establishing Initial Case Management Procedures, September 29, 2023 (POR No. 1); Presiding Officer's Ruling Establishing Procedural Schedule and Additional Case Management Procedures, October 31, 2023 (POR No. 2); Presiding Officer's Ruling Establishing Hearing Format and Schedule, December 5, 2023 (POR No. 3).

G.   Complainant's Initial Brief and Evidence

Complainant filed his initial brief and supporting evidence on January 3, 2024.[16] In it, he first argued that similarly situated postal customers in his neighborhood are receiving delivery of oversized packages to their doors. Initial Brief at 7-10. Specifically, he stated that a different address in his neighborhood, 565 Celestial Circle, that is also more than one-half mile of the carrier's route received door delivery of oversized packages. *Id.* at 8-9. The owner of that home provided an attestation that stated that "the Post Office originally determined that her home was outside 1/2 mile and she wouldn't get packages delivered to her home but now they regularly deliver oversized packages to her home." *Id.* at 9, 93. The owner of 565 Celestial Circle specifically stated that she was informed by the Clayton, Georgia Post Office "that packages would not be delivered [to her] home as it is too far from the community mailboxes located on Rickman Airfield Road." *Id.* at 93. Because of this, she stated that she purchased a Post Office (PO) Box at the Clayton Post Office to receive packages. *Id.* Finally, Complainant alleged that a specific postal carrier delivered to every home on Celestial Circle but was told not to deliver to Complainant's home. *Id.* at 58.

Complainant also submitted evidence that he purchased oversized packages that the Postal Service delivered to the door of 565 Celestial Circle. *Id.* at 61-62, 94-99. Complainant provided pictures that proved the Postal Service provided door delivery of those packages to 565 Celestial Circle. *Id.* at 94-99. Therefore, Complainant argued, the Postal Service "routinely delivers outside of 1/2 mile from the line of travel using driving distance." *Id.* at 10. Alternatively, he argued that section 331.21 of the Rural

---

[16] Brief of Complainant Mark Allan Edwards Regarding Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulations 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, January 3, 2024 (Initial Brief). Citations to the Initial Brief will be to the page number of the PDF.

Carrier Duties and Responsibilities Handbook (PO-603) (Rural Carrier Handbook),[17] which governs the one-half mile distance requirement, should either be interpreted to be a radius from the delivery point rather than driving distance, or include total roundtrip distance rather than one-way distance when calculation the one-half mile. *Id.* at 8-10.

Next, Complainant argued that Postal Service improperly changed the mode of delivery of oversized packages to his residence without his consent. *Id.* at 10-11, 15. After originally complaining of the change in June 2022, he asserted that the Postmaster of the Clayton, Georgia Post Office "stated the only reason for not delivering oversized packages was due to 208 Celtic Lane being over 1/2 mile from the route with no mention of safety issue regarding the driveway." *Id.* at 11. Later, in response to a complaint made with the Commission in April 2023, he alleges that the Postal Service conceded that door delivery of oversized packages was the established mode of delivery for his address, but then put "forth a falsehood about the narrowness of the driveway for the postal carrier to safely turnaround as the rationale for why delivery to the Complainant's home was 'curtailed.'" *Id.* at 11-12. There was no mention of the one-half mile from the line of travel in this communication. *Id.* at 12.

Complainant then alleged that in May 2023, the Postal Service sent him a second letter that stated that the issue was referred to the "Law Department" who "determined that delivery was not possible as 208 Celtic Lane was over 1/2 mile from the 'Main Road[.]'" *Id.* There was no mention in this letter of the previously expressed safety concern. *Id.* Additionally, Complainant stated that the Postal Service "recharacterize[d] their position that delivery of oversized packages is not a mode of delivery seven months after [its] concession that it was a mode of delivery." *Id.* Instead, the Postal Service characterized door delivery of oversized packages as an "'exception.'" *Id.* Complainant then realleged that another member of his neighborhood outside of the one-half mile from the line of travel received door delivery of oversized

---

[17] *See* Rural Carrier Duties and Responsibilities Handbook (PO-603) § 331.21, available at *https://apwu.org/sites/apwu/files/resource-files/PO-603%20Rural%20Carrier%20Duties%20and%20Responsibilities%2009-13.pdf.*

packages despite the Postal Service previously concluding that her home resided beyond that range. *Id.* at 13. It is these changing positions, failure to follow its operations manual, and inconsistent application of its own rationale by delivering to homes in his neighborhood that are also outside the one-half mile line of travel that Complainant argued demonstrated the Postal Service's lack of non-discriminatory processes in the discontinuation of door delivery to his home. *Id.* at 16-17.

H.    The Postal Service's Answering Brief and Evidence

The Postal Service filed its Answering Brief and supporting evidence on January 25, 2024.[18] In its Answering Brief, the Postal Service pointed out that the claim related to POM § 631.8 was dismissed, so any argument related to those claims in Complainant's Initial Brief was misplaced. Answering Brief at 1, 11-12. Additionally, the Postal Service argued that 565 Celestial Circle was not similarly situated to Complainant's address because it is not more than one-half mile from the carrier's route. *Id.* at 6-8. The Postal Service attacked the ambiguity in Complainant's method of disaggregating and individually measuring and then summing the distances between waypoints using Google Maps because they contained a mixture of distances expressed in feet and tenths of miles without any clarity regarding whether the distances were rounded or how to add them in a precise manner. *Id.* at 8. The Postal Service also pointed out that the overall measurement on Complainant's map was one-half mile. *Id.* It also argued that the "closest point on the carrier's route to the delivery address" is "52 feet farther down Rickman Airfield Road . . . ." *Id.*

Additionally, the Postal Service clarified that it did "not use a composite of driving direction distances to determine the one-half mile distance for purposes of section 331.21; rather, it use[d] the distance provided in Google Map[s], as well as actual driving distance." *Id.* It submitted a Google Maps printout "confirming that the distance from the carrier's route to 565 Celestial Circle is one-half of a mile." *Id.* It also argued

---

[18] Answering Brief of the United States Postal Service, January 24, 2024 (Answering Brief).

that it drove "the distance using a mail delivery van and confirmed that the shortest distance from the carrier's route to 565 Celestial Circle using the roads available is one-half of a mile." *Id.* at 9. The Postal Service challenged Complainant's use of a free mobile-phone GPS application because he failed to provide "any foundation to establish the accuracy or the margin of error of the free mobile-phone application he used to measure the distance." *Id.* It argued that Complainant's failure to introduce driving distance should be considered as an inference that "the evidence would have shown that 565 Celestial Circle [was] not more than one-half mile from the carrier's route." *Id.* at 10.

Next, regarding whether it followed a non-discriminatory process in discontinuing door delivery of oversized packages to Complainant's door, the Postal Service argued that since no other similarly situated postal customer in Complainant's neighborhood was receiving door delivery of oversized packages, "no similarly situated customer was receiving more favorable service." *Id.* at 11. Thus, according to the Postal Service, "the process of discontinuing door-delivery of oversized packages to Complainant was not discriminatory." *Id.*

The Postal Service stated that Complainant's arguments related to the alleged violations of POM § 631.8 and safety were "immaterial" because the Commission previously dismissed "the POM violation claim" and the discontinuation of door delivery of oversized packages was "controlled by Rural Carrier Handbook section 331.21," even though it maintained its safety concerns. *Id.* at 11-12. Finally, the Postal Service noted "a legitimate basis for differentiating eligibility for door-delivery of oversized packages by distance from the carrier's route[]" in that "limiting door-delivery of oversized packages based on distance from the carrier's route serves to minimize the time, effort, and expense associated with the carrier having to deviate from their assigned routes[]" which is related to its mandate to deliver mail in an efficient and economical manner. *Id.* at 14-15.

The Postal Service submitted the declaration of Dustin Vanveldhuizen, which stated that he was a Rural Delivery Specialist II for the Postal Service who performed "a

Google Maps query to ascertain the shortest travel distance from Carrier Route 30525-R007 to 565 Celestial Circle using the roads available." *Id.*, Exhibit A at 1. That query showed "that the shortest travel distance from the carrier's route to 565 Celestial Circle is 0.5 mile." *Id.* A copy of the 30525-R007 carrier's route and a Google Map printout of the shortest travel distance from the carrier's route to the residence at 565 Celestial Circle were attached to the declaration. *Id.* at 3-4.

The Postal Service also submitted the declaration of Colby Nichols, which stated that he was the Postmaster for the Clayton, Georgia Post Office and has continually been in that role since November 2022. *Id.*, Exhibit B at 1. It states that Postmaster Nichols "drove a Metris postal van from the 30525-R007 carrier's route to the residence located at 565 Celestial Circle to ascertain the shortest travel distance from the carrier's route to the residence using the roads available." *Id.* The odometer on the postal van reported that "the shortest travel distance from Carrier Route 30525-R007 to 565 Celestial Circle using the roads available is .5 mile." *Id.* A photograph of the odometer taken from the street outside of 565 Celestial Circle was attached to the declaration. *Id.* at 3.

## I. Complainant's Reply Brief

Complainant filed his reply brief on February 2, 2024.[19] In it, he argued that the Commission did not dismiss the POM-related claim because it was relevant to the undue discrimination claim to determine whether the Postal Service followed a non-discriminatory process in discontinuing door delivery of oversized packages to his door. Reply Brief at 5. He further maintained that he proved in his initial brief that "565

---

[19] Response of Complainant Mark Allan Edwards to the USPS Answering Brief Regarding Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, February 2, 2024 (Reply Brief).

Celestial [Circle][20] is over ½ mile from the Carrier's route in either direction (Westerly and Easterly approaches) . . . ." *Id.* (footnote omitted). He alleged that the evidence he submitted showed that the Postal Service "exceeded the ½ mile from their route 10 times in 21 days from 9 to 30 December 2023." *Id.* at 5-6.

He further argued that the Postal Service's use of distances in Google Maps did not include the level of detail that his included and so did not represent the proper distance. *Id.* at 6. Additionally, he argued that the Postal Service's use of an odometer to measure distance did not account for error rate present in odometers and that GPS applications on cell phones are more accurate. *Id.* Complainant further argues that the photographic evidence submitted by the Postal Service demonstrated that the delivery vehicle reached ".5 mile[s] BEFORE it reache[d] 565 Celestial [Circle]." *Id.* at 7.

Complainant maintained that the Postal Service's changing rationales for why it discontinued door delivery of oversized packages was relevant to his discrimination claim. *Id.* at 7-8. He maintained that his driveway was constructed with a "dedicated turnaround," which made it safe for delivery drivers, which is further evidence that the safety rationale was "clear evidence of bias and discrimination against" him. *Id.* Additionally, he argued that the Postal Service's adherence to some of its rules and regulations while ignoring others, demonstrated a "pattern of bias and discrimination" against him. *Id.* at 9. Finally, he maintained that section 331.21 of the Rural Carrier Handbook should be interpreted to be calculated as a roundtrip distance. *Id.* at 5, 10.

### J. The Presiding Officer's Intermediate Decision

The Presiding Officer filed his intermediate decision on April 8, 2024, and concluded that Complainant had "not shown that other similarly situated postal customers in his neighborhood receive door delivery of oversized packages. Nor ha[d] he demonstrated that the process by which the Postal Service discontinued door

---

[20] Complainant uses "565 Celestial Drive" while the Postal Service uses "565 Celestial Circle." The Commission will use "565 Celestial Circle" because that is how the owner of that address lists it in her declaration. *See* Initial Brief at 93.

delivery to his residence was discriminatory." POID at 2. The Presiding Officer stated that "[t]he Commission determines whether postal customers are 'similarly situated' on a case-by-case basis by comparing the relevant characteristics of each customer." *Id.* at 17. The Presiding Officer concluded that here, "the relevant characteristic [was] distance from the Carrier Route." *Id.* He also recognized that while Complainant submitted evidence that 565 Celestial Circle was a similarly situated address, Complainant did not dispute that his home was located "outside the half-mile distance from the Carrier Route . . . ." *Id.* at 17-18.

Although each party submitted its measurements of those distances using Google Maps, GPS, and odometer readings, the Presiding Officer concluded that it would be "a futile exercise to attempt to decide this case by determining with mathematical precision exactly how far 565 Celestial Circle is from the Carrier Route[]" because each party identified some "unknowable margin of error[]" in the opposing party's measurements. *Id.* at 19. Because the issue he was tasked to resolve involved discrimination, the Presiding Officer concluded that the critical issue was not this precise distance, but instead whether the Postal Service's use of Google Maps distances and actual driving distance to conclude that Complainant's address did not qualify for door delivery of oversized packages was "a reasonable and non-discriminatory application of the Rural Carrier Handbook." *Id.*

The Presiding Officer found that the Postal Service acted reasonably in using Google Maps or actual driving distance using an odometer to determine whether Complainant's home was within one-half mile of the carrier route. *Id.* at 20. While Complainant presented different distance measurements, the Presiding Officer found that Complainant failed to show "that the Postal Service's methods represent an unreasonable interpretation or application of the pertinent provision of the Rural Carrier Handbook." *Id.* at 20-21. And because the Postal Service did not use different methods to calculate the distance to Complainant's address and 565 Celestial Circle, nor did it apply a specific measurement inconsistently, the Presiding Officer concluded that the

Postal Service did not determine the driving distance to Complainant's home in a "discriminatory manner." *Id.* at 21.

The Presiding Officer concluded that 565 Celestial Circle was "within one-half mile of the Carrier Route" under either of the Postal Service's methods of measuring distance. *Id.* Further, the Presiding Officer observed that Complainant did not contest that his home was "at least 0.7 miles from the Carrier Route, which exceeds the half-mile limitation on door delivery." *Id.* Because this was true, the Presiding Officer concluded that Complainant failed to demonstrate that he was "similarly situated to the owner of 565 Celestial Circle based on the relevant characteristics." *Id.*

The Presiding Officer next dispatched both of Complainant's alternative arguments. *Id.* at 22-23. First, the Presiding Officer rejected the contention that he should interpret section 331.21 of the Rural Carrier Handbook, which governs the one-half mile distance, to mean a "radius" from the carrier route rather than actual driving distance because that term does not appear in the provision of the handbook. *Id.* at 22. The Presiding Officer observed that the term "radius" arose "from a misunderstanding that appears to have been inadvertently introduced by the Commission in Order No. 6688." *Id.* at 22. The Commission subsequently corrected its use of the word "radius" in a subsequent order but permitted Complainant to make arguments related to it. *Id.* The Presiding Officer found that Complainant failed to provide any evidence that the Postal Service ever interpreted the provision to include "radius." *Id.* at 22-23. Thus, the Presiding Officer concluded there was nothing to suggest that section 331.21 should be interpreted to encompass a "radius" from the carrier's route. *Id.* at 23.

The Presiding Officer also rejected Complainant's argument that the one-half mile distance should be calculated as a roundtrip. *Id.* Similarly to the argument involving the "radius," because the word "roundtrip" did not appear "in the text of the Rural Carrier Handbook regulation at issue," and Complainant failed to identify "any evidence suggesting that the Postal Service has interpreted the regulation's reference to a half-mile distance as a roundtrip rather than one-way driving distance[,]" the Presiding Officer found the argument "unpersuasive." *Id.*

Finally, the Presiding Officer addressed whether postal management followed non-discriminatory processes when determining that it should discontinue door delivery of oversized packages to Complainant's home. *Id.* at 24-28. First, the Presiding Officer discussed what was "*not* at issue here[,]" namely "whether the Postal Service violated POM § 631.8 when it stopped door delivery that had been ongoing for more than 1 year without first obtaining [Complainant's] consent." *Id.* at 24 (emphasis in original). The Presiding Officer recognized that the Commission "already determined that it lack[ed] jurisdiction over [Complainant's] claims alleging violations of the POM[]" and therefore, consistent with the authority the Commission delegated to him, he would not "entertain such claims now." *Id.*

The Presiding Officer did state, however, that "evidence that the Postal Service neglected to follow its own procedures [was] nonetheless highly relevant to [Complainant's] discrimination claim[]" and observed that the evidence Complainant provided on this point was "fairly strong." *Id.* The Presiding Officer also found the Postal Service's changing explanations for why it discontinued door delivery "concerning" and found that Complainant produced "evidence that one of those reasons was untrue or incorrect." *Id.* at 25. Ultimately, however, even if there was some evidence that the Postal Service's explanations were pretextual, when viewed considering all surrounding circumstances in the case, the Presiding Officer concluded that "the weight of the evidence favors the Postal Service." *Id.* at 26.

The Presiding Officer found it "notable that the driving distance was the first explanation for its actions the Postal Service gave to [Complainant], and it only later introduced the safety justification in April 2023." *Id.* Overall, the Presiding Officer concluded that Complainant failed to provide "sufficient evidence to demonstrate that the process by which postal management discontinued door delivery of oversized packages to his residence was related to *discrimination*." *Id.* at 26-27 (emphasis in original). Instead, the Presiding Officer concluded that at the time the Postal Service discontinued door delivery of oversized packages, Complainant "was the only customer in Mountain Creek Estates living more than one-half mile from the Carrier Route who

received that service." *Id.* at 27. Thus, "based on the totality of the circumstances, the evidence favors the Postal Service's nondiscriminatory explanation that management discontinued a service to which [Complainant] was not entitled." *Id.*

K.     Complainant's Brief on Exceptions to the POID

On May 7, 2024, Complainant filed a Brief on Exceptions to the POID raising eight exceptions.

First, Complainant argues that the Presiding Officer should have adopted Complainant's approach to measuring distance rather than accepting the Postal Service's. Brief on Exceptions at 3. He argues that using those measurements, "565 Celestial Circle is over ½ mile in the shortest direction from the Postal Carrier's line of travel." *Id.* While Complainant also used Google Maps to measure distance, he "looked at the 'detail' of how Google Maps determined the distance[]" which resulted in a distance of more than one-half mile. *Id.* at 4. Additionally, Complainant argues that the GPS program on his phone produced a similar result. *Id.* Using either measurement, according to Complainant, results in 565 Celestial Circle being more than one-half mile from the carrier's route. *Id.* Complainant also attacked the Postal Service's photographic evidence because it showed that the odometer of the vehicle "having achieved '.5' mile before arriving at the 565 Celestial Circle." *Id.* at 5. Thus, Complainant argues, while the Presiding Officer found the Postal Service's measurements "reasonable," they were not correct. *Id.*

Second, Complainant argues that the Presiding Officer created a new requirement "for the Complainant to prove the [Postal Service's] measurements were not reasonable." *Id.* He posits that reasonableness does not play a role in determining whether 565 Celestial Circle is more than one-half mile from the carrier's route. *Id.*

Third, Complainant argues that the Presiding Officer improperly added "a temporal requirement" for similarly situated residences that required him to prove "'at the time door delivery was discontinued'" that no other similarly situated postal customer was receiving door delivery of oversized packages. *Id.* at 6. He argues that at one

point, the Postal Service determined that 565 Celestial Circle was beyond the one-half mile relevant distance and therefore, at some point from December 2019 to the present, another postal customer who lived more than one-half mile from the carrier's route received door delivery of oversized packages. *Id.*

Fourth, Complainant argues that the POID "mistakenly states in footnote 36 . . . that 'Edwards does not rely on these purported violations of the POM as a basis for his 403(c) discrimination claim.'" *Id.* at 7. Complainant cites to numerous portions of his brief where he relied on violations of the POM to demonstrate a basis for a violation of 39 U.S.C. § 403(c). *Id.* at 7-8.

Fifth, Complainant argues that the Presiding Officer erred in dismissing Complainant's argument that the half-mile distance should be calculated "'as roundtrip rather than one-way driving distance.'" *Id.* at 8. He states that since neither are mentioned in section 331.21, it is "counter to and hypocritical of" the Postal Service's goal to adhere to the limitations of that section by "routinely" exceeding a one-half mile driving distance when delivering oversized packages to homes within the community. *Id.*

Sixth, Complainant asserts that the Presiding Officer improperly rejected his argument that the one-half mile requirement be considered a radius. *Id.* Like exception five, he argues that because the word radius does not appear in the rule, "it is reasonable to use radius to provide the same level of service to all homes within Mountain Creek Estates." *Id.*

Seventh, Complainant argues that the POID misstates Order No. 6688 by concluding that "'the Commission has already determined that it lacks jurisdiction over [Complainant's] claims alleging violations of the POM.'" *Id.* at 9. He argues that a violation of the POM can be raised through 39 U.S.C. § 403(c) in relation to whether postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to Complainant's home. *Id.* Within this exception, Complainant maintains that the Commission has jurisdiction pursuant to 39 U.S.C. § 401(2) because 39 U.S.C. § 3662(a) permits the Commission to review instances where

the Postal Service "is not operating in conformance with the requirements" of the enumerated portions of title 39, including 39 U.S.C. § 401(2). *See id.* at 9-10 n.13. And because the rules and regulations contained with the POM are "promulgated under 401(2)[,]" the Commission has jurisdiction to review for compliance with those provisions. *Id.*

Finally, in the eighth exception, Complainant argues that the POID misstated Order No. 6688's directions as to what the Presiding Officer was required to decide. *Id.* at 10. Specifically, he argues that "[t]he Presiding Officer was directed to determine if the defendant followed 'non-discriminatory' processes, in this case it is POM 631.8 when correcting the improper mode of delivery to the Complainant's home." *Id.* at 10 (footnote omitted). He argues that the Presiding Officer reverse worded that requirement "to absolve the [Presiding Officer] from not addressing that the [Postal Service] violated POM 631.8 by failing to execute the [Postal Service's] own policy in correcting an improper mode of delivery." *Id.*

### L.     The Postal Service's Brief in Opposition

The Postal Service counters that the POID properly found that 565 Celestial Circle was not similarly situated. Brief in Opposition at 4. The Postal Service argues that since the Presiding Officer resolved any factual disputes in its favor, and the POID's conclusions were rooted in the measurements it used to compute the distance to Complainant's address, Complainant's first two exceptions should be overruled. *Id.* at 5. The Postal Service points out that "Complainant does not contend that the Presiding Officer failed to consider the measurement evidence . . . ." *Id.* at 6. Additionally, the Postal Service argues that the Commission should overrule the third exception because even if it previously declined to deliver oversized packages to 565 Celestial Circle's door at some point, it presently did so, and therefore it was not similarly situated to Complainant's home. *Id.* at 7.

Further, the Postal Service argues that the POID correctly interpreted the relevant provisions of the Rural Carrier Handbook, and therefore, the Commission

should overrule exceptions 5 and 6. *Id.* at 8-9. The Postal Service also argues that it used a nondiscriminatory process in discontinuing door delivery to Complainant. *Id.* at 10-11. Finally, the Postal Service argues that Complainant is improperly litigating his POM related claim through exceptions 4, 7, and 8. *Id.* at 10. Because the Commission already dismissed the POM related claim, the Postal Service argues that the Commission should overrule these exceptions. *Id.* Alternatively, the Postal Service argues that the Presiding Officer considered the evidence that it failed to follow its own procedures in determining whether there was any discriminatory intent in discontinuing door delivery of oversized packages to Complainant. *Id.* at 10-11. Finally, the Postal Service notes that if the Commission were to conclude that the postal customer at 565 Celestial Circle was similarly situated to Complainant, "the appropriate remedy would be to order the Postal Service to stop delivering oversized packages to 565 Celestial Circle's door . . . ." *Id.* at 11-13.

M.    Complainant's Motion for Leave to Reply

In response to the Postal Service's Brief in Opposition, the Complainant filed a Motion for Leave to Reply, which asserts that the Postal Service made arguments either not based in evidence or made for the first time in its Brief in Opposition. Motion for Leave to Reply at 2-7. Specifically, Complainant asserts that in footnote 22 of its brief, the Postal Service improperly injected a new reason for the Commission to conclude that Complainant's address and 565 Celestial Circle were not similarly situated. *Id.* at 2-4. Complainant argues that he should be entitled to combat this new argument. *Id.* at 3-4. Additionally, Complainant argues that the Postal Service included "unsubstantiated evidence and new rationale" to explain a photograph in evidence in footnote 21 of its brief. *Id.* at 4-7.

N.    The Postal Service's Response to Complainant's Motion for Leave to
      Reply

The Postal Service counters that the Commission should deny the Motion for
Leave to Reply because the arguments were properly made in response to the
exceptions raised by Complainant.  Response to Motion for Leave to Reply at 2.
Moreover, the Postal Service argues, the arguments were rooted in record evidence,
and were reasonable interpretations and arguments related to that evidence.  *Id.* at 2-5.

III.   COMMISSION ANALYSIS

A.    Complainant's Motion for Leave to Reply

Initially, the Commission grants the Complainant's Motion for Leave to Reply and
will consider the written arguments in the Motion as well as the Postal Service's
response.  The Commission finds that because the Postal Service posited at least one
alternative argument in its Brief in Opposition as to why the Commission should reject
Complainant's claim that he is similarly situated to 565 Celestial Circle, Complainant
has shown good cause to file a reply.  *See* 39 C.F.R. § 3010.336(a).

While the Commission agrees with the Postal Service that the arguments
identified by Complainant were rooted in the evidence submitted during briefing, the
Commission declines to consider the alternative argument raised in footnote 22 of the
Postal Service's Response to Motion for Leave to Reply because it was raised as an
alternative for the first time after briefing completed in response to the Brief on
Exceptions.  This is akin to raising an argument on appeal for the first time in reply.  *See*
*Kimberlin v. U.S. Dep't of Justice*, 318 F.3d 228, 232 n.4 (D.C. Cir. 2003) (stating that
the D.C. Circuit would not consider an argument made for the first time in reply).  And to
the extent that there is any new argument in footnote 21, the Commission likewise will
not consider it.  *Id.*  The Commission will otherwise consider Complainant's Reply and
the Postal Service's Response.

### B. The Commission Overrules the Exceptions

Next, the Commission overrules the eight issues raised in Complainant's Brief on Exceptions. The Commission will address the eight exceptions in three groups: (1) Exceptions 1, 2, and 3 are grouped together because they each deal with aspects of the POID involving the distance from the carrier route; (2) Exceptions 5 and 6 are grouped together because they involve arguments related to the language of section 331.21 of the Rural Carrier Handbook; and (3) Exceptions 4, 7, and 8 are grouped together because they relate to the alleged violations of the POM.

### 1. Exceptions 1, 2, and 3

In Exception 1, Complainant argues that the Presiding Officer should have accepted his measurements, which included details on the Google Maps results and a GPS application, as a more accurate measure of distance than the Postal Service's. Brief on Exceptions at 1-3. According to Complainant, "565 Celestial Circle is not 'within' 1/2 mile by all objective measurements, the [Postal Service's] own photo evidence and, most tellingly, [its] own statement to the" owner of 565 Celestial Circle. *Id.* at 3-5. Complainant argues that the Postal Service's own evidence constitutes proof that 565 Celestial Circle is more than one-half mile from the carrier route because the vehicle that took the driving distance measurement had not fully made it to 565 Celestial Circle when the odometer hit one-half mile. Reply Brief at 6-7; Brief on Exceptions at 5.

In Exception 2, Complainant argues that the Presiding Officer "created a hitherto unknown requirement for the Complainant to prove the defendant's measurements were not reasonable." Brief on Exceptions at 5. Finally, in Exception 3, Complainant argues that the Presiding Officer added a "temporal requirement" not present in Order No. 6688 that required him to identify a similarly situated residence "'at the time door delivery [to his home] was discontinued.'" *Id.* at 6.

The Postal Service argues that the Presiding Officer's decision was rooted in the evidence submitted by the parties and because he simply resolved a dispute amongst the parties, the Commission should overrule Exceptions 1 and 2. Brief in Opposition at

4-6. Further, the Postal Service argues that the Commission should overrule Exception 3 because even if it at one point did not provide door delivery to 565 Celestial Circle, it did so "now," so its delivery history was not relevant to the Presiding Officer's inquiry. *Id.* at 7-8.

First, the Commission finds that the Presiding Officer fulfilled his obligation to resolve the factual dispute over whether Complainant and the postal customer at 565 Celestial Circle were similarly situated. He carefully considered the evidence submitted by both parties, as well as the arguments surrounding that evidence, and ultimately resolved the conflicts between that evidence. POID at 16-18. As he correctly noted, given that each measurement system had an unknowable margin of error, it was "a futile exercise to attempt to decide this case by determining with mathematical precision exactly how far 565 Celestial Circle is from the Carrier Route." *Id.* at 19. Notably, the Presiding Officer's conclusion that the Postal Service applied the provisions of the Rural Carrier Handbook in a reasoned and non-discriminatory manner when it used Google Maps total distance and actual driving distance (as opposed to Google Maps details and a GPS application) to calculate distance from the carrier route, *see id.*, was itself eminently reasonable. Complainant does not allege that the Presiding Officer failed to consider his evidence, just that he rejected it in favor of the Postal Service's use of Google Maps and driving distance. Therefore, Exception 1 is overruled.

Additionally, the Presiding Officer did not add a "reasonableness" requirement for Complainant to prove. Exception 2 misstates the POID, where the Presiding Officer concluded that the Postal Service's use of Google Maps and driving distance was a reasonable and non-discriminatory application of the Rural Carrier Handbook:

> Ultimately, however, the remaining issue in this case is *discrimination*: whether the Postal Service is providing different levels of service to similarly situated customers without a legitimate reason. Therefore, in my view, the dispositive question here is not whether 565 Celestial Circle is exactly one-half mile or less from the Carrier Route. The more important question is whether the Postal Service's determination, based on the Google Maps calculation and the actual driving distance, that 565 Celestial Circle is within the half-mile distance from the Carrier Route set out in the applicable Rural Carrier Handbook regulation, while

> Edwards' residence is not, is a reasonable and non-discriminatory application of the Rural Carrier Handbook.

*Id.*

Contrary to Complainant's assertion in Exception 2, the Presiding Officer did not conclude Complainant had "to prove the [Postal Service's] measurements were not reasonable." Brief on Exceptions at 5. Instead, the Presiding Officer made the determination that the Postal Service's use of Google Maps and driving distance was both a reasonable and a non-discriminatory interpretation of the requirements of section 331.21 of the Rural Carrier Handbook. The statement Complainant points to was not the Presiding Officer adding a requirement for Complainant to prove; instead, it was the Presiding Officer scrutinizing the Postal Service's actions to determine whether they were discriminatory in nature, which is exactly what he was tasked by the Commission to do. The law prohibits the Postal Service from making "any *undue or unreasonable* discrimination among users of the mails," and prevents it from granting "any *undue or unreasonable* preferences to any such user." 39 U.S.C. § 403(c) (emphasis added). The law recognizes that the Postal Service *can* provide some level of discriminatory or different treatment amongst postal customers, as long as it does not rise to the level of "undue or unreasonable." Therefore, if the Postal Service acted "reasonably," as the Presiding Officer found here, it could not be acting in an undue or unreasonable manner.

Finally, the Presiding Officer did not improperly add a "temporal requirement" requiring Complainant to identify a similarly situated home currently receiving door delivery of oversized packages. Brief on Exceptions at 6. Complainant identified one address, 565 Celestial Circle, as a postal customer receiving door delivery of oversized packages despite being more than one-half mile from the carrier route. Initial Brief at 8-9. It does seem true that at some point, according to Complainant's evidence, the Postal Service did not provide door delivery of oversized packages to 565 Celestial Circle, and its owner purchased a PO Box at the Clayton Post Office so that she could receive packages. *See id.* at 93.

But as the Postal Service correctly notes, this fact is not relevant to the question posed in Order No. 6688, which was: "Whether any similarly situated postal customers in Complainant's neighborhood *are* receiving delivery of oversized packages to their doors." Order No. 6688 at 8 (emphasis added). This reflects that to demonstrate a claim of discrimination under Commission precedent, Complainant had to show that at the time door delivery to his home was stopped, another postal customer was receiving door delivery. The Presiding Officer correctly interpreted this question when determining whether 565 Celestial Circle was currently receiving door delivery of oversized packages. POID at 16-21.

Furthermore, the Presiding Officer concluded that under the guidance set forth in *Egger v. U.S. Postal Serv.*, 436 F. Supp. 138 (W.D. Va. 1977), and the test the Commission developed to demonstrate a violation of 39 U.S.C. § 403(c), a complainant must demonstrate three things: (1) the complainant is receiving less favorable services than those provided to one or more other postal customers, (2) the complainant is similarly situated to those postal customers receiving more favorable service, and (3) there is no rational or legitimate basis for denying the complainant the more favorable service currently being provided to those similarly situated postal customers. *See* POID at 14-15; Order No. 6688 at 7. This test necessarily contains a "temporal" requirement because a complainant must show that they are being denied more favorable service currently being offered to at least one similarly situated postal customer. Thus, the Presiding Officer applied the test correctly to this case and Exception 3 is overruled.

### 2. Exceptions 5 and 6

Exceptions 5 and 6 relate to language in section 331.21 of the Rural Carrier Handbook, which states that if a parcel is too large to fit into a postal customer's mailbox and a "reasonable effort to attract the customer to the box" are unsuccessful, a carrier "must deliver parcels to any residence or business that is on the line of travel, or within one-half mile of the route and has a passable road leading to it." Rural Carrier Handbook § 331.21. In Exception 5, Complainant argues that the Presiding Officer

erred in rejecting his contention that section 331.21 should be interpreted as a roundtrip distance. Brief on Exceptions at 8. According to Complainant, this matters because if roundtrip distance is used, the Postal Service regularly travels more than one-half mile from the carrier's route when delivering oversized packages in Complainant's community. *Id.* In Exception 6, Complainant argues that the radius from the central delivery point should be determined using a radius, rather than driving distance. *Id.* at 8-9.

The Postal Service counters that these arguments are "contrary to the clear and unambiguous language of the regulation," and Complainant "offers no evidence that the Postal Service ever interpreted Rural Carrier Handbook section 331.21" to include roundtrip or radius. Brief in Opposition at 9.

The Commission overrules both Exception 5 and 6. Neither roundtrip nor radius appear in the text of the regulation, which requires the following for oversized parcels:

> If a parcel is too large for the box, make a reasonable effort to attract the customer to the box to receive the parcel. Do this by sounding the horn or by hailing the customer. If unsuccessful, you must deliver parcels to any residence or business that is on the line of travel, or within one-half mile of the route and has a passable road leading to it. You are required to dismount to effect delivery if there is no response to your efforts to have the customer come to the vehicle, or if the customer requests that you do so. In multi-tenant buildings, make every effort to deliver parcels to customers using existing building notification procedures.

Rural Carrier Handbook § 331.21. Because the language of the regulation is unambiguous, the Commission will give effect to its plain meaning. *See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 116 (D.C. Cir. 2020) (stating that "[w]here . . . an agency's regulation is unambiguous, the court must give effect to the regulation's plain meaning.").

The term "radius" appears to have been introduced by the Commission in an inadvertent misstatement of the Postal Service's argument in the response to the complaint/motion to dismiss and was subsequently corrected by the Commission. Order No. 6820 at 5-6. Furthermore, if the Commission interpreted section 331.21 as

referencing a one-half mile radius from the carrier route, it would render the phrase "and has a passable road leading to it" that immediately follows the one-half mile provision as surplusage. The Commission declines to do so. *See Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) ("An endlessly reiterated principle of statutory construction is that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage.").

Additionally, there is no evidence that the Postal Service used "radius" or "roundtrip" to measure distance. Complainant's conclusion that the Postal Service "effected a radius interpretation of 'within 1/2 mile'" before it discontinued door delivery is based on nothing more than conjecture. Thus, not only does the plain language of the regulation not support Complainant's arguments, but neither do the Postal Service's actions. Therefore, the Commission overrules Exceptions 5 and 6.

### 3.      Exceptions 4, 7, and 8

In Exception 4, Complainant argues that the Presiding Officer misstated his arguments when, in footnote 36 of the POID, the Presiding Officer stated that Complainant "does not rely on these purported violations of the POM as a basis for his § 403(c) discrimination claim." POID at 24 n.36. Complainant points to portions of his brief that relied on the Postal Service's failures to follow its internal procedures as proof that it engaged in undue discrimination. *See* Brief on Exceptions at 7-8. But Complainant misreads the Presiding Officer's reference in the footnote. The Commission interprets the Presiding Officer's statement to reference a violation Complainant raised for the first time during briefing rather than in his Complaint.

Originally, Complainant relied on a violation of POM § 631.8, with references to POM § 631.1. *See* Complaint at 2, 8, 9, 10. In fact, the title of the Complaint was "Complaint of Mark Allan Edwards Regarding Failure of the Clayton Post Office and Post Master to Deliver Packages as Required under Postal Operations Manual Regulation 631.8." *Id.* at 1. During briefing before the Presiding Officer, however, Complainant added a claim that the Postal Service violated Rural Carrier Handbook

section 331.1. *See, e.g.,* Initial Brief at 14. The Presiding Officer declined to consider the new claim because the Commission had already determined that it lacked jurisdiction to consider whether the Postal Service misapplied its own regulations. *See* Order No. 6688 at 6 ("And because, as the Postal Service correctly argues, application of POM § 631.8, even if incorrect, does not involve the Postal Service 'adopting, amending, or repealing' a rule or regulation in a manner that is inconsistent with title 39, . . . the Commission lacks jurisdiction over the claim.").

This interpretation is buttressed by the fact that the Presiding Officer *did* consider the alleged violation of POM section 631.8 as "highly relevant" and "fairly strong" potential evidence of undue discrimination. *See* POID at 24 ("Even though the Commission lacks jurisdiction to adjudicate the alleged violations of the POM, evidence that the Postal Service neglected to follow its own procedures is nonetheless highly relevant to Edwards' discrimination claim. Edwards' evidence on this point seems fairly strong."). Therefore, even if the Presiding Officer incorrectly stated that the Complainant did not rely on alleged violations of the POM as a basis for his claim that the Postal Service violated 39 U.S.C. § 403(c), *see* Initial Brief at 16, he did consider the Postal Service's lack of adherence to its own regulations when determining whether the Postal Service engaged in undue discrimination. *See* POID at 24-25. And even if it was error to conclude Complainant failed to rely on the newly alleged violation of the Rural Carrier Handbook as evidence of undue discrimination, the Presiding Officer rightly disregarded that claim because it was raised for the first time during briefing rather than in the Complaint and therefore waived. *See Kingman Park Civic Ass'n v. Bowser*, 815 F.3d 36, 40 (D.C. Cir. 2016).

In Exception 7, Complainant argues that the Presiding Officer misstated Order No. 6688 by stating "'the Commission has already determined that it lacks jurisdiction over Edwards' claims alleging violations of the POM.'" Brief on Exceptions at 9. He argues that the violation of POM 631.8 could be considered as evidence of undue discrimination. *Id.* As discussed on the analysis related to Exception 4 above, the Presiding Officer did consider the alleged violation of POM § 631.8 when determining

whether the Postal Service engaged in undue discrimination in violation of 39 U.S.C. § 403(c). *See* POID at 24 ("Even though the Commission lacks jurisdiction to adjudicate the alleged violations of the POM, evidence that the Postal Service neglected to follow its own procedures is nonetheless highly relevant to Edwards' discrimination claim. Edwards' evidence on this point seems fairly strong."). He simply found that "the weight of the evidence favors the Postal Service." *Id.* at 26. Failing to follow the POM does not, by itself, constitute undue discrimination. The Presiding Officer considered the Postal Service's conduct, including its apparent lack of adherence to its own rules, but concluded that the weight of the evidence presented to him favored the Postal Service. The Commission finds no fault with this analysis and overrules Exception 7.

Finally, in Exception 8, Complainant argues the Presiding Officer misstated Order No. 6688 by stating that "'[t]he issue the Commission has asked me to decide is whether the Postal Service management engaged in a *discriminatory* process when it discontinued door delivery to Edwards' residence, not whether it in fact violated or misapplied the POM.'" Brief on Exceptions at 10 (emphasis in original). He argues that the Commission stated "exactly [the] opposite" of this in Order No. 6688, which he argues directed the Presiding Officer to "determine if the [Postal Service] followed 'non-discriminatory' processes, in this case it is POM 631.8 when correcting the improper mode of delivery to the Complainant's home." *Id.* (footnote omitted). Complainant again attempts to insert an alleged violation of POM § 631.8 as a standalone violation. The Commission has repeatedly stated it lacks jurisdiction over a claim of whether the Postal Service follows its own regulations.[21] Here, the Presiding Officer reviewed the

---

[21] Aside from the orders issued in this case (Order No. 6688 and Order No. 6770), the Commission has found it lacks complaint jurisdiction under 39 U.S.C. § 401(2) involving claims that the Postal Service failed to follow its own regulations in several cases. *See* Docket No. RM2008-3, Notice and Order of Proposed Rulemaking Establishing Rules for Complaints, August 21, 2008, at 8 (Order No. 101); Docket No. C2010-2, Order Granting Motion to Dismiss, June 11, 2010, at 3 (Order No. 471); Docket No. C2015-1, Order Granting Motion to Dismiss, March 4, 2015, at 7 (Order No. 2377); Docket No. C2015-2, Order Granting Motion to Dismiss, July 15, 2015, at 9-11 (Order No. 2585); Docket No. C2015-3, Order Dismissing Complaint, August 26, 2015, at 18 (Order No. 2687); and Docket No. C2023-11, Order Granting Motion to Dismiss in Part and Denying Motion for Preliminary Injunction, December 19, 2023, at 11 (Order No. 6880).

processes used by the Postal Service to see whether it employed a discriminatory purpose when it stopped door delivery of oversized packages to Complainant's home. POID at 24-28. Because the Presiding Officer fulfilled his obligations outlined in Order No. 6688, Exception 8 is overruled.

C. The Commission Adopts the Presiding Officer's Intermediate Decision in its Entirety

Finally, after careful review, the Commission adopts the POID in its entirety, including its findings of fact and conclusions of law, which are included in Part IV, *infra*. *See* 39 C.F.R. §§ 3010.334(a)(1), (c), (d). The POID is also appended to this Order. After reviewing the evidence and argument, the Commission agrees with the Presiding Officer that Complainant failed to identify a similarly situated postal customer currently receiving door delivery of oversized packages. POID at 16-21. His conclusion that 565 Celestial Circle was not similarly situated to Complainant's address is supported by the evidence submitted by the parties in this case, and the Commission agrees with the Presiding Officer's analysis that results in the conclusion that "the Postal Service's determination, based on the Google Maps calculation and the actual driving distance, . . . 565 Celestial Circle is within the half-mile distance from the Carrier Route set out in the applicable Rural Carrier Handbook regulation, while [Complainant's] residence is not, is a reasonable and non-discriminatory application of the Rural Carrier Handbook." *Id.* at 19.

Further, the Commission agrees with the Presiding Officer that postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to Complainant's residence. *Id.* at 24-28. While Complainant "presented evidence that the Postal Service has offered multiple rationales for its decision, as well as evidence that one of those reasons was untrue or incorrect[,]" and also presented evidence the Postal Service failed to follow its own procedures in discontinuing door delivery, the Commission agrees with the Presiding Officer that the Postal Service, both initially and before the Commission, primarily relies "on the over-

one-half-mile driving distance between the Carrier Route and [Complainant's] residence as the basis for its decision." *Id.* at 25-26. And, as noted by the Presiding Officer, Complainant failed to produce "sufficient evidence to demonstrate that the process by which postal management discontinued door delivery of oversized packages to his residence was related to *discrimination*." *Id.* at 26-27. Thus, the two outstanding issues of fact that required resolution by the Presiding Officer have now been resolved, *see* Order No. 6688 at 8, and the Complaint is dismissed with prejudice.

It is worth noting, however, that while the POID does not directly address the issue of remedy, even if the Commission rejected the POID and found that 565 Celestial Circle was similarly situated, the Commission agrees with the Postal Service that the appropriate remedy would be "to order the Postal Service to stop delivering oversized packages to 565 Celestial Circle's door" rather than to order the Postal Service to resume door delivery to Complainant's address. This is because the Commission is only empowered to order "the Postal Service take such action as the Commission considers appropriate in order to achieve *compliance with the applicable requirements and to remedy the effects of any noncompliance*." *See* 39 U.S.C. § 3662(c) (emphasis added). Ordering the Postal Service to defy its own regulations would contravene the objectives of 39 U.S.C. § 3662(c) and defy the boundaries of the Commission's powers as prescribed by Congress.

Additionally, the Commission concludes that it is necessary to discuss an apparent lack of redressability over claims that the Postal Service is not following its own regulations and procedures. Complainant first brought his claim that the Postal Service violated POM § 631.8 when it discontinued door delivery of oversized packages without first obtaining his consent. *See* Complaint, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (N.D. Ga. Aug. 15, 2022); Amended Complaint by Court Order, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (N.D. Ga. Dec. 15, 2022). In its motion to dismiss there, the Postal Service, through the U.S. Attorney's Office, took the position that, among other things, the federal complaint raised a service-related claim over which the Commission had exclusive jurisdiction. Memorandum in Support of

Defendant's Motion to Dismiss at 3-8, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (March 6, 2023).[22]

The District Court found that it could not proceed in equity because Complainant had an adequate remedy at law through the Commission's complaint procedures:

> Further, to the extent that Plaintiff is actually attempting to proceed in equity, through a mandamus or declaratory judgment action, there is still no subject matter jurisdiction—as to proceed in mandamus requires a plaintiff to have no adequate remedy at law. *See* 28 U.S.C. § 1361; *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) (setting forth the elements for mandamus relief); *City of New York v. United States Postal Serv.*, 519 F. Supp. 3d 111, 127 (E.D.N.Y. 2021) (describing the elements for a mandamus action in the context of a suit against the Postal Service); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (describing declaratory judgment actions). Here, Edwards has an adequate remedy at law through the complaint procedure of the Postal Regulatory Commission pursuant to 39 U.S.C. § 3662. This ruling also lends support to a ruling declining to exercise the Court's discretion to entertain a declaratory judgment action. *See AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1300 n.4 (11th Cir. 2022) (noting that the Supreme Court has made clear that a district court possesses discretion in determining whether to entertain a declaratory judgment action) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, (1995)).

Order Granting Defendant's Motion to Dismiss at 18-19, *Edwards v. U.S. Postal Serv.*, No. 2:22-CV-160-SCJ (November 21, 2023). While its primary reason for dismissal was

---

[22] The Commission has previously observed that there is a potential inconsistency in the arguments the Postal Service, through the U.S. Attorney's Office, has taken in federal district court and before the Commission as it relates to the scope of the Commission's complaint jurisdiction. *See* Docket No. C2023-2, Order Granting Motion to Dismiss, May 3, 2023, at 9 (Order No. 6497). Many federal decisions seem rooted in interpretations of the pre-PAEA complaint statute, which was broader in nature than the current version of 39 U.S.C. § 3662. *See Huggins v. U.S. Postal Serv.*, No. 22-1074, 2022 WL 17588342, at *1 n.3 (10th Cir. Dec. 13, 2022) (recognizing that "[t]he version of the statute at issue in *Bovard* [*v. U.S. Post Off.*, No. 94-6360, 1995 WL 74678, at *1 (10th Cir. Feb. 24, 1995),] encompassed essentially any service-related claim one could bring against the Postal Service. *See* 39 U.S.C. § 3662 (1994) ("Interested parties ... who believe that they are not receiving postal service in accordance with the policies of this title [i.e., Title 39, governing the Postal Service] may lodge a complaint with the Postal Rate Commission...."). The current version, by contrast, applies to complaints that "the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter [i.e., chapter 36 of Title 39] (or regulations promulgated under any of those provisions)." 39 U.S.C. § 3662(a).").

that Complainant failed to provide a basis for it to conclude that the Postal Service waived sovereign immunity, the District Court's conclusion that it could not proceed in equity because Complainant "has an adequate remedy at law through" the Commission's complaint process is concerning. *See id.*

But the Commission already concluded that, based on prior precedents,[23] it lacked jurisdiction over the claims rooted in alleged violations of 39 U.S.C. § 401(2) and alleged violations of the POM. *See* Order No. 6688 at 6, 9. The Postal Service made the arguments before the Northern District of Georgia with knowledge of these precedents (and later used these precedents as a basis to also seek the Commission's dismissal of portions of the Complaint). Thus, it now appears that Complainant lacks the adequate remedy at law the Northern District of Georgia understood him to have when it declined to treat his federal complaint as a petition for writ of mandamus. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Given that the Northern District of Georgia dismissed the federal complaint without prejudice and the Commission lacks jurisdiction to consider the merits of the POM related claim, the Commission notes that Complainant may seek relief for the alleged violation of POM §§ 631.1, 631.8 through a petition for writ of mandamus in that venue. If Complainant seeks that relief, the Postal Service is directed to file in this docket any motions filed on its behalf in that case that make any representations as to the scope of the Commission's complaint jurisdiction.

---

[23] Order No. 6688 at 5-6; Order Denying Motion for Reconsideration, November 1, 2023, at 5-7 (Order No. 6770). As noted above, the Commission has consistently interpreted 39 U.S.C. § 3622(a) reference to 39 U.S.C. § 401(2) to confer complaint jurisdiction when the Postal Service adopts, amends, or repeals a specific rule or regulation that is inconsistent with Title 39 of the United States Code. *See also* Order No. 101 at 8; Order No. 471 at 3; Order No. 2377 at 6-7; Order No. 2585 at 9-10; Order No. 2687 at 18; Order No. 6880 at 11.

IV.    FINDINGS OF FACT AND CONCLUSIONS OF LAW[24]

A.    Findings of Fact

1.    Edwards resides at 208 Celtic Lane, which is located within the Mountain Creek Estates housing development in Clayton, Georgia.

2.    Mountain Creek Estates is served by Carrier Route 30525-R0007.

3.    The mode of delivery for addresses within Mountain Creek Estates, including Edwards' residence, is centralized mailboxes located at the entrance to the development.

4.    Door delivery of oversized packages to addresses in Mountain Creek Estates is governed by Section 331.21 of the Rural Carrier Handbook, which provides as follows:

> If a parcel is too large for the box, make a reasonable effort to attract the customer to the box to receive the parcel. Do this by sounding the horn or by hailing the customer. If unsuccessful, you must deliver parcels to any residence or business that is on the line of travel or within one-half mile of the route and has a passable road leading to it . . . .

5.    To determine whether an address is within one-half mile of the Carrier Route for purposes of door delivery of oversized packages, the Postal Service uses the total driving distance displayed by Google Maps. Alternatively, the Postmaster or local carrier may physically drive from the Carrier Route to the address to determine the shortest travel distance using the roads available.

6.    As measured using both Google Maps and actual driving distance, the shortest distance from the Carrier Route to Edwards' residence is 0.7 miles, which exceeds one-half mile from the route.

7.    From December 2019 to March 2022, a postal carrier occasionally delivered oversized packages to Edwards' door.

---

[24] These are adopted from the POID. Any internal citations are omitted.

8.  During that time, no other customer in Edwards' neighborhood whose residence was located more than one-half mile from the Carrier Route received door delivery of oversized packages.

9.  In or around April 2022, the Postal Service discontinued door delivery of oversized packages to Edwards' residence.

10. 565 Celestial Circle is an address in Mountain Creek Estates that is also served by Carrier Route 30525-R0007.

11. Google Maps calculates the total driving distance between the Carrier Route and 565 Celestial Circle as 0.5 miles.

12. The Clayton Postmaster also drove the shortest distance between the Carrier Route and 565 Celestial Circle and determined that distance to be 0.5 miles.

B.  Conclusions of Law

1.  Because Edwards' residence is located more than one-half mile from the Carrier Route, he is ineligible for door delivery of oversized packages pursuant to Section 331.21 of the Rural Carrier Handbook.

2.  Based on distance from the Carrier Route, Edwards is not similarly situated to the resident of 565 Celestial Circle for purposes of determining eligibility for door delivery of oversized packages.

3.  Edwards is not similarly situated to any other identified postal customers in Mountain Creek Estates who receive door delivery of oversized packages to their residences.

4.  The Postal Service did not violate 39 U.S.C. § 403(c) by engaging in undue or unreasonable discrimination against Edwards when it discontinued door delivery of oversized packages to his residence.

POID at 29-31.

## V.    ORDERING PARAGRAPHS

*It is ordered*:

1.    Complainant's Motion for Leave to File Surrebuttal Brief Addressing Defendant's Newly Presented Arguments and Evidence in their Brief Concerning Objections to the Presiding Officer's Intermediate Decision in the Complaint of Mark Allan Edwards for the Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, filed June 3, 2024, is granted.

2.    The Commission adopts the Presiding Officer's intermediate decision in its entirety, including its findings of fact and conclusions of law.

3.    The Complaint is dismissed with prejudice.

4.    If Complainant seeks additional relief in federal court, the Postal Service is directed to file in this docket any motions filed on its behalf in that case that make any representations as to the scope of the Commission's complaint jurisdiction.

By the Commission.

Erica A. Barker
Secretary

Media Inquiries
Gail Adams
Gail.Adams@prc.gov

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV 27 2024

RECEIVED

PRESIDING OFFICER'S
INTERMEDIATE DECISION

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Complaint of Mark Allan Edwards                    Docket No. C2023-6

### PRESIDING OFFICER'S INTERMEDIATE DECISION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

(Issued April 8, 2024)

## I.  INTRODUCTION

On July 7, 2023, Mark Allan Edwards (Edwards or Complainant) filed with the Commission a complaint regarding the Postal Service's discontinuation of door delivery of oversized packages to his home in Clayton, Georgia.[1] The Commission appointed me as Presiding Officer to examine disputed issues of material fact regarding whether the Postal Service's discontinuation of that service violated the statutory prohibition against undue or unreasonable discrimination against users of the mails.[2] The Commission further directed me to provide a public, written intermediate decision including findings of fact and conclusions of law on the issues raised in this proceeding. Order No. 6688 at 8 (citing 39 C.F.R. § 3010.335).

---

[1] Complaint of Mark Allan Edwards, July 7, 2023 (Complaint).

[2] Order Partially Denying United States Postal Service's Motion to Dismiss and Notice of Limited Formal Proceedings, September 18, 2023, at 8 (Order No. 6688); see 39 U.S.C. § 403(c).

Based on my evaluation of the briefs and evidence submitted by the parties, I conclude that Edwards has not shown that other similarly situated postal customers in his neighborhood receive door delivery of oversized packages. Nor has he demonstrated that the process by which the Postal Service discontinued door delivery to his residence was discriminatory. Therefore, in my view, the record does not support a finding that a violation of 39 U.S.C. § 403(c) occurred.

That is not to say, however, that either the complaint is frivolous or that the Postal Service acted without fault. Edwards' frustrations with the Postal Service's actions seem quite justified, and his efforts in gathering evidence to support his claims have been commendable. The evidence reflects incidents in which the Postal Service appears not to have followed its own internal policies. Moreover, the Postal Service provided Edwards with multiple, changing reasons why it curtailed door delivery of oversized packages to his house. The Commission has already held that it lacks jurisdiction over Edwards' claims alleging violations of internal regulations, and, for the reasons that follow, the evidence does not demonstrate undue or unreasonable discrimination by the Postal Service towards Edwards. Even if Edwards has not shown that he is legally entitled to relief, however, I note that simple action by Postal Service management (*i.e.*, acting in accordance with its established procedures, consistent communication, and engaging in a less adversarial manner) would have allowed this, and potentially future disputes, to reach more optimal outcomes at less cost.

## II. BACKGROUND

### A. Statutory and Regulatory Background

Before discussing Edwards' factual allegations, it is necessary to address the relevant statutes and Postal Service regulations that are central to this dispute. First, Postal Operations Manual (POM) § 631.8 establishes procedures to correct an improper

mode of delivery.[3]  Pursuant to POM § 631.8, if a postal carrier or manager establishes or extends an improper mode of delivery, the service will be withdrawn with 30 days advance notice to the customer, so long as the error is detected and the customer is notified within 1 year of the date the improper mode was established or extended.  But if the error is not detected and the customer is not notified within 1 year, then, with some exceptions not relevant here, "the improper service remains in place unless the customer consents to the delivery mode change . . . ." *Id.*

Second, the Complaint concerns the Postal Service's procedures for delivery of oversized packages.  Pursuant to the United States Postal Service Rural Carrier Duties and Responsibilities Handbook PO-603 (Rural Carrier Handbook), § 331.21, if a parcel is too large to fit in the mailbox, the carrier must "make a reasonable effort to attract the customer to the box to receive the parcel," such as by sounding the horn or hailing the customer.[4]  If these attempts are unsuccessful, the Rural Carrier Handbook provides that the carrier "must deliver parcels to any residence or business that is on the line of travel, *or within one-half mile of the route* and has a passable road leading to it."  Rural Carrier Handbook § 331.21 (emphasis added).

This case also implicates the Commission's statutory complaint jurisdiction.  Pursuant to 39 U.S.C. § 3662(a), any interested person, including the Public Representative, may file a complaint with the Commission if they believe the Postal Service "is not operating in conformance with the requirements of the provisions of [39 U.S.C.] sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter [36] (or regulations promulgated under any of those provisions) . . . ."  Sections 401(2) and 403(c) are relevant here.  In providing services and in establishing classifications, rates, and fees, the Postal Service is prohibited from engaging in "any undue or unreasonable

---

[3] *See* Brief of Complainant Mark Allen Edwards Regarding Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 December 2023, January 3, 2024 (Complainant's Opening Brief), Exhibit 6; POM § 631.8.

[4] *See* Complainant's Opening Brief, Exhibit 18 (excerpts from Rural Carrier Handbook).

discrimination among users of the mail," or granting "any undue or unreasonable preferences to any such user." 39 U.S.C. § 403(c). Further, 39 U.S.C. § 401(2) grants the Postal Service authority "to adopt, amend, and repeal such rules and regulations, not inconsistent with [title 39], as may be necessary in the execution of its functions under [title 39] and such other functions as may be assigned to the Postal Service under any provisions of law outside of [title 39]." If the Commission finds a complaint to be justified, "it shall order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance . . . ." 39 U.S.C. § 3662(c).

### B.      Factual Allegations

Edwards resides at 208 Celtic Lane, Clayton, Georgia, which is located within the Mountain Creek Estates housing development. Complaint at 2. The approved method of delivery for Mountain Creek Estates is central delivery to the cluster mailboxes located at the entrance of the community. *Id.* Mountain Creek Estates is served by Carrier Route 30525-R0007.[5] Edwards states in the Complaint that his residence is located 0.7 miles from the mailboxes. Complaint at 6.

The Complaint alleges that from December 2019 to March 2022, the Postal Service delivered oversized packages that did not fit in the mailboxes to Edwards' door, even though his residence is more than one-half mile away from the centralized mailbox location. *Id.* at 2. Edwards claims that the Postal Service then stopped that service "willfully and without notice." *Id.* Because the Postal Service apparently delivered oversized packages to Edwards' door for more than 1 year, the Complaint alleges that the Postal Service improperly changed that mode of delivery without Edwards' consent, in violation of POM §§ 631.1 and 631.8 and 39 U.S.C. § 401(2). *Id.* at 2-3. According

---

[5] Answering Brief of the United States Postal Service, January 25, 2024 (Postal Service Brief), Exhibit A, Declaration of Dustin Vanveldhuizen, ¶ 2 (Vanveldhuizen Declaration).

to Edwards, he must now drive 5.5 miles to the Clayton Post Office to pick up oversized packages. *Id.* at 6.

The Complaint further asserts that the Postal Service gave inconsistent reasons for discontinuing door delivery of oversized packages. First, in June 2022, the Clayton Postmaster stated in a letter that door delivery was stopped because Edwards' home was located more than one-half mile from the Carrier Route. *Id.* at 2. Next, in April 2023, after Edwards filed an online complaint with the Commission which was forwarded to the Postal Service, a Postal Service District Manager asserted in a letter that Edwards' driveway was "too narrow for a safe turnaround for the carrier," and "this would explain why delivery to your door was curtailed." *Id.* at 4-5. Finally, in May 2023, the District Manager wrote again to Edwards, stating that his complaint "was forwarded to our Law Department for review," and "[i]t was determined that in accordance with postal policy, carriers do not make deliveries to addresses over 1/2 mile from the main road."[6] The District Manager further asserted that the previous postal carrier "made an exception and was delivering to [Edwards] door," but that carrier "was operating outside of postal guidelines and had deviated from policy." *Id.* Edwards also claims that another carrier "admitt[ed] to [Edwards] in person that he was told not to deliver to [Edwards'] home because it was too far from the mailboxes," but the carrier "had no issue with the driveway specifically because of the driveway's turnaround spot." Complaint at 5. The Complaint alleges that the safety explanation was false and constituted "a retaliatory measure to justify not delivering packages" to Edwards' home. *Id.*

Finally, the Complaint also contends that the Postal Service "delivers to homes on the first western circular road with the furthest home getting oversized package delivery just over 1/2 mile from the [cluster] mailboxes." *Id.* at 6. Thus, the Complaint

---

[6] Complainant's Opening Brief, Exhibit 11, United States Postal Service Letter to Mark Edwards, May 11, 2023; United States Postal Service Partial Objections and Responses to Questions 1-6 of Complainant's Opening Brief, Exhibit 11; Presiding Officer's Information Request No. 2, question 2 (Response to POIR No. 2).

asserts that discontinuing delivery to Edwards' home, which is also more than one-half mile from the mailboxes, constitutes discrimination in violation of 39 U.S.C. § 403(c). *Id.* at 4-6. Edwards requests that the Commission order the Postal Service to resume delivery of oversized packages to his door to remedy these alleged violations of law. *Id.* at 9-10.

## III.  PROCEDURAL HISTORY

The Commission docketed the Complaint on July 7, 2023. On July 27, the Postal Service moved to dismiss the complaint for lack of subject matter jurisdiction (the POM violation and retaliation claims) and for failure to state a claim for which relief can be granted (the discrimination claim).[7] Edwards did not file a response to the motion.

On September 18, 2023, the Commission granted in part and denied in part the motion to dismiss. *See* Order No. 6688. The Commission concluded that it lacked jurisdiction over the POM violation claim, as application of the POM to Edwards' situation, even if incorrect, did not involve the Postal Service "adopting, amending, or repealing" a rule or regulation, such that it would bring the claim within the Commission's complaint jurisdiction.[8] Second, the Commission held that the retaliation claim also did not fall within any of the enumerated bases of the Commission's complaint jurisdiction. Order No. 6688 at 6.

As for the discrimination claim, however, the Postal Service conceded, solely for purposes of the Motion to Dismiss, that Edwards had pled that he was receiving less favorable services than those provided to one or more similarly situated postal customers, but it nevertheless argued that the half-mile delivery rule constituted a

---

[7] United States Postal Service's Motion to Dismiss, July 27, 2023, at 1 (Motion to Dismiss).

[8] Order No. 6688 at 6. It should be noted that in August 2022, Edwards also filed a civil action in the Northern District of Georgia alleging violations of the POM. *See* Complaint, Edwards v. Nichols, No. 22-cv-00160-SCJ (N.D. Ga. August 15, 2022), ECF Document No. 1. On November 21, 2023, the District Court dismissed that case without prejudice for lack of subject matter jurisdiction. *See* Order Granting Defendants' Motion to Dismiss, Edwards v. Nichols, No. 22-cv-00160-SCJ (N.D. Ga. November 21, 2023), ECF Document No. 21.

legitimate basis to deny Edwards those services. *Id.* at 7. The Commission rejected the Postal Service's argument, because Edwards alleged that other customers also outside the half-mile distance received oversized package delivery to their houses, so "[a]ccepting the Postal Service's argument on this point would in effect request the Commission to ignore potential discrimination because its preferential treatment of other customers violates its own policies." *Id.* at 8.

The Commission appointed me as Presiding Officer to ascertain two outstanding issues of material fact required to resolve whether a violation of 39 U.S.C. § 403(c) occurred:

1.     Whether any similarly situated postal customers in [Edwards'] neighborhood are receiving delivery of oversized packages to their doors.

2.     Whether postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to [Edwards'] residence.

*Id.* The Commission further directed me to "examine the disputed issues identified above and provide a public, written intermediate decision including findings of fact and conclusions of law on the issues raised in this proceeding." *Id.*

Thereafter, Edwards filed a motion for reconsideration of Order No. 6688.[9] Edwards argued, among other things, that the Commission's electronic docketing website did not alert him to the filing of the Motion to Dismiss, and that Commission interpreted its complaint jurisdiction under 39 U.S.C. §§ 3662(a) and 401(2) too narrowly. Motion for Reconsideration at 1-2. The Postal Service opposed the Motion for Reconsideration.[10]

---

[9] Motion to Reconsider Postal Regulatory Order No. 6688, October 20, 2023 (Motion for Reconsideration).

[10] *See* United States Postal Service's Memorandum in Opposition to Complainant's Motion to Reconsider Postal Regulatory Order No. 6688, October 27, 2023.

On November 1, 2023, the Commission denied the Motion for Reconsideration.[11] The Commission concluded that Edwards had demonstrated that he could effectively use the Commission's website, and because both the Motion to Dismiss and Order No. 6688 were published on the Commission's website, they were properly served on him. Order No. 6770 at 5 (citing 39 C.F.R. § 3010.127). The Commission also reaffirmed its prior ruling that its complaint jurisdiction "does not exist under section 401(2) when a complainant alleges that the Postal Service is misapplying its rule or regulations to that complainant." *Id.* at 7.

On November 21, 2023, the Postal Service filed a Motion for Correction of Order No. 6688.[12] According to the Postal Service, in Order No 6688, the Commission inadvertently mischaracterized the Postal Service's position by stating that Postal Service policy "precludes [door] delivery of oversized packages outside of a half-mile 'radius,'" rather than "more than one-half mile from the carrier's route." Motion for Correction at 2-3. The Postal Service indicated that this distinction was important, as Edwards had now taken the position that he was entitled to package delivery because his house was within a half-mile *radius* of the community mailboxes, even though the actual *driving distance* from the mailboxes to his house was 0.7 miles. *Id.* at 3. Edwards opposed the Motion for Correction, primarily asserting that the Postal Service had several prior opportunities to request correction of Order No. 6688, but failed to do so, and thus the Postal Service should be restricted from seeking correction now.[13]

On December 1, 2023, the Commission granted the Motion for Correction.[14] The Commission concluded that, despite the Postal Service's delay in seeking correction, there was good cause to correct Order No. 6688 "to avoid the potential for parties to use

---

[11] Order Denying Motion for Reconsideration, November 1, 2023 (Order No. 6770).

[12] United States Postal Service Motion Requesting that the Postal Regulatory Commission Correct Order No. 6688, November 21, 2023 (Motion for Correction).

[13] Opposition to Defendant's Correction of Postal Regulatory Commission's Order 6688, November 30, 2023 (Opposition to Motion for Correction).

[14] Order Granting Motion Requesting that the Postal Regulatory Commission Correct Order No. 6688, December 1, 2023 (Order No. 6820).

the Commission's inadvertent mischaracterization of the Postal Service's position against the Postal Service in this or other proceedings." Order No. 6820 at 4. The Commission noted that the relevant portion of the Rural Carrier Handbook limits door delivery of oversized packages to addresses "on the line of travel, or within one-half mile of the route," but in Order No. 6688, the Commission incorrectly paraphrased this regulation using the word "radius." *Id.* at 5. Moreover, the Commission concluded that correction was warranted notwithstanding any delay by the Postal Service, because Order No. 6688 did not interpret that section of the Rural Carrier Handbook or issue any ruling related to the Postal Service's interpretation of that provision. *Id.* at 5-6.

The parties participated in two pre-hearing conferences and exchanged discovery requests via two Presiding Officer's Information Requests issued on November 7, 2023.[15] The parties also agreed that the hearing should be conducted by written submission of material only.[16] A schedule for the submission of briefs, supporting evidence, and proposed findings of fact and conclusions of law was entered on December 5, 2023. *See* POR No. 3 at 3-4. The case is now fully briefed.

## IV. SUMMARY OF ARGUMENTS

### A. Complainant's Opening Brief

In his opening brief, Edwards argues that the Postal Service has engaged in discrimination because another residence in his neighborhood that is also located more than one-half mile from the Carrier Route receives door delivery of oversized packages.

---

[15] Presiding Officer's Information Request No. 1 Directed to Complainant, November 7, 2023 (POIR No. 1); Presiding Officer's Information Request No. 2 Directed to the United States Postal Service, November 7, 2023 (POIR No. 2). Because these Presiding Officer's Information Requests were discovery-like in nature, the parties' responses were not initially published to the Commission's website. *See* Presiding Officer's Ruling Establishing Procedural Schedule and Additional Case Management Procedures, October 31, 2023, at 2 (POR No. 2). However, the responses can be found as Exhibits 10 and 11 to Complainant's Opening Brief.

[16] Presiding Officer's Ruling Establishing Hearing Format and Schedule, December 5, 2023, at 1 (POR No. 3).

Complainant's Opening Brief at 8. Specifically, Edwards contends that 565 Celestial Circle[17] is located more than one-half mile from the centralized mailboxes, using either the east or the west driving route, but routinely receives door delivery of oversized packages. Complainant's Opening Brief at 9. Edwards claims to have calculated this distance by adding each step of the driving directions provided by Google Maps, and that this method purportedly shows that 565 Celestial Circle is "91 feet over 1/2 mile from the mailboxes."[18] Edwards also asserts that he walked from the 565 Celestial Circle driveway to the mailboxes while using a Global Positioning System (GPS) application on his phone, and the GPS app showed the shortest distance as 0.52 miles. Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2. According to Edwards, 565 Celestial Circle received door delivery at least 10 times from December 6 to December 30, 2023, despite being more than one-half mile from the Carrier Route. Complainant's Opening Brief at 9.

Edwards further argues that all the homes in Mountain Creek Estates are within a one-half mile radius of the mailbox. *Id.* Accordingly, Edwards suggests that the reference to "within one-half mile of the route" in Rural Carrier Handbook § 331.21 should be interpreted as a radius rather than driving distance, as this interpretation "would ensure full and equal delivery services to all residents in Mountain Creek Estates," and "would also explain door delivery to [Edwards' residence] for over two years." *Id.* at 8-9.

Alternatively, Edwards contends that the Postal Service "routinely delivers outside of 1/2 mile from the line of travel using driving distance," because the *roundtrip*

---

[17] The parties' briefs refer to this address interchangeably as "565 Celestial Circle" and "565 Celestial Drive." *See* Response of Complainant Mark Allan Edwards to the USPS Answering Brief Regarding Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 11 December 2023, February 2, 2024, at 5 n.2 (Complainant's Reply Brief). The *usps.com* ZIP Code Lookup tool lists the address as "565 Celestial Circle," so this decision will refer to that address using that name.

[18] Complainant's Opening Brief, Exhibit 10; Response to Presiding Officer's Information Request No. 1, question 2 (Response to POIR No. 1).

distance from the Carrier Route to serve all the homes on Celestial Circle is 1.1 miles. *Id.* at 10. Thus, in Edwards' view, all 14 homes on Celestial Circle are similarly situated to his residence on Celtic Lane. *Id.*

Next, with respect to the discontinuation of door delivery of oversized packages, Edwards notes that door delivery to his residence was in effect for more than 2 years, and the Postal Service provided inconsistent explanations for why it stopped. *Id.* at 11-12. He asserts that the Postal Service established door delivery as a "mode of delivery" under the POM, so it may not be discontinued without his consent. *Id.* at 15. Moreover, Edwards contends that the Postal Service's explanation that his driveway was too narrow for a safe turnaround is false and is undermined by the fact that he receives door delivery of packages from other delivery services. *Id.* at 13-14.

Finally, Edwards claims that his postal carrier has violated the Rural Carrier Handbook by "occasionally not taking packages out for delivery at all," and has also failed to deliver packages "multiple times" that would have fit inside his mailbox. *Id.* at 14.

### B.     Postal Service's Response Brief

The Postal Service responds that it was not discriminatory to discontinue the "exceptional treatment" of door delivery of oversized packages to Edwards' residence, because no other customers in his neighborhood who live more than one-half mile from the Carrier Route receive door delivery. Postal Service Brief at 6-7. The Postal Service asserts that it calculates distance from the carrier's line of travel using Google Maps or by physically driving to the address. *Id.* at 5-6. The Postal Service observes that Edwards' residence is 0.7 miles from the Carrier Route according to Google Maps. *Id.* at 6. However, the Postal Service contends that Google Maps reflects that 565 Celestial Circle is 0.5 miles from the route. *Id.* at 7. Moreover, the Postal Service states that the Clayton Postmaster used a mail delivery van to drive from the Carrier Route and 565 Celestial Circle, which confirmed that the shortest distance was one-half mile. *Id.* at 9. The Postal Service further notes that nothing in the language of POM § 331.21

supports Edwards' argument that the half-mile distance should be measured as a round trip or as a radius. *Id.* at 7 n.29.

With respect to Edwards' argument that 565 Celestial Circle is slightly more than one-half mile from the Carrier Route, the Postal Service contends that Edwards' summation of the stated mileage for each individual step of the Google Maps driving directions and his use of a phone GPS app are not reliable, and, in any event, are not the methods the Postal Service uses to determine distance from the route. *Id.* at 8-9. The Postal Service also points out that Edwards has not introduced evidence of the actual driving distance from the route to 565 Celestial Circle, so it should be inferred "that the evidence would have shown that 565 Celestial Circle is not more than one-half mile from the carrier's route." *Id.* at 10.

Turning to the issue of whether the Postal Service followed non-discriminatory processes, the Postal Service asserts that at the time it discontinued door delivery of oversized packages to Edwards' residence, no similarly situated customer was receiving more favorable service. *Id.* at 11. Thus, according to the Postal Service, there could not have been discrimination in the process of curtailing door delivery. *Id.* To the extent Edwards contends that the Postal Service improperly discontinued a "mode of delivery" without his consent, the Postal Service notes that Edwards' claim alleging violations of the POM has already been dismissed for lack of jurisdiction, so any such arguments are inconsequential. *Id.* at 12. With respect to Edwards' representation that his driveway can safely accommodate door delivery, the Postal Service states that this issue is likewise immaterial, because, although the Postal Service believes that door delivery to Edwards' residence would be unsafe, its decision was ultimately based on the over-one-half-mile distance from the Carrier Route. *Id.*

The Postal Service further suggests that even if the Commission were to conclude that Edwards received less favorable service than another similarly situated customer, "there is indeed a legitimate basis for differentiating eligibility for door delivery of oversized packages by distance from the carrier's route." *Id.* at 14. According to the Postal Service, such limitations "minimize the time, effort, and expense associated with

the carrier having to deviate from their assigned routes," *id.*, and are "rationally related to the Postal Service's legitimate interest in providing efficient and economical mail delivery in furtherance of its duties and authority under title 39 of the United States Code." *Id.* at 14-15.

Next, the Postal Service contends that the proper remedy for any discrimination would be to discontinue door delivery service to Edwards' neighbor, not to order the Postal Service to violate its own regulations by resuming door delivery service to Edwards' residence. *Id.* at 14 n.54.

Finally, the Postal Service asserts that the Commission lacks jurisdiction to entertain Edwards' new claim that the Postal Service violated a different provision of the Rural Carrier Handbook when it allegedly failed to deliver packages that would have fit in Edwards' mailbox. *Id.* at 11 n.45.

### C.    Complainant's Reply Brief

With respect to whether any of Edwards' neighbors are similarly situated, Edwards replies that 565 Celestial Circle is more than one-half mile from the Carrier Route, and the carrier "routinely exceeds 1/2 mile from the route when the carrier drives the full Celestial loop in delivering packages." Complainant's Reply Brief at 5.  He further observes that the use of actual driving distance to determine distance from the route can be unreliable, because "[v]ehicle odometer accuracy can be off by as much as 7% depending on certain conditions and must account for tire size, tire wear and other issues." *Id.* at 6.  Edwards also notes that the Postal Service's own photo of the delivery van odometer "shows the Carrier reaches .5 mile BEFORE it reaches 565 Celestial [Circle].  The vehicle is still in the middle of the road in the picture with roadway clearly visible between the hood and the driveway." *Id.* at 7.

As for the non-discriminatory process issue, Edwards replies that the Postal Service's assertion that his driveway poses safety concerns "is clear evidence of bias and discrimination against the Complainant." *Id.* at 8.  He further reiterates that he is requesting that the Postal Service resume the discontinued mode of delivering

oversized packages to his door, not that the Postal Service establish a new mode of delivery for his address.  *Id.*

## V.    ANALYSIS

### A.    Legal Standard

Title 39, United States Code, imposes on the Postal Service a number of obligations and responsibilities associated with its mail delivery duties.  For instance, the Postal Service "shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities."  39 U.S.C. § 101(a). Likewise, the Postal Service has statutory duties "to maintain an efficient collection, sorting, and delivery of the mail nationwide," and "to provide types of mail service to meet the needs of different categories of mail and mail users."  39 U.S.C. § 403(b)(1-2).

"In providing services and in establishing classifications, rates, and fees under [title 39]," the Postal Service may not "make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user."  39 U.S.C. § 403(c).  When evaluating claims of discrimination among mail users, the Commission follows the guidance set forth in *Egger v. U.S. Postal Serv.*, 436 F. Supp. 138 (W.D. Va. 1977).  In *Egger*, the District Court held that it is "obvious that the Postal Service may provide different levels of delivery service to different groups of mail users so long as the distinctions are reasonable."  *Egger*, 436 F. Supp. at 142.  Thus, the Postal Service may differentiate among customers where the differences have a rational basis.[19]

Accordingly, to establish a violation of 39 U.S.C. § 403(c), the Commission requires a complainant to show three things: (1) the complainant is receiving less favorable services than those provided to one or more other postal customers, (2) the complainant is similarly situated to those postal customers receiving more favorable

---

[19] *See* Docket No. C2015-2, Order Granting Motion to Dismiss, July 15, 2015, at 12 (Order No. 2585).

service, and (3) there is no rational or legitimate basis for denying the complainant the more favorable service currently being provided to those similarly situated postal customers.  *See* Order No. 6688 at 7.

The first element of a Section 403(c) discrimination claim is not seriously at issue in this case.  Edwards has produced ample, uncontested evidence demonstrating that he currently does not receive door delivery of oversized packages, but that other customers in his neighborhood do receive such service.[20]  Consequently, I will begin by analyzing whether Edwards has met the second requirement of a discrimination claim by showing that he is similarly situated to customers in his neighborhood who receive door delivery of oversized packages.

In addressing the arguments and evidence presented by the parties, I am mindful of the Supreme Court's instruction that documents filed by pro se litigants must be liberally construed and held to less stringent standards than documents drafted by licensed attorneys.[21]  This concern appears to be relatively minor here, as Edwards has submitted coherent filings that demonstrate his understanding of the issues he is expected to address.  To be sure, Edwards is not entitled to a more lenient application of *substantive* law simply because he is pro se, and fairness concerns prohibit consideration of "legal and evidentiary theories" that litigants themselves do not articulate.[22]  However, this decision has given full consideration to Edwards' discernable arguments without regard to whether they would meet the formalities that would be expected of professional attorneys.

---

[20] *See, e.g.*, Complainant's Opening Brief, Exhibit 8, United States Postal Service Letter to Mark Edwards, April 7, 2023; Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2.c.

[21] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

[22] *See Jones v. Kircher*, 835 F.3d 74, 83 (D.C. Cir. 2016).

B.    Issue 1: Whether Any Similarly Situated Postal Customers in Edwards' Neighborhood Are Receiving Door Delivery of Oversized Packages

1.    Comparator Evidence: 565 Celestial Circle

Edwards' primary argument is that another residence in his neighborhood, 565 Celestial Circle, receives door delivery of oversized packages despite being more than one-half mile from the Carrier Route. It is worth noting that during discovery, Edwards listed several other addresses to which he has "personably observed the Postal Carrier deliver." *See* Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2.c. However, Edwards' briefs do not mention these other addresses or discuss whether any of them is similarly situated to his residence. Accordingly, this decision will consider only Edwards' evidence and legal arguments related to 565 Celestial Circle.[23]

Edwards has submitted evidence that the owner of 565 Celestial Circle is receiving door delivery of oversized packages. On at least three occasions, Edwards ordered products on Amazon that were delivered by the Postal Service to 565 Celestial Circle. Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2.c. Edwards' Amazon account shows that the packages were "left near the front door or porch" of that address. *Id.* Edwards further provides a declaration from the owner of 565 Celestial Circle stating that she had previously been told that she was too far from the community mailboxes to receive door delivery, so she rented a PO Box for 2 years.[24] In addition, Edwards offers his own photographic evidence showing Postal Service delivery vehicles traveling along Celestial Circle several times in December 2023. Complainant's Opening Brief, Exhibit 13. Finally, Edwards asserts that a postal carrier named "Derrick" stated in June 2022 that he delivered to all of the homes on

---

[23] *Cf. Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717 n.1 (D.C. Cir. 2006) (noting that litigants waive arguments they fail to raise in briefs).

[24] Complainant's Opening Brief, Exhibit 12, Declaration of Stepheni Granen (Granen Declaration).

Celestial Circle, but he was told not to deliver to Edwards' home. Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2.

Edwards also presents evidence purporting to show that 565 Celestial Circle is more than one-half mile from the Carrier Route. First, Edwards retrieved the Google Maps driving directions from the community mailboxes to 565 Celestial Circle. *See id.* According to Edwards, when the distance for each step of the directions is added together, the sum demonstrates that 565 Celestial Circle "is 91 feet over ½ mile from the mailboxes." *Id.* Second, Edwards asserts that he walked the distance from 565 Celestial Circle to the mailboxes while using a GPS application on his phone, and the application showed that the shortest distance was 0.52 miles. *Id.*

The Postal Service does not challenge Edwards' claim that 565 Celestial Circle is receiving door delivery of oversized packages. However, the Postal Service counters with evidence that, using the methods employed by the Postal Service, 565 Celestial Circle is within one-half mile of the Carrier Route, but Edwards' residence is not. The Postal Service first offers a declaration of a Rural Delivery Specialist stating that he retrieved the driving directions between the Carrier Route and 565 Celestial Circle from Google Maps, which displayed the total travel distance as 0.5 mile. *See* Vanveldhuizen Declaration, ¶¶ 4-5. The Postal Service also provides a declaration from the Clayton Postmaster stating that on November 22, 2023, he personally drove a postal van to determine the shortest distance from the Carrier Route to 565 Celestial Circle.[25] According to the odometer reading shown in the photograph, the shortest driving distance was 0.5 mile. *See* Nichols Declaration ¶¶ 5-6.

The Commission determines whether postal customers are "similarly situated" on a case-by-case basis by comparing the relevant characteristics of each customer.[26] In this case, the relevant characteristic is distance from the Carrier Route. Edwards has

---

[25] Postal Service Brief, Exhibit B, Declaration of Colby Nichols, ¶ 4 (Nichols Declaration).

[26] Docket No. C2020-2, Order Granting the Postal Service's Motion to Dismiss Complaint with Prejudice, April 28, 2020, at 11 (Order No. 5491).

not disputed that his residence is outside the half-mile distance from the Carrier Route for door delivery of oversized packages set forth in the Rural Carrier Handbook.[27]

To his credit, Edwards has carefully identified another residence in his neighborhood which he believes to be similarly situated to his own residence – 565 Celestial Circle – and has conducted detailed research to support his claim that 565 Celestial Circle is more than one-half mile from Carrier Route. But while the distance between the Carrier Route and 565 Celestial Circle is highly relevant to whether it is similarly situated to Edwards' residence, the precise physical distance is not entirely dispositive. As discussed above, the parties have offered competing evidence as to whether 565 Celestial Circle is within one-half mile of the route. The Postal Service's methods of determining distance from the route – the total driving distance as shown by Google Maps, or the actual delivery vehicle driving distance – indicate that 565 Celestial Circle is within one-half mile of the Carrier Route and would thus be eligible for door delivery of oversized packages under the Rural Carrier Handbook. *See* Postal Service Brief at 7-9. Edwards counters that he measured the distance by adding each individual step in the Google Maps driving directions and by walking the route while using a GPS app on his phone, and these methods demonstrate that 565 Celestial Circle is somewhere between 91 to 105 feet (0.02 miles) more than one-half mile from the Carrier Route. *See* Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2. Thus, in Edwards' view, the Postal Service "routinely drives over 1/2 mile from the line of travel when it delivers oversized packages in either direction to 565 Celestial [Circle]." Complainant's Opening Brief at 8.

---

[27] *See* Complaint at 6. In response to POIR No. 1, Edwards produced a Google Maps printout measuring the distance from the community mailboxes to his house as 0.8 miles. Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2. The Postal Service also produced a Google Maps printout displaying the distance to Edwards' residence from the nearest point on the Carrier Route as 0.7 miles. Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 4. Because distance from the Carrier Route is the pertinent consideration under the Rural Carrier Handbook, and, at any rate, either distance exceeds one-half mile, this decision will treat 0.7 miles as the controlling distance.

Based on the foregoing evidence, it seems to me to be a futile exercise to attempt to decide this case by determining with mathematical precision exactly how far 565 Celestial Circle is from the Carrier Route. This problem is underscored by each party's observations that the opposing party's measurements include an unknowable margin of error. For example, the Postal Service points out that the step-by-step Google Maps driving directions include distances expressed in both tenths of a mile and feet, and Edwards' calculation assumes that the tenths of a mile are not rounded (for example, that 0.2 miles is exactly 1,056 feet). Postal Service Brief at 8. Moreover, Edwards begins his calculations at the community mailboxes, but according to the Postal Service, the closest point on the Carrier Route to 565 Celestial Circle is actually 52 feet down the road on which the mailboxes are located. *Id.* Likewise, Edwards notes that there may be discrepancies when measuring driving distance using an odometer due to factors such as the condition of the tires, and the exact distance may also vary based on which part of the customer's property is used as the endpoint.[28]

Ultimately, however, the remaining issue in this case is *discrimination*: whether the Postal Service is providing different levels of service to similarly situated customers without a legitimate reason. Therefore, in my view, the dispositive question here is not whether 565 Celestial Circle is *exactly* one-half mile or less from the Carrier Route. The more important question is whether the Postal Service's determination, based on the Google Maps calculation and the actual driving distance, that 565 Celestial Circle is within the half-mile distance from the Carrier Route set out in the applicable Rural Carrier Handbook regulation, while Edwards' residence is not, is a reasonable and non-discriminatory application of the Rural Carrier Handbook.[29]

---

[28] Complainant's Reply Brief at 6. For example, if distance is measured from the customer's driveway, Edwards contends that the Postal Service's photograph shows that the delivery van is slightly short of the 565 Celestial Circle driveway, but its odometer has already reached 0.5 miles. *Id.* at 7.

[29] *See* Order No. 2585 at 10 (Postal Service letter interpreting provisions of employee handbook addressing animal threats was "consistent with and a reasonable interpretation of those rules or regulations"); *see also Egger*, 436 F. Supp. at 142 (Postal Service's interpretation of regulation in its own manual was "controlling since it is not plainly erroneous or inconsistent with [that] regulation]").

The answer appears to be yes. Section 331.21 of the Rural Carrier Handbook limits door delivery of oversized packages to residences within one-half mile of the Carrier Route, but does not specify how that half-mile distance must be calculated. The Postal Service's use of the total driving distance calculated by Google Maps or the actual driving distance displayed on the vehicle odometer seems to be consistent with and a reasonable interpretation of that provision of the Rural Carrier Handbook. It is eminently reasonable for the Postal Service to determine driving distances using a popular program designed and widely used for that very purpose.[30] Moreover, Edwards has not shown that it is unreasonable for the Postal Service to rely on the aggregate distance calculated by Google Maps rather than to calculate the distance as the sum of each individual step of the directions, particularly given the uncertainty as to whether distances represented by Google Maps as tenths of a mile are rounded.[31] Likewise, it seems reasonable for the Postmaster or the postal carrier to physically drive from the route to the customer's residence and judge the driving distance using the vehicle's odometer, even if such a method inherently includes some margin of error and can only be calculated to the nearest tenth of a mile. Overall, Edwards' alternative methods of calculating the driving distance from the Carrier Route to 565 Celestial Circle are not the methods used by the Postal Service, and he has not shown that the Postal Service's

---

[30] Google Maps has a 70 percent market share of digital navigation. *See* Ian Krietzberg, *Big Tech Giants Are Working to Change the Mapping Industry*, TheStreet, (July 28, 2023), available at *https://www.thestreet.com/technology/big-tech-working-to-change-mapping-industry.*

[31] Indeed, the evidence appears to show rounding effects when calculating the distance from the Carrier Route to Edwards' own address. To investigate this question, I used Google Maps to recreate the driving directions from the mailbox coordinates to Edwards' address as shown in his response to Question 2 of POIR No. 1. The results were follows: 52 feet from the mailboxes to the intersection at the entrance to Mountain Creek Estates (the nearest point on the Carrier Route); 0.3 miles from the intersection to Heavenly Circle; 0.3 miles from Heavenly Circle to Celtic Drive; and then 0.2 miles to Edwards' residence, for a total of 0.8 miles (plus 52 feet). Yet the Postal Service's Google Maps printout shows an aggregate calculation of 0.7 miles from the intersection to Edwards' residence. *See* Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 4. Accordingly, it is far from clear that Edwards' summation method is a more accurate way of determining driving distance than the aggregate distance calculated by Google Maps given the potential impact of rounding on each individual step of the directions.

methods represent an unreasonable interpretation or application of the pertinent provision of the Rural Carrier Handbook.

Further, the Postal Service has not ascertained the driving distance from the Carrier Route to either 565 Celestial Circle or Edwards' address in a discriminatory manner. The Postal Service did not use two different measurement methods to justify providing different services to 565 Celestial Circle and Edwards' residence. By way of illustration, the Postal Service did not use Google Maps to determine that 565 Celestial Circle was entitled to door delivery of oversized packages, and then use a *different* method to exclude Edwards from the same service. Nor did the Postal Service apply a particular measurement method inconsistently. For example, if the evidence showed that 565 Celestial Circle and Edwards' residence were *both* 0.7 miles from the Carrier Route according to Google Maps, and the Postal Service rounded the distance down to 0.5 miles for 565 Celestial Circle but not for Edwards, the evidence of discrimination would be considerably stronger.

Consequently, the record demonstrates that the Postal Service properly determined that 565 Celestial Circle is within one-half mile of the Carrier Route, but Edwards' residence is not. Under either of the methods employed by the Postal Service (total Google Maps driving distance or actual driving distance shown on the vehicle odometer) the Postal Service reasonably determined that 565 Celestial Circle is within one-half mile of the Carrier Route and is thus entitled to door delivery of oversized packages according to the Rural Carrier Handbook. Edwards does not contest that his residence is at least 0.7 miles from the Carrier Route, which exceeds the half-mile limitation on door delivery. Thus, notwithstanding Edwards' attempt to show that the Postal Service's distance measurements may be subject to some minor variance, Edwards is not similarly situated to the owner of 565 Celestial Circle based on the relevant characteristics.

### 2. Edwards' Alternative Arguments

Edwards offers two alternative, and somewhat contradictory, arguments that he is similarly situated to other postal customers in Mountain Creek Estates. First, Edwards contends that he is entitled to door delivery of oversized packages because his residence, like all others within Mountain Creek Estates, is within a half-mile "radius" of the community mailboxes. Complainant's Opening Brief at 8. But this argument arises from a misunderstanding that appears to have been inadvertently introduced by the Commission in Order No. 6688. In that order, the Commission "incorrectly paraphrased the Postal Service's use of the phrase 'on the line of travel, or within one-half mile of the route' using the word 'radius.'" Order No. 6820 at 5 (citing Order No. 6688 at 7). Because the Commission's mischaracterization of the Postal Service's argument could be used against it in this or other proceedings, the Commission found good cause to correct Order No. 6688. *Id.* at 4. Accordingly, the Commission also issued a Notice of Errata, which updated Order No. 6688 to remove any references to a "half-mile radius."[32] The Commission noted, however, that "Complainant may make arguments about the interpretation of the Postal Service's rule before the Presiding Officer." Order No. 6820 at 6 n.14.

Edwards' suggestion that the half-mile distance from the Carrier Route set forth in § 331.21 of the Rural Carrier Handbook should be interpreted as a "radius," rather than actual driving distance, is not compelling. Edwards' residence is located more than one-half mile from the Carrier Route when measured in driving distance, but he asserts that every home in Mountain Creek Estates, including his own, is within a half-mile "radius" (*i.e.,* "as the crow flies") of the community mailboxes. Complainant's Opening Brief at 8. But the term "radius" does not appear in the text of that provision of the Rural Carrier Handbook,[33] nor has Edwards pointed to record evidence indicating that the

---

[32] Notice of Errata, December 1, 2023, at 1 (Notice of Errata).

[33] *See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 116 (D.C. Cir. 2020) ("Where, as here, an agency's regulation is unambiguous, the court must give effect to the regulation's plain meaning.").

Postal Service has interpreted that provision as a "radius" rather than actual driving distance beyond his own speculation that his interpretation "would also explain door delivery to [his residence] for over two years." Complainant's Opening Brief at 9. And although Edwards contends that defining the half-mile distance as a radius "would ensure full and equal delivery services to all residents in Mountain Creek Estates," *id.*, Edwards' belief that his preferred interpretation would be good policy is insufficient to override the plain language of the Rural Carrier Handbook.[34] For these reasons, Edwards has not shown that the Rural Carrier Handbook reference to "within one-half mile of the route" should be interpreted as a "radius" such that his residence would be entitled to door delivery of oversized packages under that regulation.

Edwards' contention that he is similarly situated to the 14 residences on Celestial Circle because the postal carrier drives a 1.1-mile *roundtrip* distance to deliver oversized packages is also unpersuasive. Complainant's Opening Brief at 10. Just as with the "radius" argument discussed above, the word "roundtrip" appears nowhere in the text of the Rural Carrier Handbook regulation at issue, nor has Edwards identified any evidence suggesting that the Postal Service has interpreted the regulation's reference to a half-mile distance as a roundtrip rather than one-way driving distance.[35] Thus, Edwards has not demonstrated that he is similarly situated to other residences located on Celestial Circle simply because the postal carrier must drive a 1.1-mile roundtrip loop in order to deliver oversized packages to those houses.

---

[34] *See Zhang v. U.S. Citizenship & Immigration Servs.*, 978 F.3d 1314, 1322 (D.C. Cir. 2020) ("[W]e cannot disregard the plain meaning of a regulation based on policy considerations.").

[35] *Cf. S.A. Storer & Sons Co. v. Sec'y of Labor*, 360 F.3d 1363, 1372 (D.C. Cir. 2004) ("The [Occupational Safety and Health Review] Commission rejected this argument, and so do we; it founders because it disregards the plain language of the applicable regulations.") (internal citation omitted).

C.      Issue 2: Whether Postal Management Followed Non-Discriminatory
        Processes in the Discontinuation of Door Deliver of Oversized Packages
        to Complainant's Residence

Before analyzing Edwards' claim of discrimination based on the allegedly improper discontinuation of door delivery of oversized packages to his residence, it is important to clarify what is *not* at issue here. Edwards' brief discusses a number of issues related to the interpretation of the POM, including whether door delivery of oversized packages to his residence established a "mode of delivery" under POM § 631.1, and whether the Postal Service violated POM § 631.8 when it stopped door delivery that had been ongoing for more than 1 year without first obtaining his consent. *See* Complainant's Opening Brief at 11. But the Commission has already determined that it lacks jurisdiction over Edwards' claims alleging violations of the POM. *See* Order No. 6688 at 6. So in my role as the Presiding Officer exercising the authority delegated to me by the Commission, I cannot entertain such claims now. This reasoning also applies to Edwards' new claim that his postal carrier violated a different provision of the Rural Carrier Handbook by failing to take packages out for delivery that would fit in his mailbox.[36] The issue the Commission has asked me to decide is whether Postal Service management engaged in a *discriminatory* process when it discontinued door delivery to Edwards' residence, not whether it *in fact* violated or misapplied the POM. *See* Order No. 6688 at 8.

Even though the Commission lacks jurisdiction to adjudicate the alleged violations of the POM, evidence that the Postal Service neglected to follow its own procedures is nonetheless highly relevant to Edwards' discrimination claim. Edwards' evidence on this point seems fairly strong. The Postal Service does not contest that Edwards received door delivery of oversized packages for a period of more than 1 year. *See* Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 5.

---

[36] *See* Complainant's Opening Brief at 14. In addition, Edwards does not rely on these purported violations of the POM as a basis for his § 403(c) discrimination claim. *See id.*, Exhibit 23 (Edwards Declaration).

And the Postal Service has not rebutted Edwards' assertion that door delivery was curtailed without first obtaining his consent. *See* Complainant's Opening Brief at 4.

Perhaps even more concerning is Edwards' documented difficulty in obtaining a clear answer from the Postal Service as to exactly why door delivery of oversized packages was discontinued. Among other things, Edwards has produced the following evidence: (1) a June 2022 letter from the Clayton Postmaster stating that his address could not receive door delivery because it was not within one-half mile from the Carrier Route;[37] (2) an April 2023 letter from the Georgia District Manager of Consumer Affairs stating that Edwards' driveway "is too narrow for a safe turnaround for the carrier;"[38] and (3) a May 2023 letter from the same District Manager stating that the Postal Service's Law Department had determined that he was ineligible for door delivery due to his distance from the main road. *Id.* Edwards has also offered testimony and photographs purporting to undermine the Postal Service's safety justification, asserting that numerous other delivery services and companies have used trucks to deliver packages and products to his residence with no safety issues, and that a postal carrier, "Derrick," told him that his driveway "had a turnaround so safety wasn't a factor."[39]

Edwards has presented evidence that the Postal Service has offered multiple rationales for its decision, as well as evidence that one of those reasons was untrue or incorrect. In this way, Edwards is raising similar arguments to those that are commonly seen in employment discrimination cases. Plaintiffs alleging employment discrimination often rely on evidence suggesting that an employer's stated reason for taking an adverse action against them was merely a pretext for discrimination.[40] In other words, if a plaintiff offers sufficient evidence for the factfinder to disbelieve the defendant's explanation for its conduct, the factfinder may then infer "the ultimate fact of

---

[37] Complainant's Opening Brief, Exhibit 7.

[38] Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 2.

[39] Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2, 4.

[40] *See, e.g.,* *Walker v. Johnson,* 798 F.3d 1085, 1093 (D.C. Cir. 2015).

discrimination."[41] As relevant here, "shifting and inconsistent justifications" are usually probative of whether a given explanation is actually pretextual.[42]

With that said, even if Edwards' evidence might demonstrate pretext, he does not necessarily prevail. To borrow again from employment discrimination law, pretext evidence must be viewed in light of all the surrounding circumstances of the case.[43] For example, a defendant may conclusively show "some other, nondiscriminatory reason" for its decision, or there may be "only a weak issue of fact as to whether the employer's reason was untrue" and "abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

When applying these principles to the discrimination question here, the weight of the evidence favors the Postal Service. The evidence does show that the Postal Service changed its rationale for discontinuing door delivery of oversized packages to Edwards' residence, and its safety justification is undermined by Edwards' testimony. However, even if I were to conclude that the Postal Service's safety justification is not credible, the Postal Service makes clear in its brief that it is primarily relying on the over-one-half-mile driving distance between the Carrier Route and Edwards' residence as the basis for its decision. Postal Service Brief at 12. Importantly, the driving distance between the route and Edwards' home (0.7 miles) is both uncontested and objectively verifiable. And it is notable that the driving distance was the first explanation for its actions the Postal Service gave to Edwards, and it only later introduced the safety justification in April 2023.

Further, Edwards has not presented sufficient evidence to demonstrate that the process by which postal management discontinued door delivery of oversized packages

---

[41] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

[42] *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011).

[43] *See Giles v. Transit Emps. Credit Union*, 794 F.3d 1, 9 (D.C. Cir. 2015).

to his residence was related to *discrimination*.[44]  As discussed above, a discrimination claim under § 403(c) requires a showing that similarly situated customers are receiving more favorable service than the complainant.  The Postal Service's evidence reflects that at the time door delivery was discontinued, Edwards was the only customer in Mountain Creek Estates living more than one-half mile from the Carrier Route who received that service.  Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 6.  And for the reasons stated previously, Edwards has not identified a similarly situated residence located more than a half-mile from the Carrier Route that has received door delivery since the service to his address was curtailed.

Consequently, based on the totality of the circumstances, the evidence favors the Postal Service's nondiscriminatory explanation that management discontinued a service to which Edwards was not entitled.  That is not to say, however, that the Postal Service's handling of this matter was exemplary.  Even if Edwards has fallen short of showing discrimination, he is understandably frustrated by the process by which door delivery of oversized packages was curtailed.  As the Postal Service acknowledged in its May 2023 letter to Edwards, his previous carrier "was operating outside of postal guidelines and had deviated from policy" when the carrier delivered oversized packages to his door.  Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 2.  Edwards also alleges that the Postal Service discontinued door delivery without notice or attempt to obtain his consent.  *See* Complaint at 3.  Later, when Edwards tried to obtain an explanation from the Postal Service, he was given inconsistent reasons that, in some cases, were apparently contradicted by other postal employees, such as the carrier assigned to his route.  *See* Complainant's Opening Brief, Exhibit 10; Response to POIR No. 1, question 2.  Overall, it seems that more effective employee training or consistent communication from management might have prevented the dispute between Edwards and the Postal Service from getting to this

---

[44] *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphases in original).

point (and from spawning a related federal lawsuit). It is my hope that the Postal Service will review its internal procedures related to door delivery service and the handling of customer complaints to avoid similar allegations of discrimination in the future.

### D. Whether the Postal Service Had a Rational or Legitimate Basis for Distinguishing Among Postal Customers

Because, in my view, the evidence does not support a determination that the Postal Service discriminated against Edwards, I need not decide the third issue of whether there is a rational or legitimate reason for any less favorable treatment. I note briefly that the Postal Service has identified a general basis for "differentiating eligibility for door delivery of oversized packages by distance from the carrier's route." Postal Service Brief at 14. As the Postal Service accurately points out, title 39 directs the postal service to "provide prompt, reliable, and efficient services to patrons in all areas," 39 U.S.C. § 101(a), and to "maintain an efficient system of collection, sorting, and delivery of the mail nationwide," 39 U.S.C. § 403(b)(1). Taken at face value, the Postal Service's use of driving distance to distinguish between customers entitled to door delivery of oversized packages seems rationally related to its statutory mandate. However, the Postal Service's brief does not present arguments on this point that relate specifically to Edwards' residence or Mountain Creek Estates, and, in any event, there does not appear to be sufficient evidence to support a finding of discrimination in the first place. Thus, the question of whether any discrimination was "undue or unreasonable," in violation of 39 U.S.C. § 403(c), need not be resolved here.

## VI.    PRESIDING OFFICER'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings of Fact

1.    Edwards resides at 208 Celtic Lane, which is located within the Mountain Creek Estates housing development in Clayton, Georgia.[45]

2.    Mountain Creek Estates is served by Carrier Route 30525-R0007.[46]

3.    The mode of delivery for addresses within Mountain Creek Estates, including Edwards' residence, is centralized mailboxes located at the entrance to the development.[47]

4.    Door delivery of oversized packages to addresses in Mountain Creek Estates is governed by Section 331.21 of the Rural Carrier Handbook, which provides as follows:

> If a parcel is too large for the box, make a reasonable effort to attract the customer to the box to receive the parcel. Do this by sounding the horn or by hailing the customer. If unsuccessful, you must deliver parcels to any residence or business that is on the line of travel or within one-half mile of the route and has a passable road leading to it . . . .[48]

5.    To determine whether an address is within one-half mile of the Carrier Route for purposes of door delivery of oversized packages, the Postal Service uses the total driving distance displayed by Google Maps. Alternatively, the Postmaster or local carrier may physically drive from the Carrier Route to the address to determine the shortest travel distance using the roads available.[49]

---

[45] Complaint at 2.

[46] Vanveldhuizen Declaration ¶ 2.

[47] Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 6.

[48] Complainant's Opening Brief, Exhibit 18 (Rural Carrier Handbook excerpts).

[49] Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 4.

6.  As measured using both Google Maps and actual driving distance, the shortest distance from the Carrier Route to Edwards' residence is 0.7 miles, which exceeds one-half mile from the route.[50]

7.  From December 2019 to March 2022, a postal carrier occasionally delivered oversized packages to Edwards' door.[51]

8.  During that time, no other customer in Edwards' neighborhood whose residence was located more than one-half mile from the Carrier Route received door delivery of oversized packages.[52]

9.  In or around April 2022, the Postal Service discontinued door delivery of oversized packages to Edwards' residence.[53]

10.  565 Celestial Circle is an address in Mountain Creek Estates that is also served by Carrier Route 30525-R0007.[54]

11.  Google Maps calculates the total driving distance between the Carrier Route and 565 Celestial Circle as 0.5 miles.[55]

12.  The Clayton Postmaster also drove the shortest distance between the Carrier Route and 565 Celestial Circle and determined that distance to be 0.5 miles.[56]

B.  Conclusions of Law

1.  Because Edwards' residence is located more than one-half mile from the Carrier Route, he is ineligible for door delivery of oversized packages pursuant to Section 331.21 of the Rural Carrier Handbook.

---

[50] Complaint at 5; Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, questions 2-4.

[51] Complaint at 1; Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 5.

[52] Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 6.

[53] Complaint at 1; Complainant's Opening Brief, Exhibit 11; Response to POIR No. 2, question 2.

[54] Vanveldhuizen Declaration ¶ 2; Nichols Declaration ¶ 3.

[55] Vanveldhuizen Declaration ¶¶ 4-6 and attachment.

[56] Nichols Declaration ¶¶ 4-6 and attachment.

2. Based on distance from the Carrier Route, Edwards is not similarly situated to the resident of 565 Celestial Circle for purposes of determining eligibility for door delivery of oversized packages.

3. Edwards is not similarly situated to any other identified postal customers in Mountain Creek Estates who receive door delivery of oversized packages to their residences.

4. The Postal Service did not violate 39 U.S.C. § 403(c) by engaging in undue or unreasonable discrimination against Edwards when it discontinued door delivery of oversized packages to his residence.

## VII. FURTHER REVIEW BY THE COMMISSION

This intermediate decision is subject to further review by the Commission and does not represent the final order of the Commission in this proceeding. *See* 39 C.F.R. § 3010.335(d). The parties may file with the Commission exceptions to this intermediate decision in accordance with the procedures and deadlines set forth in 39 C.F.R. § 3010.336. The Commission may adopt this intermediate decision, in whole or in part, as part of the final decision in this case. 39 C.F.R. § 3010.335(d). Because Commission review is available, any motions for reconsideration of this intermediate decision directed to the Presiding Officer will not be considered absent extraordinary circumstances.

A party who wishes to file exceptions must first file with the Commission a notice of intent to file a brief on exceptions no later than **April 15, 2024**. See 39 C.F.R. § 3010.336(a). The brief on exceptions must be filed no later than **May 8, 2024**. *See id.* Either party may file a response to the other party's brief on exceptions by **May 28, 2024**. *See id.* No reply briefs will be considered without further order of the Commission. *Id.* The parties are cautioned that failure to except or object to any part of an intermediate decision may result in waiver of those arguments. *See* 39 C.F.R. § 3010.336(c).

John Avila
Presiding Officer

**Postal Regulatory Commission**
**Submitted 10/30/2024 03:55 PM**
**Filing ID: 132048**
**Accepted 10/30/2024**

ORDER NO. 7845

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Before Commissioners:

Michael Kubayanda, Chairman;
Thomas G. Day, Vice Chairman;
Ann C. Fisher;
Ashley E. Poling; and
Robert G. Taub

Complaint of Mark Allan Edwards

Docket No. C2023-6

## ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER NO. 7552

(Issued October 30, 2024)

## I.      INTRODUCTION

On October 4, 2024, Mark Allan Edwards (Complainant) filed a motion for reconsideration of Order No. 7552.[1] The Postal Service opposes the motion.[2] For the reasons discussed below, the Motion to Reconsider Order No. 7552 is denied.

---

[1] Motion for Reconsideration of PRC Order #7552 in the Complaint of Mark Allan Edwards for the Failure of the Clayton Post Office and Post Master to Deliver Packages as Required under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, October 4, 2024 (Motion to Reconsider Order No. 7552). Citations to the motion will be to the page number of the PDF.

[2] United States Postal Service's Memorandum in Opposition to Complainant's Motion to Reconsider Order No. 7552, October 11, 2024 (Opposition to Motion to Reconsider Order No. 7552).

## II.     BACKGROUND

On July 7, 2023, Complainant filed a complaint with the Commission pursuant to 39 U.S.C. §§ 3662(a), 401(2), and 403(c).[3]  Complainant alleged that the Postal Service violated Postal Operations Manual (POM) §§ 631.1 and 631.8 when it terminated delivery of oversized packages to his front door without his consent.  Complaint at 2.  On July 27, 2023, the Postal Service filed a motion to dismiss the Complaint.[4]  Complainant did not respond to the Motion to Dismiss.

On September 18, 2023, the Commission granted in part the Motion to Dismiss, concluding that it lacked jurisdiction over the claims alleging violations of the POM and retaliation because those bases were not specifically enumerated in 39 U.S.C. § 3662(a).[5]  As relevant here, the Commission noted that 39 U.S.C. § 401(2) "does not create a tether for jurisdiction over the claim" alleging the Postal Service violated the POM, because that statute "applies only to scenarios where the Postal Service adopts, amends, or repeals rules or regulations inconsistent with title 39."  Order No. 6688 at 6.  But Complainant had alleged that the Postal Service improperly applied POM § 631.8 when it discontinued door delivery of oversized packages without his consent.  *Id.*  As to the undue discrimination claim rooted in 39 U.S.C. § 403(c), however, the Commission concluded that Complainant could conceivably state a claim for which relief could be granted and that there were two outstanding issues of fact that required resolution.  *Id.* at 7-8.  The Commission appointed a presiding officer to resolve the issues of material fact, examine the disputed issues, and issue a "public, written intermediate decision including findings of fact and conclusions of law on the issues raised in this proceeding." *Id.* at 8; 39 C.F.R. § 3010.106.

---

[3] Complaint of Mark Allan Edwards, July 7, 2023 (Complaint).

[4] United States Postal Service's Motion to Dismiss, July 27, 2023 (Motion to Dismiss).

[5] Order Partially Denying United States Postal Service's Motion to Dismiss and Notice of Limited Formal Proceedings, September 18, 2023, at 5-6 (Order No. 6688).

During the limited discovery period, on October 20, 2023, Complainant filed a motion to reconsider Order No. 6688, alleging that he was not properly served with the Motion to Dismiss and that the Commission erred in dismissing his 39 U.S.C. § 401(2) claim alleging violations of the POM.[6] The Postal Service opposed the motion.[7] The Commission denied the Motion to Reconsider Order No. 6688 on November 1, 2023.[8]

In addition, on November 21, 2023, the Postal Service filed a motion requesting that the Commission correct Order No. 6688.[9] On November 30, 2023, the Complainant filed an opposition to defendant's correction of the Commission's Order No. 6688.[10] The Commission granted the Motion to Correct on December 1, 2023, and issued a notice of errata correcting an inadvertent mischaracterization of the Postal Service's position found in one sentence.[11]

On April 8, 2024, the Presiding Officer filed his intermediate decision and concluded that Complainant "has not shown that other similarly situated postal customers in his neighborhood receive door delivery of oversized packages."[12] In particular, the Presiding Officer found that the Postal Service reasonably determined that 565 Celestial Circle, an address which Complainant identified as similarly situated to his residence, "is within one-half mile of the Carrier Route" and thus eligible for door delivery under Rural Carrier Handbook § 331.21. POID at 21. Complainant did not

---

[6] See Motion to Reconsider Postal Regulatory Order No. 6688, October 20, 2023 (Motion to Reconsider Order No. 6688).

[7] United States Postal Service's Memorandum in Opposition to Complainant's Motion to Reconsider Postal Regulatory Order No. 6688, October 27, 2023 (Opposition to Motion to Reconsider Order No. 6688).

[8] Order Denying Motion for Reconsideration, November 1, 2023 (Order No. 6770).

[9] United States Postal Service Motion Requesting that the Postal Regulatory Commission Correct Order No. 6688, November 21, 2023 (Motion to Correct).

[10] Opposition to Defendant's Correction of Postal Regulatory Commission's Order 6688, November 30, 2023 (Opposition to Motion to Correct).

[11] Order Granting Motion Requesting that the Postal Regulatory Commission Correct Order No. 6688, December 1, 2023 (Order No. 6820); Notice of Errata, December 1, 2023 (Notice of Errata).

[12] Presiding Officer's Intermediate Decision and Findings of Fact and Conclusions of Law, April 8, 2024, at 2 (POID).

contest that his residence was at least 0.7 miles from the Carrier Route. *Id.* The Presiding Officer further determined that Complainant had not "demonstrated that the process by which the Postal Service discontinued door delivery to his residence was discriminatory." *Id.* at 2.

On May 7, 2024, Complainant filed his brief on exceptions to the POID, in which he raised eight exceptions.[13] On May 28, 2024, the Postal Service filed its brief in opposition to the exceptions.[14] Thereafter, Complainant filed a motion for leave to reply on June 3, 2024, which argued that the Postal Service injected new arguments and facts in its Brief in Opposition.[15] The Postal Service filed a response in opposition to that motion on June 10, 2024.[16] On September 19, 2024, the Commission issued an order granting Complainant's motion for leave to reply, overruling Complainant's exceptions, adopting the POID, and dismissing the complaint with prejudice.[17]

---

[13] Objections to the Presiding Officer's Intermediate Decision in the Complaint of Mark Allan Edwards, May 7, 2024 (Brief on Exceptions).

[14] Brief of the United States Postal Service in Opposition to Complainant's Objections to the Presiding Officer's Intermediate Decision, May 28, 2024 (Brief in Opposition).

[15] Motion for Leave to File Surrebuttal Brief Addressing Defendant's Newly Presented Arguments and Evidence in their Brief Concerning Objections to the Presiding Officer's Intermediate Decision in the Complaint of Mark Allan Edwards for the Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, June 3, 2024, at 2-7 (Motion for Leave to Reply).

[16] United States Postal Service Response to Complainant's Motion for Leave to Reply, June 10, 2024 (Response to Motion for Leave to Reply).

[17] Order Granting the Motion for Leave to Reply, Overruling the Complainant's Exceptions, Adopting the Presiding Officer's Intermediate Decision, and Dismissing with Prejudice the Complaint of Mark Allan Edwards, September 19, 2024 (Order No. 7552).

### III. COMPLAINANT'S MOTION FOR RECONSIDERATION

On October 4, 2024, Complainant timely filed a motion for reconsideration of Order No. 7552.[18] The Postal Service filed its opposition to the motion on October 11, 2024. *See* Opposition to Motion to Reconsider Order No. 7552 at 1.

Complainant's motion identifies five "material errors of fact" in Order No. 7552 that, in his view, warrant reconsideration of that order. First, Complainant asserts that "the POM violation tethered to 39 U.S.C. 401(2) was dismissed in Order #6688 only for the purposes that it didn't challenge 'adopting, amending, or repealing' NOT its execution, or in this case failure to execute[,]" and that "[t]he defendant's failure to follow POM 631.8 is discriminatory under 39 USC 403 in that [the] rule requires that delivery of oversized packages to the complainant 'will remain in place' if it was established and in effect for over a year." Motion to Reconsider Order No. 7552 at 3. Second, Complainant contends that Order No. 7552 and the POID improperly required him to show that "at the time" door delivery to his address was discontinued, another customer was receiving door delivery, and thus Order No. 7552 "asks for evidence the Complainant could not have known was needed over a year later." *Id.* at 4. Third, Complainant argues that "the Presiding Officer did not review the non-discriminatory process, specifically Correction of Improper Mode of Delivery ([POM §] 631.8)," and he questions whether "the POM 631.8 violation was truly considered[.]" *Id.* at 4-5. Fourth, Complainant asserts that 565 Celestial Circle is in fact similarly situated to Complainant's residence because the Postal Service argued that 565 Celestial Circle was exactly one-half mile from the carrier route, so neither residence is "within one-half mile of the route" per the "plain language of Section 331.21 of the Rural Carrier Handbook." *Id.* at 5-6. Finally, Complainant maintains that he is not asking the Commission to direct the Postal Service to violate its own regulations—namely, the one-

---

[18] Motion to Reconsider Order No. 7552 at 1; *see* 39 C.F.R. § 3010.165(b) (requiring motions for reconsideration to be filed "within 15 days of the issuance of the final order that is the subject of the motion").

half mile limitation for door delivery of oversized packages—but rather, he seeks to order the Postal Service to comply with POM § 631.8. *Id.* at 7.

The Postal Service responds that none of Complainant's proposed errors of material fact warrants reconsideration. First, the Postal Service asserts that Complainant's first three proposed errors were previously raised as exceptions to the POID. Opposition to Motion to Reconsider Order No. 7552 at 4-6. Next, the Postal Service argues that "the question of whether 'within one-half mile' included exactly one-half mile was not a new question raised in Order No. 7552 and Complainant had ample prior opportunity to submit the argument he now proposes." *Id.* at 6. Finally, the Postal Service contends that Complainant's insistence that he seeks to compel the Postal Service to comply with the POM, and not to violate its own regulations, "has been previously presented in this proceeding and, therefore, is not properly reconsidered now that the proceeding is over." *Id.* at 9.

## IV.    ANALYSIS

The General Rules of Practice for Proceedings Before the Commission permit motions for reconsideration of final Commission orders. 39 C.F.R. § 3010.165. But the Commission has previously stated that while its "Rules of Practice and Procedure do not specifically provide for reconsideration of Commission orders in complaint cases," it nonetheless "liberally" considers such motions.[19] There are two instances where the Commission will reconsider a prior order in complaint cases: "(1) the decision is based on erroneous legal or factual assumptions; or (2) on a petitioner's presentation of new facts or legal evidence previously unavailable which, if true, would clearly mandate a change in the result." Order No. 1257 at 3. Importantly, a motion for reconsideration may not be used to relitigate "issues determined by the challenged decision." *Id.*

None of Complainant's proposed errors provides a valid reason for the Commission to reconsider Order No. 7552. Complainant's first argument that his

---

[19] Docket No. C99-3, Order Denying Reconsideration, July 22, 1999, at 3 (Order No. 1257).

standalone POM violation claim remained pertinent to his § 403(c) discrimination claim was previously raised as the seventh exception to the POID. *See* Brief on Exceptions at 9. The Commission overruled that exception, noting that "the Presiding Officer did consider the alleged violation of POM section 631.8 as 'highly relevant' and 'fairly strong' potential evidence of undue discrimination." Order No. 7552 at 29 (citation omitted). Nevertheless, the Presiding Officer "simply found that the weight of the evidence favors the Postal Service." *Id.* at 30 (citation and internal quotation marks omitted). The Commission further explained that "[f]ailing to follow the POM does not, by itself, constitute undue discrimination." *Id.* Therefore, Complainant's first proposed error is an attempt to relitigate an issue decided by the Commission in Order No. 7552 and does not warrant reconsideration.

Second, Complainant's assertion that Order No. 7552 and the POID misinterpreted Order No. 6688 and "ask[] for evidence the Complainant could not have known was needed over a year later" is not a valid basis for reconsideration. Motion to Reconsider Order No. 7552 at 4. Complainant's second proposed error is substantively similar to his third exception to the POID, in which he argued that the Presiding Officer improperly added "a temporal requirement for similarly situated residences, 'at the time door delivery was discontinued.'" Brief on Exceptions at 6. The Commission overruled that exception, holding that "to demonstrate a claim of discrimination under Commission precedent, Complainant had to show that at the time door delivery to his home was stopped, another postal customer was receiving door delivery," and that "the Presiding Officer correctly interpreted this question." Order No. 7552 at 26. The Commission further explained that the Commission's three-part test for discrimination under § 403(c) "necessarily contains a 'temporal' requirement because a complainant must show that they are being denied more favorable service currently being offered to at least one similarly situated postal customer." *Id.* Accordingly, because Complainant's second proposed error simply relitigates an issue decided in Order No. 7552, it does not justify Commission reconsideration.

Third, Complainant's contention that the Presiding Officer "did not review the non-discriminatory process, specifically Correction of Improper Mode of Delivery (631.8)," Motion to Reconsider Order No. 7552 at 4, was previously presented as Complainant's eighth exception to the POID. *See* Brief on Exceptions at 10. The Commission overruled that exception, characterizing it as an "attempt[] to insert an alleged violation of POM § 631.8 as a standalone violation," and explaining that the Commission "has repeatedly stated it lacks jurisdiction over a claim of whether the Postal Service follows its own regulations." Order No. 7552 at 30. The Commission further held that the Presiding Officer "fulfilled his obligations" when he "reviewed the processes used by the Postal Service to see whether it employed a discriminatory purpose when it stopped door delivery of oversized packages to Complainant's home." *Id.* at 30-31. Thus, because Complainant's third proposed error has already been litigated and decided, it does not warrant reconsideration.

Fourth, Complainant may not raise his argument that 565 Celestial Circle is not "within one-half mile" of the carrier route because it is in fact one-half mile from the route for the first time in the Motion to Reconsider Order No. 7552. Throughout this litigation, Complainant has maintained that his residence and 565 Celestial Circle were similarly situated because the distance from the carrier route to each address exceeded one-half mile.[20] Complainant now appears to argue for the first time that if 565 Celestial Circle is exactly one-half mile from the line of travel, as the Postal Service has maintained, then it is not "within one-half mile" per the "plain language of Section 331.21 of the Rural Carrier Handbook." Motion to Reconsider Order No. 7552 at 5. Complainant was aware of the Postal Service's position and could have asserted in his previous submissions that the "within one-half mile" distance was exclusive (i.e., referring to 0.49

---

[20] *See, e.g.*, Brief of Complainant Mark Allan Edwards Regarding Failure of the Clayton Post Office and Post Master to Deliver Packages as Required Under Postal Operations Manual Regulation 631.8 Pursuant to Postal Regulatory Commission's Order 6688 Errata 1 1 December 2023, at 7 (Brief) ("565 Celestial [Circle] is over 1/2 mile from the line of travel whether driven on the eastern or western approach to the home."); Brief on Exceptions at 3 ("565 Celestial Circle is over 1/2 mile in the shortest direction from the Postal Carrier's line of travel.").

miles or less), but he instead argued that both 565 Celestial Circle and his residence are located more than one-half mile from the carrier route.[21] Consequently, because Complainant could have raised this argument earlier in the litigation, the Commission will not entertain it now in the Motion to Reconsider Order No. 7552.[22]

Finally, Complainant's assertion that he "is not asking the [Commission] to direct the defendant to defy its own rules," but instead to enforce compliance with the POM, does not justify reconsideration. Complainant raised this argument in his Motion to Reconsider Order No. 6688. *See* Motion to Reconsider Order No. 6688 at 3. Moreover, in Order No. 7552, the Commission stated that "even if the Commission rejected the POID and found that 565 Celestial Circle was similarly situated, the Commission agrees with the Postal Service that the appropriate remedy would be 'to order the Postal Service to stop delivering oversized packages to 565 Celestial Circle's door' rather than to order the Postal Service to resume door delivery to Complainant's address" despite being more than one-half mile from the carrier route. Order No. 7552 at 32. The Commission further observed that "[o]rdering the Postal Service to defy its own regulations would contravene the objectives of 39 U.S.C. § 3662(c) and defy the boundaries of the Commission's powers as prescribed by Congress." *Id.* Therefore, Complainant's fifth proposed error does not warrant reconsideration. And in any event, Complainant's arguments regarding the proper remedy for alleged discrimination would not alter the Presiding Officer's or the Commission's underlying determinations that no undue or unreasonable discrimination occurred.

---

[21] *See* Brief on Exceptions at 3-4 (noting that the Postal Service's "evidence showed that Google Maps distance from the Line of travel was .5 miles to 565 Celestial Circle," but Complainant's measurements allegedly showed that address was an additional 39 feet "over 1/2 mile from the carrier's line of travel").

[22] *See* 39 C.F.R. § 3010.165(b)(2) (Motions for reconsideration must be "confined to new questions raised by the determination or action ordered and upon which the moving party had no prior opportunity to submit arguments."); *cf. Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (A motion for reconsideration "is not a vehicle to present a new legal theory that was available prior to judgment[.]").

In sum, because Complainant's proposed errors of material fact do not warrant reconsideration of Order No. 7552, the Commission denies the motion.

## V. ORDERING PARAGRAPH

*It is ordered*:

Complainant's Motion for Reconsideration of Commission Order No. 7552, filed on October 4, 2024, is denied.

By the Commission.

Erica A. Barker
Secretary

Media Inquiries
Gail Adams
Gail.Adams@prc.gov

## Certificate of Service

   I, Mark Allan Edwards, mailed via certified mail the Petition for Review of the Postal Regulatory Commission's orders 6688, 7552, 7845 to US Agencies listed below on 21 November 2024.

The Honorable Merrick Garland, Attorney General of the United States, US Dept of Justice, 950 Pennsylvania, Ave, NW, Washington, DC 20530-0001

Certified mail # 9589 0710 5270 0708 0822 99

The Postal Regulatory Commission, 901 New York, NW, Suite 200, Washington, DC 20268-0001

Certified mail # 9589 0710 5270 0708 0823 43

United States Postal Service, 475 L'Enfant Plaza, SW, Washington, DC, 20260

Certified mail # 9589 0710 5270 0708 0823 36

Mark Allan Edwards

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9589 0710 5270 0708 0823 29

MARK EDWARDS
208 CELTIC LN
CLAYTON, GA 30525

Retail



U.S. POSTAGE PAID
PM
CLAYTON, GA 30525
NOV 21, 2024

20001

**$17.75**

RDC 03

S2324H504874-35

UNITED STATES COURT OF APPEALS

DISTRICT OF COLUMBIA

RM 5205

333 CONSTITUTION AVE, NW

WASHINGTON, DC 20001



VISIT US AT USPS.COM®
Label 106A, Nov 2018

This product is for use with Priority Mail®
Misuse may be a violation of federal law.
This label is not for resale.

United States
Postal Service®

PRIORITY MAIL®


CERTIFIED MAIL

9589 0710 5270 0708 0823 29

Retail

UNITED STATES
POSTAL SERVICE®

20001

RDC 03

U.S. POSTAGE PAID
PM
CLAYTON, GA 30525
NOV 21, 2024

$17.75

S2324H504874-35

EDWARDS
CELTIC LN
ON, GA 30525



UNITED STATES COURT OF APPEALS

DISTRICT OF COLUMBIA

RM 5205

333 CONSTITUTION AVE, N.W.

WASHINGTON, DC 20001

VISIT US AT USPS.COM®
Label 106A, Nov 2018

This product is for use with Priority Mail®.
Misuse may be a violation of federal law.
This label is not for resale.

United States
Postal Service®

AT USPS.COM®
Nov 2018

PRIORITY MAIL

PRIORITY MAIL®