**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 24-1370**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

MARK ALLAN EDWARDS,

Petitioner,

v.

POSTAL REGULATORY COMMISSION,

Respondent.

UNITED STATES POST OFFICE,

Intervenor.

On Petition for Review of Orders of the Postal Regulatory Commission

**BRIEF FOR RESPONDENT**

BRETT A. SHUMATE
  *Assistant Attorney General*

MICHAEL S. RAAB
AUGUST FLENTJE
URJA MITTAL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7248*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-4895*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.  Parties and Amici

Petitioner is Mark Allan Edwards.  Respondent is the Postal Regulatory Commission.  Intervenor is the United States Postal Service.

## B.  Rulings Under Review

Petitioner seeks review of Postal Regulatory Commission Order No. 6688 (September 18, 2023), Order No. 7552 (September 19, 2024), and Order No. 7845 (October 30, 2024), on Docket No. C2023-6.

## C.  Related Cases

Petitioner previously filed a civil action, *Edwards v. United States Postal Service*, No. 2:22-cv-160-SCJ (N.D. Ga.), against the United States Postal Service and the Postmaster of Clayton, Georgia, based on the same events.  The action was dismissed.  *See Edwards v. Postmaster*, No. 2:22-cv-160-SCJ, Dkt. No. 21 (N.D. Ga., Dec. 7, 2022).  Counsel for the Postal Regulatory Commission is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Urja Mittal*
URJA MITTAL

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF THE ISSUE ................................................................. 1

PERTINENT STATUTES AND REGULATIONS .................................... 2

STATEMENT OF THE CASE .................................................................. 2

      A.    Statutory and Regulatory Background ................................. 2

      B.    Factual Background ............................................................. 10

SUMMARY OF ARGUMENT .................................................................. 16

STANDARD OF REVIEW ....................................................................... 20

ARGUMENT ........................................................................................... 21

I.     The Commission properly dismissed Edwards' claims that the Postal Service violated the Postal Operations Manual and improperly retaliated against him ........................................... 21

II.    The Commission properly dismissed Edwards' discrimination claim ................................................................................................. 42

CONCLUSION ....................................................................................... 57

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
321 F.3d 1166 (D.C. Cir. 2003) ..........................................................43

*Alliance of Nonprofit Mailers v. Postal Regul. Comm'n*,
790 F.3d 186 (D.C. Cir. 2015) ............................................................20

*Battle v. Federal Aviation Admin.*,
393 F.3d 1330 (D.C. Cir. 2005) ..........................................................42

*Biden v. Texas*,
597 U.S. 785 (2022) .............................................................................26

*Bovard v. U.S. Post Off.*,
47 F.3d 1178, 1995 WL 74678 (10th Cir. 1995) ................................45

*Egger v. U.S. Postal Service*,
436 F. Supp. 138 (W.D. Va. 1977).......................................................55

*Erickson v. U.S. Post Off.*,
250 F. App'x 757 (8th Cir. 2007)........................................................45

*Foster v. Pitney Bowes Corp.*,
549 F. App'x 982 (Fed. Cir. 2013) .................................................44-45

*Holder v. Martinez Gutierrez*,
566 U.S. 583 (2012).............................................................................37

*LeMay v. U.S. Postal Serv.*,
450 F.3d 797 (8th Cir. 2006)..............................................................45

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)...............................................................................20

*Northern Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) ............................................................43

*Pontefract v. Federal Bureau of Prisons,*
   2024 WL 5055838 (3d Cir. Dec. 10, 2024) ..........................................44

*Sears, Roebuck & Co. v. U.S. Postal Serv.,*
   844 F.3d 260 (D.C. Cir. 2016) ...........................................................43

*White v. U.S. Post Office,*
   2024 WL 2973705 (10th Cir. June 13, 2024).....................................44

*Whitman v. American Trucking Ass'ns,*
   531 U.S. 457 (2001) ............................................................................26

**Statutes:**

Administrative Procedure Act:
   5 U.S.C. § 704............................................................................36
   5 U.S.C. § 706(2)(A) ..................................................................20

Postal Accountability and Enhancement Act,
   Pub. L. No. 109-435, 120 Stat. 3198 (2006)......................................2

Postal Reorganization Act,
   Pub. L. No. 91-375, sec. 2, 84 Stat. 719 (1970)................................2

39 U.S.C. § 101(d)..................................................................3, 44

39 U.S.C. § 401 .............................................................................6

39 U.S.C. § 401(2)......................3, 7, 11, 12, 16, 17, 21, 22, 23

39 U.S.C. § 403(c) ............................ 3, 12, 14, 18, 47, 53, 56

39 U.S.C. § 404a ..........................................................................3

39 U.S.C. § 410(a) ....................................................................43

39 U.S.C. § 501 .............................................................................2

39 U.S.C. § 503 .....................................................................31, 40

39 U.S.C. § 601 ....................................................................3, 24

39 U.S.C. §§ 3621-3642 ...........................................................27

39 U.S.C. §§ 3621-3692 .............................................................4

39 U.S.C. § 3661(b) ...................................................................27

39 U.S.C. § 3662(a) ........................2, 4, 12, 16, 17, 21, 22, 23, 24, 26, 43

39 U.S.C. § 3662(b)(1)(A) ............................................................4

39 U.S.C. § 3662(c) ...........................................................5, 28, 29

39 U.S.C. § 3663 .............................................................1, 5, 20

39 U.S.C. § 3691 ....................................................................27

39 U.S.C. § 3691(b)(1)(B) .........................................................34

**Regulations:**

39 C.F.R. § 211.2 ............................................................7, 24, 32

39 C.F.R. § 211.2(a)(2)-(3) ..........................................................8

39 C.F.R. § 211.4 ...................................................................32-33

39 C.F.R. §§ 265.1-265.9 ...........................................................7

39 C.F.R. § 310.2 ....................................................................24

39 C.F.R. § 3022.2 ........................................................6, 29, 35

39 C.F.R. § 3022.10 ...................................................................6

39 C.F.R. §§ 3023.10-3023.11 ......................................................6

39 C.F.R. § 3023.11(a) .........................................................6, 30

39 C.F.R. § 3023.11(b) ................................................................6

39 C.F.R. § 3023.11(a)-(b)....................................................................31

39 C.F.R. § 3023.12 .......................................................................6, 31

**Other Authorities:**

73 Fed. Reg. 51,888 (Sep. 5, 2008). ......................... 5, 6, 22, 27, 30, 37, 39

74 Fed. Reg. 16,734 (Apr. 10, 2009) ........................................................5

Order No. 1327, *City & County of San Francisco*,
   No. C2011-2 (May 1, 2012) ...........................................................34-35

Order No. 1892, *American Postal Workers Union*,
   No. C2013-10 (Nov. 27, 2013) ...........................................................34

U.S. Postal Serv., Handbook PO-603, *Rural Carrier*
   *Duties and Responsibilities* (Sep. 2013),
   https://perma.cc/S66U-QB8E................................................ 8, 9, 47, 54

U.S. Postal Serv., POM Issue 9, *Postal Operations*
   *Manual* (rev. May 31, 2024),
   https://perma.cc/FDF9-72VF .............................................................9, 10

U.S. Postal Serv., *What is a Cluster Box? What is a*
   *Parcel Locker?* (Feb. 20, 2026),
   https://faq.usps.com/s/article/What-is-a-Cluster-Box.........................10

*Within*, Merriam-Webster Dictionary Online,
   https://perma.cc/R6RG-ZP2Y.............................................................55

# GLOSSARY

| | |
|---|---|
| JA | Joint Appendix |

## STATEMENT OF JURISDICTION

Petitioner Mark Allan Edwards filed an administrative complaint with the Postal Regulatory Commission. The Commission issued a final decision dismissing Edwards' claims in Order No. 6688 on September 18, 2023, *see* JA70-78, and in Order No. 7552 on September 19, 2024, *see* JA213-249. The Commission denied Edwards' motion for reconsideration of Order No. 7552 in Order No. 7845 on October 30, 2024, *see* JA266-275. Edwards timely filed a petition for review of these orders, which this Court docketed on November 27, 2024. *See* 39 U.S.C. § 3663 (providing 30-day time limit to file a petition for review of a final order of the Commission). This Court has jurisdiction under 39 U.S.C. § 3663.

## STATEMENT OF THE ISSUE

Petitioner Mark Allan Edwards filed a complaint with the Postal Regulatory Commission alleging that the Postal Service engaged in retaliation, discrimination, and noncompliance with its regulations when it discontinued door delivery of oversized packages to his home. The issue presented in Edwards' petition for review is whether the Commission's dismissal of his claims was arbitrary, capricious, or an abuse of discretion.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.  Statutory and Regulatory Background

**1. a.**  In 2006, Congress enacted the Postal Accountability and Enhancement Act, Pub. L. No. 109-435, 120 Stat. 3198, 3200-18.  The Act created the Postal Regulatory Commission, 39 U.S.C. § 501, which replaced the Postal Rate Commission, which was an independent body with oversight of postal matters.  *See* Postal Reorganization Act, Pub. L. No. 91-375, sec. 2, chs. 2, 10-12, 20, 50-56, 84 Stat. 719, 720-22, 728-37, 738-42, 766-73 (1970); *id.* §§ 3601-3604, 84 Stat. at 759-60.

The 2006 legislation authorized the Postal Regulatory Commission to receive certain kinds of rate and service complaints about the Postal Service.  In relevant part, 39 U.S.C. § 3662(a) provides: "Any interested person (including an officer of the Postal Regulatory Commission representing the interests of the general public) who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter (or regulations promulgated under any of those provisions) may lodge a

complaint with the Postal Regulatory Commission in such form and manner as the Commission may prescribe."

Each of the statutory provisions listed in § 3662(a) articulates certain requirements with which the Postal Service must comply. The enumerated statutes require the Postal Service to establish postal rates on a fair and equitable basis, 39 U.S.C. § 101(d); adopt, amend, and repeal rules not inconsistent with Title 39 and as necessary to execute its functions, *id.* § 401(2); not engage in undue or unreasonable discrimination when providing service and establishing classifications, rates, and fees, *id.* § 403(c); not adopt rules that create an unfair advantage, compel the disclosure of intellectual property to third parties, or offer services based on confidential information without consent, *id.* § 404a; and adhere to specific rules governing the carriage of letters out of the mails, *id.* § 601. Under § 3662(a), the Commission has the authority to receive complaints alleging that the Postal Service is not complying with these statutory requirements.

The Commission's § 3662(a) complaint authority also extends to claims alleging nonconformance with any provision of chapter 36 of Title

39 of the U.S. Code. *See* 39 U.S.C. § 3662(a). That chapter governs the Postal Service's rates, classes, and services. *See id.* §§ 3621-3692.

Finally, § 3662(a) provides that the Commission may receive complaints alleging nonconformance with "regulations promulgated under any of [the] provisions" enumerated in § 3662(a). This encompasses rules promulgated by the Postal Service to carry out the statutory duties specifically listed in § 3662(a).

**b.** After receiving a complaint, the Commission must either dismiss the complaint or begin proceedings if the Commission finds that the complaint raises material issues of fact or law. *See* 39 U.S.C. § 3662(b)(1)(A).

The statute also sets forth the nature of the remedial action that the Commission may prescribe if it finds the complaint to be justified. It provides that the Commission "shall order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance (such as ordering unlawful rates to be adjusted to lawful levels, ordering the cancellation of market tests, ordering the Postal Service to discontinue providing loss-making products, or

4

requiring the Postal Service to make up for revenue shortfalls in competitive products)." 39 U.S.C. § 3662(c). The examples of remedies that the Commission may order under § 3662(c) correspond to the kinds of issues that the Commission may entertain pursuant to its § 3662(a) complaint authority.

An individual adversely affected by a final order of the Commission may petition for review of the order in this Court. *See* 39 U.S.C. § 3663.

**2.** Following the enactment of the Postal Accountability and Enhancement Act, the Commission adopted regulations to govern its complaint process. The Commission's regulations establish a two-tiered approach to handling the grievances that it receives and prescribe form-and-manner requirements for complaints filed with the Commission. *See* 74 Fed. Reg. 16,734 (Apr. 10, 2009); 73 Fed. Reg. 51,888 (Sep. 5, 2008).

If the Commission receives a grievance that alleges that the Postal Service is violating one of the statutory provisions enumerated in § 3662(a) or a regulation promulgated to carry out one of those provisions, then that grievance is considered a formal complaint lodged with the Commission under § 3662(a), and it is addressed in accordance with the

Commission's procedures set forth in 39 C.F.R. part 3022. *See* 39 C.F.R. § 3022.2; 73 Fed. Reg. at 51,890.

If the Commission receives a grievance that does not implicate the statutory provisions enumerated in § 3662(a) or does not meet the form-and-manner requirements for complaints, *see* 39 C.F.R. § 3022.10, the Commission may address the grievance using the informal rate-or-service inquiry procedures set forth in 39 C.F.R. part 3023. *See id.* §§ 3023.10-3023.11. The Commission will forward the inquiry to the Postal Service for investigation, and within 45 days of receipt, the Postal Service must advise the Commission of its resolution of the inquiry or its refusal or inability to do so. *See id.* § 3023.11(a). The Commission must monitor rate-or-service inquiries to determine if further action, such as the appointment of an investigator or public representative to pursue the matter, is appropriate. *See id.* §§ 3023.11(b), 3023.12.

**3. a.** The Postal Service's "general powers" are set forth in 39 U.S.C. § 401. These include the powers to sue and be sued, to make rules, to enter into contracts, to keep accounts, to acquire real property, and the like. *See* 39 U.S.C. § 401. Included within these powers is the grant of general rulemaking authority, which provides that the Postal Service

may "adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." *Id.* § 401(2).

The Postal Service has promulgated regulations under § 401(2), which set out what it means for the Postal Service to adopt, amend, and repeal rules consistent with Title 39 and as necessary in the execution of its functions. These include, for instance, 39 C.F.R. § 211.2, which explains what constitutes the regulations of the Postal Service, including mailing standards, mail manuals, and other issuances. The Postal Service also has regulations that have been promulgated under the Postal Service's various other statutory obligations, including, for instance, regulations governing the disclosure of records under the Freedom of Information Act, *see* 39 C.F.R. §§ 265.1-265.9. The Posta Service has adopted these regulations by exercising its general rulemaking authority in § 401(2), but these regulations are not themselves regulations that govern the adoption, amendment, or repeal of postal regulations under § 401(2).

**b.** The petition for review invokes particular Postal Service regulations set forth in the Postal Service's Rural Carrier Handbook and Postal Operations Manual. *See* 39 C.F.R. § 211.2(a)(2)-(3). The Rural Carrier Handbook contains the rules and procedures for rural postal carriers. As relevant to this petition, the Rural Carrier Handbook contains a provision that states that "[i]f a parcel is too large for the box," the postal carrier must "make a reasonable effort to attract the customer to the box to receive the parcel," by sounding the horn or by hailing the customer. U.S. Postal Serv., Handbook PO-603, *Rural Carrier Duties and Responsibilities* § 331.21 (Sep. 2013), https://perma.cc/S66U-QB8E (Rural Carrier Handbook).[1] "If unsuccessful," the carrier "must deliver parcels to any residence or business that is on the line of travel, or within one-half mile of the route and has a passable road leading to it." *Id.* If the package is not delivered to the box and the address is more than one-half mile from the carrier's route, the carrier is to leave a notice in the

---

[1] Petitioner included some of the cited portions of the Rural Carrier Handbook and the Postal Operations Manual with his brief filed with the Commission. *See* JA133-36 (in JA filed Jan. 29, 2026); *see also* JA88-89 (in prior JA filed Sep. 10, 2025). For ease of reference, the Commission has provided links in this brief to the handbooks and manuals, as provided to the Commission by the Postal Service.

customer's box and the customer may retrieve it from the post office. *See id.* § 332.12.

The Postal Operations Manual is another publication that outlines postal policies and regulations. Postal Operations Manual § 631.1 is a general provision describing the Postal Service's modes of delivery. It explains that "[c]entralized delivery is the preferred mode of delivery for all new residential and commercial developments" and that "[c]urbside, sidewalk delivery, and door modes are generally not available for new delivery points." U.S. Postal Serv., POM Issue 9, *Postal Operations Manual* § 631.1 (rev. May 31, 2024), https://perma.cc/FDF9-72VF (Postal Operations Manual).

Postal Operations Manual § 631.8 governs the process for correcting an improper mode of delivery. Specifically, § 631.81 provides that "[i]n the event an improper mode of delivery is established or extended by a postal carrier or manager, the service will be withdrawn with a thirty (30) day advance notice to the affected customer(s), provided that the error is detected and the customer is notified within one (1) year." Postal Operations Manual § 631.81. "If the error is not detected," however, "and the customer is not notified within one (1) year of the date

delivery is established or extended, the improper service remains in place unless the customer consents to the delivery mode change." *Id.*

## B. Factual Background

**1.** Petitioner Mark Allan Edwards lives in Clayton, Georgia, in the Mountain Creek Estates housing development at 208 Celtic Lane. *See* JA215. For this housing development, the Postal Service's approved method of delivery is centralized delivery to cluster mailboxes at the entrance of the community, which is more than one-half mile from Edwards' home. *See* JA215. A cluster mailbox is a collection of individually locked compartments for the delivery and collection of mail for a residential community. *See* U.S. Postal Serv., *What is a Cluster Box? What is a Parcel Locker?* (Feb. 20, 2026), https://faq.usps.com/s/article/What-is-a-Cluster-Box.

Edwards filed a complaint with the Commission challenging the Postal Service's decision not to deliver oversized packages to his door, requiring him to go to the Clayton Post Office to pick up oversized packages. *See* JA100, JA185-186. His complaint lists three claims.

First, Edwards alleges that the Postal Service previously delivered oversized packages that would not fit in his mailbox to his door. *See*

JA185. Edwards contends that because the Postal Service had delivered oversized packages to his door for over a year, its decision to alter the mode of delivery without his consent violated Postal Operations Manual §§ 631.1 and 631.8 and 39 U.S.C. § 401(2). *See* JA185; *see also* JA2-3.

Second, Edwards alleges that he experienced improper retaliation for filing a complaint with the Commission. On his account, the Clayton Postmaster initially told Edwards that door delivery was discontinued because his home was more than one-half mile from the route of travel. *See* JA186. Edwards asserts that after he filed an informal complaint with the Commission, a Postal Service district manager informed him that the change was prompted by concerns that his driveway was "too narrow for a safe turnaround for the carrier." JA186 (quotation marks omitted). According to Edwards, a postal carrier later told him that "he had no issue with the driveway specifically because of the driveway's turnaround spot." JA218 (quotation marks omitted). Edwards alleges that the safety explanation was false and a "retaliatory measure to justify not delivering packages" to his home. JA186 (quotation marks omitted).

Third, Edwards argues that because the Postal Service "delivers to homes on the first western circular road with the furthest home getting

11

oversized package delivery just over ½ mile" from the centralized mailbox location, which, on Edwards' account are similarly situated to his home, the discontinuation of oversized package delivery to Edwards' home constituted discrimination in violation of 39 U.S.C. § 403(c). JA186-187 (quotation marks omitted). Edwards seeks resumed delivery of oversized packages to his door. *See* JA187.

**2.** The Commission dismissed Edwards' first and second claims for lack of jurisdiction. *See* JA103-104. The Commission explained that under 39 U.S.C. § 3662(a), it has jurisdiction to address complaints asserting that the Postal Service is not operating in conformance with the requirements of the statutory provisions enumerated in § 3662(a), but Edwards' first two claims did not fall within the bounds of § 3662(a).

As to Edwards' first claim, the Commission explained that Edwards was "object[ing] to the Postal Service's alleged noncompliance with its own regulations, not to the regulations themselves." JA103-104. The Commission explained that the reference to 39 U.S.C. § 401(2) in § 3662(a) "does not create a tether for jurisdiction over the claim because it applies only to scenarios where the Postal Service adopts, amends, or repeals rules or regulations inconsistent with title 39." JA104. Edwards'

challenge concerns the application of the Postal Operations Manual § 631.8, but such a claim "does not involve the Postal Service 'adopting, amending, or repealing' a rule or regulation in a manner that is inconsistent with title 39." JA104. Thus, the Commission concluded that its complaint authority does not extend to this claim and dismissed the claim. *See* JA104; *see* JA94-96 (denying motion for reconsideration).

The Commission explained that if the application of a Postal Service regulation or policy implicates one of the enumerated statutory duties in § 3662(a)—for instance, if a customer alleges that the application of a rule is allegedly discriminatory—the Commission's complaint authority would extend to that claim. *See* JA96. But the Commission explained that it does not have the authority to consider complaints about violations that do not implicate one of the enumerated statutory provisions, and any claim about a violation of § 401(2) "only applies to cases where the Postal Service adopts, amends, or repeals a rule or regulation inconsistent with title 39." JA96.

As to Edwards' second claim, the Commission explained that "a claim for retaliation does not fall within any of the enumerated bases of

the Commission's complaint jurisdiction" under § 3662(a).  JA104.  Thus, the Commission also dismissed this claim.  *See* JA104.

The Commission declined to dismiss Edwards' third claim of discrimination under 39 U.S.C. § 403(c) and appointed a presiding officer to conduct limited discovery and resolve two factual issues.  *See* JA104-106.  The Commission directed the presiding officer to ascertain (i) whether any similarly situated postal customers in Edwards' neighborhood were receiving delivery of oversized packages to their doors; and (ii) whether postal management followed nondiscriminatory processes in discontinuing door delivery of oversized packages to Edwards' residence.  *See* JA106.

The parties submitted briefs, declarations, written discovery responses, and other materials in response to the presiding officer's requests.  *See* JA183, JA190, JA220-226.  The presiding officer then issued an intermediate decision, *see* JA182-212, and the parties had the opportunity to address the presiding officer's views by filing exceptions to his decision.  *See* JA230-234.

After reviewing the record, the presiding officer's intermediate decision, and the exceptions, the Commission adopted the presiding

officer's findings of fact and conclusions of law, overruled Edwards' exceptions to the presiding officer's decision, and dismissed Edwards' discrimination claim with prejudice. *See* JA235-249.

The Commission concluded that Edwards had not identified a similarly situated customer receiving door delivery of oversized packages. *See* JA243. Edwards had asserted that a nearby residence located at 565 Celestial Circle was similarly situated and receiving door delivery of oversized packages. *See* JA243. The Commission concluded, however, that the Postal Service's determination that 565 Celestial Circle was within a half-mile distance from the postal carrier route and Edwards' residence was not, was a reasonable and nondiscriminatory application of the Rural Carrier Handbook. *See* JA243.

The Commission also concluded that the Postal Service adhered to nondiscriminatory processes in discontinuing door delivery of oversized packages to his residence. *See* JA243. The Commission explained that the Postal Service's primary reason for discontinuing door delivery of oversized packages to Edwards' residence was that it was more than one-half mile to the carrier route. *See* JA243-244. And the Commission concluded that Edwards had not produced "sufficient evidence to

demonstrate that the process by which postal management discontinued door delivery of oversized packages to his residence was related to discrimination." JA244 (emphasis and quotation marks omitted).

## SUMMARY OF ARGUMENT

**I.** The Postal Regulatory Commission correctly concluded that it did not have the authority under 39 U.S.C. § 3662(a) to adjudicate Edwards' first claim that the Postal Service violated Postal Operations Manual § 631.8 by discontinuing door delivery of oversized packages or his second claim that the Postal Service improperly retaliated against him for filing a complaint with the Commission.

As to the first claim, the Commission explained that Edwards has not alleged the violation of any statute enumerated in § 3662(a) or any regulation promulgated under any enumerated statute. Edwards invokes 39 U.S.C. § 401(2), which authorizes the Postal Service to "adopt, amend, and repeal such rules and regulations" as are consistent with Title 39 and necessary to carry out its functions, 39 U.S.C. § 401(2), but he does not argue that the Postal Service adopted, amended, or repealed a rule inconsistent with Title 39 or its functions.

16

Nor is his claim covered by the parenthetical in § 3662(a), which extends the Commission's complaint authority to "regulations promulgated under" the preceding statutory provisions. 39 U.S.C. § 3662(a). That parenthetical language extends the Commission's complaint authority to regulations that carry out the preceding provisions. In the context of 39 U.S.C. § 401(2), that means regulations that govern the Postal Service's adoption, amendment, or repeal of regulations. Edwards does not challenge the Postal Service's compliance with any such regulation.

Contrary to Edwards' and amicus' arguments, the parenthetical in § 3662(a) does not cover any and all regulations that the Postal Service issues by exercising its general rulemaking authority under § 401(2). Were that the case, the parenthetical would encompass effectively all of the Postal Service's regulations, which, in turn, would obviate the specific statutory limits on the Commission's complaint authority set forth in § 3662(a) by permitting complaints that allege violations of Postal Service regulations that implement statutes that are not listed in § 3662(a). Moreover, reading the parenthetical to cover any and all regulations that the Postal Service issues by exercising its general

17

rulemaking authority would mean that the parenthetical makes little sense as applied to the other statutory provisions in § 3662(a), which do not confer rulemaking authority. The plain text of the parenthetical, read in context, makes clear that it covers claims alleging nonconformance with regulations that implement the specific statutory provisions in § 3662(a). Because Postal Operations Manual § 631.8 is not such a regulation, Edwards' first claim was properly dismissed.

By the same token, the Commission also properly dismissed Edwards' second claim, which alleges that the Postal Service improperly retaliated against him for filing a complaint by changing its explanation for discontinuing door delivery. That claim does not allege the violation of any statutory provision listed in § 3662 or any regulation promulgated thereunder.

**II.** The Commission also properly dismissed Edwards' discrimination claim alleging that another similarly situated residence receives door delivery of oversized packages and that the Postal Service therefore violated 39 U.S.C. § 403(c) by improperly discriminating against him. Because this claim was within the Commission's § 3662(a) complaint authority, the Commission initiated proceedings by appointing

a presiding officer to take discovery, review the parties' evidence and arguments, and resolve the factual issues presented.

Upon its own review of the record, the presiding officer's intermediate decision, and the parties' subsequent filings, the Commission adopted the presiding officer's findings of fact and conclusions of law and properly dismissed Edwards' discrimination claim. The Commission reasonably determined that the Postal Service had applied the Rural Carrier Handbook in a reasonable and nondiscriminatory manner when it determined that Edwards' residence was more than one-half mile from the postal carrier route and that the other residence that Edwards had identified as similarly situated, 565 Celestial Circle, was not.

The Commission also reasonably concluded that the Postal Service had adhered to reasonable and nondiscriminatory processes in discontinuing door delivery of oversized packages to Edwards' residence. As the Commission explained, the Postal Service's primary reason for discontinuing door delivery of oversized packages to Edwards' residence was that it was more than one-half mile to the carrier route, notwithstanding Edwards' assertions that the Postal Service gave

19

multiple reasons for discontinuing door delivery.  Moreover, the Commission reasonably found that Edwards had not produced sufficient evidence to demonstrate that the process by which postal management discontinued door delivery of oversized packages to his residence was related to discrimination.

**STANDARD OF REVIEW**

The Postal Regulatory Commission's decision is reviewed pursuant to the Administrative Procedure Act, *see Alliance of Nonprofit Mailers v. Postal Regul. Comm'n*, 790 F.3d 186, 193 (D.C. Cir. 2015), and may be set aside only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); *see* 39 U.S.C. § 3663 ("The court shall review the order or decision in accordance with section 706 of title 5 … on the basis of the record before the Commission.").  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## ARGUMENT

**I. The Commission properly dismissed Edwards' claims that the Postal Service violated the Postal Operations Manual and improperly retaliated against him.**

The Commission properly concluded that it did not have the authority to adjudicate Edwards' first two claims—namely, that the Postal Service violated Postal Operations Manual § 631.8 in discontinuing door delivery of oversized packages and that the Postal Service improperly retaliated against him for filing a grievance with the Commission about the discontinuation of door delivery. The Commission's complaint authority extends only to claims that the Postal Service is not complying with the specific statutory provisions enumerated in 39 U.S.C. § 3662(a). Edwards' claim that the Postal Service did not comply with Postal Operations Manual § 631.8 does not implicate any of these statutory provisions. Although Edwards contends that his claim implicates 39 U.S.C. § 401(2), he does not argue that the Postal Service adopted, amended, or repealed a regulation inconsistent with Title 39. Nor does he argue that the Postal Service violated any regulation that implements § 401(2). Edwards' retaliation claim likewise does not allege noncompliance with any of the provisions enumerated in

21

§ 3662(a) and therefore is outside the bounds of the Commission's complaint authority.

**A. 1.** Congress prescribed the bounds of the Commission's complaint authority in 39 U.S.C. § 3662(a), which provides that any interested person may lodge a complaint with the Commission if that person believes the Postal Service is not operating in conformance with certain enumerated statutory provisions—"sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter" (*i.e.*, chapter 36 of Title 39 of the U.S. Code), or regulations promulgated under these provisions. This means that a person may lodge a complaint with the Commission if it concerns one of the enumerated statutory provisions, each of which governs issues of broadly applicable postal policy or unfair competition. *See* 73 Fed. Reg. at 51,889.

Edwards' claim that the Postal Service acted contrary to Postal Operations Manual § 631.8 does not fall within the bounds of the Commission's § 3662(a) complaint authority. Edwards contends that his claim implicates 39 U.S.C. § 401(2), but it does not. Section 401(2) authorizes the Postal Service to "adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the

execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." 39 U.S.C. § 401(2). Thus, the Commission's authority to consider whether the Postal Service is "operating in conformance with the requirements of … [§] 401(2)," *id.* § 3662(a), means that it has the authority to assess whether the Postal Service's rules are consistent with Title 39 and necessary to the execution of its functions, *i.e.*, whether the rules are lawful. Edwards, however, is not asserting that the Postal Service adopted, amended, or repealed a regulation in a manner inconsistent with Title 39 of the U.S. Code.

As a general matter, § 3662(a) does not authorize the Commission to consider challenges to the Postal Service's application of rules in individual cases unless a challenge implicates one of the enumerated statutory provisions. For instance, if a complainant alleges that the Postal Service applied a rule in an unreasonably discriminatory manner, then the Commission may exercise its complaint authority to adjudicate the discrimination claim. But unless the claim is brought under one of the statutory provisions listed in § 3662(a), the Commission does not

have the authority under § 3662(a) to adjudicate the Postal Service's compliance with its regulations.

The language in the parenthetical in § 3662(a) does not broaden the Commission's complaint authority to cover Edwards' claim. As explained, § 3662(a) provides that the Commission's complaint authority extends to complaints that the Postal Service is not operating in conformance with the requirements of the enumerated statutory provisions "(or regulations promulgated under any of those provisions)." 39 U.S.C. § 3662(a). The phrase "regulations promulgated under any of those provisions" is properly understood to refer to regulations that carry out the preceding statutory provisions. This would include, for instance, a regulation carrying out the requirements in 39 U.S.C. § 601 governing the carriage of mail. *See, e.g.*, 39 C.F.R. § 310.2. In the context of § 401(2), the parenthetical is properly understood to refer to regulations that govern the Postal Service's adoption, amendment, or repeal of regulations consistent with Title 39. This would include, for instance, 39 C.F.R. § 211.2, which defines what constitutes a Postal Service regulation as including certain manuals, handbooks, and resolutions, and is promulgated under § 401(2).

The parenthetical does not extend the Commission's authority to policing compliance with any and all regulations that the Postal Service promulgates pursuant to its grant of rulemaking authority under § 401(2). Construing the parenthetical that way would sweep within the Commission's complaint authority even those regulations that are issued to carry out statutory duties not listed in § 3662(a). That reading is contrary to both the text of § 3662(a), which circumscribes the Commission's complaint authority to specific statutes, and to the statutory design. The Postal Service exercises its general rulemaking authority to issue regulations under a wide array of statutes, including statutes governing issues not pertaining to postal policy, such as the Freedom of Information Act and the National Environmental Policy Act. Construing the parenthetical to extend the Commission's complaint authority to cover all of these regulations would require concluding that Congress tasked the Commission with superintending the Postal Service's operations on non-postal matters. Neither the statutory structure nor the legislative history supports such a reading.

Had Congress intended for the Commission to adjudicate complaints about the Postal Service's compliance with each and every

25

regulation it issues, it could have said so; it did not. *See Biden v. Texas*, 597 U.S. 785, 798 (2022) ("If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote."). Instead, Congress identified specific statutory authorities that may form the basis for a complaint before the Commission. *See* 39 U.S.C. § 3662(a). The parenthetical in § 3662(a) should not be construed in a way that would supplant these careful legislative choices and task the Commission with policing the Postal Service's compliance with assorted unrelated statutes by way of complaints about their implementing regulations. Reading the statute this way would obviate the statutory limits on the Commission's complaint authority. And it requires presuming that Congress first circumscribed the scope of the Commission's complaint authority in § 3662(a) by enumerating six specific parts of Title 39 and then enlarged the Commission's authority to sweep more broadly than any of those statutes and to encompass all of the Postal Service's regulations (and effectively, all of its operations) via a parenthetical. *See Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (recognizing that Congress "does not … hide elephants in mouseholes"). That is not a reasonable reading of the statute.

**2.** The Commission's understanding of the scope of its complaint authority in § 3662(a) is consistent with the nature of its authority more generally. In the Postal Accountability and Enhancement Act, Congress redefined the Commission's role and authority, including by establishing its complaint authority under § 3662(a) to oversee the "rates and services of market dominant products, competitive products, and experimental products," all of which are "designed in a manner that affects a significant number of individuals, represents a pattern or practice, or impacts a substantial region of the nation." 73 Fed. Reg. at 51,889. Chapter 36 of Title 39, which is also referenced in § 3662(a), contains the "national policies" that the Postal Service and the Commission "are to apply with respect to rate setting and providing services to the public." *Id.*; *see* 39 U.S.C. §§ 3621-3642; *id.* § 3661(b) (directing the Postal Service to seek an opinion from the Commission before changing postal services that will "generally affect service on a nationwide or substantially nationwide basis"); *id.* § 3691.

Thus, the scope of the Commission's complaint authority under § 3662(a), which is limited to complaints about the Postal Service's statutory duties that implicate issues of broadly applicable postal policy

27

and unfair competition, is consistent with the thrust of the Postal Accountability and Enhancement Act. The legislation reformulated the Commission's authority to focus on these broad-ranging issues, such as rate regulation, service standards, and fair competition. And there is no evidence in either the language or legislative history of the Postal Accountability and Enhancement Act that Congress sought to task the Commission with adjudicating individualized disputes about the Postal Service's compliance with all of its regulations, including those that do not carry out the statutory provisions listed in § 3662(a) and those that carry out all sorts of non-postal duties.

Other provisions enacted as part of the Postal Accountability and Enhancement Act affirm the Commission's understanding of its complaint authority. For instance, the statute that establishes the Commission's remedial authority, 39 U.S.C. § 3662(c) generally authorizes the Commission to order the Postal Service to achieve compliance with applicable requirements. *See* 39 U.S.C. § 3662(c). But it also specifically enumerates the types of remedies that Congress contemplated to "remedy the effects of any noncompliance," such as "ordering unlawful rates to be adjusted to lawful levels, ordering the

28

cancellation of market tests, ordering the Postal Service to discontinue providing loss-making products, or requiring the Postal Service to make up for revenue shortfalls in competitive products." *Id.* This language makes clear that Congress envisioned the Commission addressing complaints about the kinds of postal issues of broad applicability and unfair competition that are covered by the specific statutory provisions enumerated in § 3662(a). There is no language in § 3662(c) that suggests that Congress contemplated the Commission policing the Postal Service's everyday compliance with its own regulations.

The Commission's rulemaking governing its complaint process—which Edwards does not challenge—reinforces the propriety of its decision here. Following the enactment of the Postal Accountability and Enhancement Act, the Commission set up a two-tiered process for complaints. A grievance that meets the Commission's form-and-manner requirements and challenges the Postal Service's compliance with one of the statutory provisions enumerated in § 3662(a), or a regulation promulgated to carry out one of those provisions, proceeds through the Commission's formal complaint process. *See* 39 C.F.R. § 3022.2. A grievance that does not meet those requirements proceeds through the

Commission's informal rate-and-service inquiry procedures, whereby the Commission forwards the grievance to the Postal Service, which is required to inform the Commission how it responded to the grievance within 45 days. *See id.* § 3023.11(a). In the Commission's determination, because "local issues related to problems associated with individual mailers do not," in the main, "raise postal public policy concerns," and instead "raise issues which are typically isolated incidents or those affecting only a few mail users," such grievances are "typically best resolved by the Postal Service at the local level." 73 Fed. Reg. at 51,890.

The Commission's regulations for addressing grievances and the underlying rulemaking are consistent with its understanding that § 3662(a) covers the specific issues of broad applicability and unfair competition that are enumerated in the statute, including discrimination, and not monitoring compliance with individual regulations that carry out other provisions. This makes sense, since the individualized—and often localized—issues that fall into the latter category are typically best resolved by the Postal Service. Given the broader goals with which the Commission was tasked, it would have made little sense for Congress to require the Commission to institute

proceedings on every such complaint. Nevertheless, pursuant to its general rulemaking authority in 39 U.S.C. § 503, the Commission has adopted certain procedures for overseeing the Postal Service's handling of individualized grievances, in the event issues of broad applicability or unfair competition arise. *See* 39 C.F.R. § 3023.11(a)-(b); *see also id.* § 3023.12.

**2.** The Commission properly concluded that its complaint authority did not extend to adjudicating Edwards' claim based on a violation of Postal Operations Manual § 631.8 or his claim of improper retaliation.

As to the first claim, the Commission explained that the "application of [the Postal Operations Manual], even if incorrect, does not involve the Postal Service 'adopting, amending, or repealing' a rule or regulation in a manner that is inconsistent with title 39." JA75. Thus, the Commission properly determined that since Edwards' first claim challenged the Postal Service's alleged noncompliance with its own regulation in a manner that did not implicate the Commission's complaint authority under § 3662(a), it was properly dismissed.

By the same token, the Commission explained that Edwards' retaliation claim was dismissed because it did not fall within any of the

enumerated bases of the Commission's complaint authority.  JA75.  Even amicus, who was appointed by this Court to present arguments in favor of Edwards' position, takes no position on Edwards' arguments as to this claim.  *See* Amicus Br. 63.

**B.**  Neither Edwards' nor amicus' arguments support a contrary conclusion.

**1.**  Amicus first contends (Br. 28) that it would be surplusage not to read the parenthetical in § 3662(a) as extending the Commission's complaint authority to adjudicating the Postal Service's compliance with all of its regulations issued as an exercise of its general rulemaking authority, notwithstanding whether those regulations carry out any of the statutory provisions enumerated in § 3662(a).  Far from it: As amicus acknowledges (Br. 27), the reference to § 401(2) in § 3662(a) authorizes the Commission to accept complaints that the Postal Service has engaged in rulemaking activity beyond its statutory authority, and the parenthetical correspondingly encompasses rules that govern the Postal Service's adoption, amendment, and repeal of regulations.  For instance, 39 C.F.R. § 211.2 governs what constitutes a Postal Service regulation, including certain manuals, handbooks, resolutions, etc., and 39 C.F.R.

§ 211.4 governs the effectiveness of various older personnel regulations. It is not surplusage to read the parenthetical in § 3662(a) to cover compliance with regulations governing the adoption, amendment, and repeal of Postal Service regulations but not with the wide swath of other, unrelated regulations that carry out other statutory duties.

Nor is it a "misinterpret[ation]" of the parenthetical to understand its reach in this way, as Edwards suggests. Br. 24. If the words "promulgated under" referred to any regulation that results from the Postal Service's exercise of the rulemaking authority provided for in § 401(2), it would make no sense for the parenthetical to cover regulations that implement the other statutory provisions enumerated in § 3662(a), since those provisions do not confer rulemaking authority. Yet it is undisputed that the parenthetical covers regulations "promulgated under" these other provisions—namely, regulations that carry out those provisions. *See* Amicus Br. 30-31. The Commission properly construed the parenthetical to apply in the same way in the context of § 401(2) as in the context of the other provisions listed in § 3662(a).

Construing the parenthetical as Edwards and amicus suggest would eviscerate the statutory limits on the Commission's § 3662(a)

33

complaint authority. Complaints could be filed alleging violations of regulations implementing postal statutes not listed in § 3662(a), effectively bypassing the statutory limits on the Commission's complaint authority. It would be illogical to read the statute to presume that Congress intended such an outcome, yet that is precisely the argument that Edwards and amicus press.

Contrary to amicus' contentions (Br. 30-31), the Commission's reasoning in Order No. 1892 is consistent with its understanding of its § 3662 authority. The complaint in that case alleged, in relevant part, that the Postal Service had not complied with service standards set by its regulations in violation of 39 U.S.C. § 3691(b)(1)(B), which requires the Postal Service to "preserve regular and effective access to postal services in all communities." Order No. 1892 at 6, *American Postal Workers Union*, No. C2013-10 (Nov. 27, 2013). Thus, the complaint was premised on an alleged violation of a statute covered by § 3662(a), since § 3691 is in chapter 36 of Title 39 of the U.S. Code. To the extent the complaint alleged violations of service standards promulgated pursuant to chapter 36, those regulations fall within the ambit of § 3662(a)'s parenthetical. *See also* Order No. 1327 at 7 n.16, *City & County of San Francisco*, No.

C2011-2 (May 1, 2012) (considering a claim implicating the Postal Service's interpretation of its regulations in light of a claim under § 401(2) that a regulation was "not necessary in the execution of [the Postal Service's] functions" and undue-discrimination allegations).

The language of the Commission's regulations governing its complaint process do not advance amicus' position either. Amicus quotes (at Br. 30) 39 C.F.R. § 3022.2, which states that a complaint may be filed if a person believes the Postal Service is not operating in compliance with the statutory provisions enumerated in § 3662(a) or "[a]ny rule, order, or other regulatory requirement based on any of these statutory provisions." This regulation is consistent with the Commission's interpretation of § 3662(a): A complaint filed with the Commission may be based on noncompliance with a postal regulation only if the regulation is "based on" one of the enumerated statutory provisions. This would encompass rules governing the Postal Service's adoption, amendment, or repeal of a regulation under § 401(2). But the Commission's regulation does not support the notion that a complaint may be based on alleged noncompliance with *any* regulation that the Postal Service promulgates via an exercise of its general rulemaking authority. And nowhere in its

35

rulemaking that led to the adoption of these regulations did the Commission ever indicate that its regulations were meant to reflect such a contorted understanding of its complaint authority either.

The absence of a "final agency action" requirement in § 3662(a) does not indicate that the Commission has the authority to receive complaints about the Postal Service's compliance with its own regulations. *See* Amicus Br. 32. Section 3662(a) states that a person who "believes the Postal Service is not operating in conformance" may file a complaint, but this language simply describes who can file a complaint. Neither the absence of a final-agency-action requirement in the statute nor the statute's use of the words "believes" and "operating" in § 3662(a) has any bearing on the substantive scope of the Commission's complaint authority. If anything, the absence of a final-agency-action requirement, as in 5 U.S.C. § 704, *see* Amicus Br. 32, appears to suggest that Congress did *not* task the Commission with handling claims challenging the application of postal regulations to individuals, since those are the very kinds of claims for which Congress imposed a final-agency-action requirement for agencies subject to the Administrative Procedure Act.

**2.** Amicus' arguments based on legislative history and purpose are likewise unavailing. No one disputes the overarching goals of the Postal Accountability and Enhancement Act, and none of the general statements of legislative purpose that amicus quotes (Br. 33-35) contradict the Commission's understanding of its complaint authority. In fact, the Commission established its two-tiered complaint process in furtherance of these very goals. *See* 73 Fed. Reg. at 51,890 (explaining that by processing informal rate-and-service inquiries as it does, there is greater transparency and oversight of even those individualized complaints that the Commission otherwise does not have the authority to handle). In any event, these generalized legislative goals do not compel the conclusion that the Commission has complaint authority over all alleged violations of postal regulations. *Cf. Holder v. Martinez Gutierrez*, 566 U.S. 583, 594 (2012) (explaining that statutes should be read in light of the reality that Congress does not always pursue its legislative goals to the "$n$th degree"). And while the Postal Accountability and Enhancement Act broadened the Commission's complaint authority, amicus does not identify any legislative history stating that Congress

contemplated the Commission receiving and adjudicating complaints about the Postal Service's noncompliance with regulations writ large.

The drafting history of § 3662(a) also does not support amicus. Amicus explains (Br. 35-38) that earlier drafts of the legislation that became the Postal Accountability and Enhancement Act contained different versions of § 3662(a), each enumerating different lists of statutory provisions that could be the subject of a complaint about Postal Service noncompliance. Over time, Congress narrowed the list to the five provisions enumerated in the current version of § 3662(a) and "this chapter" (chapter 36). *See id.* The absence of any changes to the parenthetical language in § 3662(a), which follows the list of enumerated statutory provisions, does not support amicus' position that Congress intended that the Commission would police the Postal Service's compliance with all of its own regulations. To the contrary, the absence of any change to the parenthetical suggests that Congress did not intend to dramatically expand the Commission's complaint authority with the parenthetical but rather, retained the language it had in place to ensure the Commission's complaint authority extended only to those regulations that implement the enumerated statutory provisions.

**3.** Edwards' and amicus' other assorted arguments fail as well. Amicus is incorrect (Br. 44) that the Commission's interpretation of its complaint authority would render it unable to address systemic postal policy issues. The Commission's § 3662 rulemaking explained that if the Commission receives complaints that appear to raise the kinds of individualized issues that do not trigger the Commission's complaint authority when viewed in isolation, but when viewed together, might suggest broad postal policy issues that implicate the Postal Service's statutory duties referenced in § 3662(a), and if the Postal Service is unable to resolve such complaints on an informal basis, the Commission may take appropriate action. *See* 73 Fed. Reg. at 51,890. For instance, the Commission can appoint a public representative to initiate the complaint process or appoint an investigator to explore the matter. *See id.* The Commission's two-tiered complaint process thus "strike[s] an appropriate balance between ensuring that postal management receives increased flexibility while providing the accountability and transparency of the Postal Service as envisioned by the [Postal Accountability and Enhancement Act]." *Id.*

Amicus also asserts (Br. 50-51) that the Commission's informal rate-and-service inquiry procedures must necessarily rest on § 3662(a) and cannot be promulgated pursuant to 39 U.S.C. § 503, which contains the Commission's general rulemaking authority. But this argument is no more than a repackaging of amicus' position about the scope of § 3662(a), and, as explained, amicus' assertion that the informal rate-and-service inquiry "must" rest on § 3662(a) does not make it so. Amicus Br. 51. There was nothing improper about the Commission exercising its general rulemaking authority under § 503 to create an additional informal rate-and-service inquiry process for forwarding complaints that do not fall within its complaint authority to the Postal Service for resolution.

The Commission's consideration of Edwards' unreasonable-discrimination claim was also appropriate under § 403(c), since unreasonable discrimination is one of the specifically enumerated issues about which the Commission is authorized to receive complaints under § 3662(a). *See* Amicus Br. 46-47. That Edwards only alleged unreasonable discrimination as to himself does not affect the nature of the discrimination claim that he raised. And it does not render his claim

alleging the violation of Postal Operations Manual § 631.8 a claim about the Postal Service's adoption, amendment, or repeal of a regulation. To the extent amicus takes issue (Br. 46-47) with parts of the reasoning in the Commission's complaint-process rulemaking (while echoing other parts of the Commission's analysis from that rulemaking), those contentions are irrelevant, since Edwards does not challenge that rulemaking and his claim falls outside the bounds of § 3662(a) regardless.

To the extent Edwards now argues (Br. 26-27) that the Postal Service's action somehow violated § 101(a) or (b), this claim was not set forth in Edwards' complaint before the Commission. And since those statutes govern the Postal Service, rather than the Commission, Edwards fails to present any argument as to how the Commission's action can be said to violate them.

**4.** The Commission's understanding of § 3662(a) is consistent with the statutory text and structure and does not contravene the *Accardi* principle. The Commission has never taken the position that the Postal Service may violate its own regulations "with impunity." Amicus Br. 57. As the text of § 3662(a) makes plain, however, Congress authorized the Commission to receive complaints on a limited subset of issues, which

does not encompass Edwards' claim here. Even amicus recognizes that in drafting the Postal Accountability and Enhancement Act, Congress narrowed the list of statutory duties that could support formal complaints lodged with the Commission (Br. 35-38), and amicus does not contest the validity of Congress' choice to so limit the Commission's authority. Just as Congress violated no legal principle in giving the Commission the authority to hear complaints concerning a limited set of statutes, it violated no legal principle in giving the Commission the authority to hear complaints concerning a limited set of regulations.

As amicus recognizes, the *Accardi* principle provides that "agencies may not violate their own rules and regulations to the prejudice of others," *Battle v. Federal Aviation Admin.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005). Amicus Br. 57 (quotation marks omitted). But this principle has no place here, since it is in no way the implication of the Commission's position that the Postal Service may violate its own regulations to the prejudice of others. Rather, the Commission's position is that relief in the form of a complaint proceeding before the Commission is available only in the circumstances that § 3662(a) provides. That Congress has separately barred review of Postal Service action under the

Administrative Procedure Act in 39 U.S.C. § 410(a) does not mean that this Court should contort 39 U.S.C. § 3662(a) to read into it an authority to review claims that Congress never intended the Commission to address. Amicus identifies no case holding that the necessary implication of a judicial review bar is that another agency is obligated to review the challenged agency action. Nor has amicus identified any case holding that the *Accardi* principle justifies circumventing statutory limits on the review of agency action in court or by another agency.

Nor is it the case that review of Postal Service action is categorically unavailable. *Ultra vires* review provides an additional backstop. As this Court has recognized, non-statutory review of Postal Service action is available to determine whether the agency has acted *ultra vires*—that is, whether it has acted in excess of its statutory authority. *See Northern Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. 2012); *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003); *see also Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d 260, 265 (D.C. Cir. 2016) (explaining the scope of *ultra vires* review). *Ultra vires* claims are not limited to the statutory duties listed in § 3662(a) or to claims about whether the Postal Service's regulations are consistent

with Title 39 and are brought directly in court, so such review is not duplicative of the review available before the Commission under § 3662(a). *But see* Amicus Br. 52 n.11.

To the extent certain claims remain unreviewable in court or before the Commission, it is by congressional design, and this Court should not accept amicus' invitation to cast aside the statutory limits on the Commission's complaint authority to stretch that authority beyond what Congress provided.

**5.** None of the appellate decisions that amicus cites hold that the Commission's complaint authority exceeds what § 3662(a) provides. In *Pontefract v. Federal Bureau of Prisons*, 2024 WL 5055838 (3d Cir. Dec. 10, 2024) (per curiam), the Third Circuit concluded certain claims against the Postal Service could not be brought under the Administrative Procedure Act and that those claims, which relied on 39 U.S.C. § 101(d) and § 401(2), both enumerated in § 3662(a), could be adjudicated by the Commission. *See id.* at *3. In the same vein, *White v. U.S. Post Office*, 2024 WL 2973705, at *2-3 (10th Cir. June 13, 2024), held that the Commission has complaint authority over claims under § 403(c), which is also enumerated in § 3662(a). *Foster v. Pitney Bowes Corp.*, 549 F.

App'x 982, 984-86 (Fed. Cir. 2013) (per curiam) (unpublished opinion), similarly held that § 404a claims should be brought before the Commission. Thus, these decisions are largely consistent with the Commission's understanding of § 3662(a), and any language in these decisions about the Commission's complaint authority over rate and service complaints must be understood in context. A handful of amicus' cases implicate the now-replaced language of § 3662 from before the Postal Accountability and Enhancement Act and thus have no bearing here. *See, e.g.*, *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 800 (8th Cir. 2006); *Bovard v. U.S. Post Off.*, 47 F.3d 1178, 1995 WL 74678, at *1 (10th Cir. 1995) (unpublished table decision); *see also Erickson v. U.S. Post Off.*, 250 F. App'x 757, 757-58 (8th Cir. 2007) (per curiam) (unpublished opinion) (affirming district court decision applying pre-2006 § 3662(a)). And to the extent certain courts have opined on the exclusivity of the Commission's complaint authority over claims that fall within the bounds of § 3662(a) (*see* Amicus Br. 54-55), that question is distinct from and irrelevant to the question whether Edwards' claim falls within § 3662(a). It does not.

The district court decisions that amicus cites (Br. 53-56) have no relevance here either. In the main, these decisions conclude that assorted complaints against the Postal Service cannot be brought directly in federal court because of the lack of a statutory cause of action and that certain complaints against the Postal Service may be filed with the Commission; some decisions recognize the statutory limits on the Commission's complaint authority, and others do not meaningfully assess whether the complaints at issue fall within the bounds of the Commission's § 3662(a) complaint authority. In any event, none of these decisions is binding, and any analysis that is untethered to the statutory text and design of § 3662(a) should have no force here. Finally, the Postal Service's arguments in those cases about the proper forum for the complaints at issue in those cases (Amicus Br. 56-57) (or even this one, Br. 20) have no bearing on the Commission's understanding of its complaint authority under § 3662(a) here, which follows from the statutory text and structure.

## II. The Commission properly dismissed Edwards' discrimination claim.

**A.** In his third and final claim, Edwards alleged that other similarly situated members of his community are receiving door delivery

of oversized packages and that the Postal Service is therefore in violation of 39 U.S.C. § 403(c), which prohibits undue or unreasonable discrimination among mail users. *See* JA75-76.

Specifically, Edwards asserted that another address in the same housing development, 565 Celestial Circle, receives door delivery of oversized packages and is similarly situated to his residence, because it is more than one-half mile from the postal carrier route. The Postal Service's Rural Carrier Handbook provides that if a parcel is too large for a customer's mailbox and the carrier's "reasonable effort to attract the customer to the box" is unsuccessful, the carrier "must deliver parcels to any residence or business that is on the line of travel, or within one-half mile of the route and has a passable road leading to it." Rural Carrier Handbook § 331.21. Edwards argued that he did not receive such delivery, but 565 Celestial Circle did, which was the basis for his discrimination claim under 39 U.S.C. § 403(c).

Because Edwards' discrimination claim implicated § 403(c), which is one of the statutes enumerated in § 3662(a), the Commission initiated proceedings on that claim. To assess the merits of this claim, the Commission appointed a presiding officer to conduct discovery into two

factual issues and evaluate the parties' arguments.  Specifically, the presiding officer was directed to assess whether any similarly situated postal customers in Edwards' neighborhood are receiving door delivery of oversized packages, and whether postal management followed non-discriminatory processes in discontinuing door delivery of oversized packages to Edwards' residence.  *See* JA77.

Based on the parties' evidentiary submissions and briefing, the presiding officer issued an intermediate decision with findings of fact and conclusions of law, which the Commission subsequently adopted.  *See* JA182-212, JA214, JA247-248.  First, the Commission concluded that Edwards had not shown that other similarly situated postal customers in his neighborhood receive door delivery of oversized packages.  Second, the Commission concluded that Edwards had not shown that the process by which the Postal Service discontinued door delivery to his residence was discriminatory.  *See* JA247-248; *see also* JA183, JA243-44.

As to the first factual issue, Edwards did not contest that his residence is at least 0.7 miles from the postal carrier route, which exceeds the half-mile limitation on door delivery.  *See* JA202.  Edwards proffered his own measurements purporting to show that 565 Celestial Circle is

more than one-half mile from the carrier route—including a measurement of "91 feet over ½ mile from the mailboxes," which he calculated by taking the Google Maps directions, converting the mileage for each individual step to feet, and then adding the steps to arrive at a total distance; and a separate measurement of "0.52 miles," which he calculated by walking from the community mailboxes to 565 Celestial Circle while using an application on his phone. *See* JA198 (quotation marks omitted). The Postal Service submitted its own measurements showing that the distance between 565 Celestial Circle and the carrier route was one-half mile—as measured by a rural delivery specialist who retrieved the driving directions from Google Maps, and as measured by the Clayton Postmaster, who drove a postal van from the carrier route to the same address. *See* JA198.

The presiding officer took all this evidence into consideration and concluded that the Postal Service had reasonably applied the half-mile rule from the Rural Carrier Handbook in a reasonable and non-discriminatory manner in assessing the distances to the two residences and discontinuing door delivery of oversized packages to Edwards' home

and determining that 565 Celestial Circle was one-half mile from the carrier route. *See* JA243; *see also* JA198, JA202, JA211-212, JA236.

As to the second factual issue, the Commission found that the Postal Service primarily relied on the fact that Edwards' home was more than half a mile from the carrier route as the basis for discontinuing door delivery. *See* JA243-244; *see also* JA207. And "at the time door delivery was discontinued, Edwards was the only customer in Mountain Creek Estates living more than one-half mile from the Carrier Route who received that service." JA208. Given Edwards had not identified a similarly situated residence located more than half a mile from the carrier route that had received door delivery, the Commission reasonably determined that postal management followed nondiscriminatory processes in discontinuing door delivery of oversized packages to Edwards' residence. *See* JA243; *see also* JA208, JA211-212. Given the Postal Service's primary ground for discontinuing door delivery was the half-mile rule, as evidenced by its submissions, the Commission rejected Edwards' arguments premised on the notion that the Postal Service had offered different rationales for its decision. *See* JA243-244; *see also* JA207. The Commission concluded that "based on the totality of the

circumstances, the evidence favors the Postal Service's nondiscriminatory explanation that management discontinued a service to which Edwards was not entitled." JA208.

**B.** Edwards fails to establish that the Commission acted in an arbitrary or capricious manner in dismissing his discrimination claim. Amicus, appointed to present arguments in favor of Edwards' position that amicus determines are potentially meritorious, takes no position on any of Edwards' arguments in connection with his discrimination claim. *See* Amicus Br. 63.

First, Edwards does not demonstrate that the Commission abused its discretion or acted in an arbitrary or capricious manner in concluding that 565 Celestial Circle was within one-half mile of the carrier route. Edwards argues that "all measurements were over one-half mile," that the Postal Service "admitted to the owner of 565 Celestial Circle that the home was over one-half mile for the purposes of oversized packages delivery," and that the Postal Service "achieved .5 mile on their odometer before reaching the home." Br. 25. This argument echoes the arguments that Edwards made in his exceptions to the presiding officer's intermediate decision. *See* JA235.

The Commission reasonably rejected these arguments and its resolution of these factual disputes was neither arbitrary nor capricious. As the Commission explained, the presiding officer considered the evidence and arguments submitted by both Edwards and the Postal Service to resolve the factual dispute about whether Edwards and the postal customer at 565 Celestial Circle were similarly situated. *See* JA236. The Commission explained that after recognizing that "each measurement system had an unknowable margin of error," the presiding officer concluded that the Postal Service had applied the Rural Carrier Handbook "in a reasoned and non-discriminatory manner when it used Google Maps total distance and actual driving distance … to calculate distance from the carrier route." JA236.

This was reasonable. As the Commission explained, the presiding officer carefully analyzed the evidence submitted by both parties and noted that the parties' different methods of measuring distance resulted in slightly varied measurements. *See* JA199, JA236. Each party observed that the opposing party's measurements included unknown margins of error, different rounding rules, different starting points, and potentially different end points. *See* JA200. Given all this, the presiding

officer reasonably focused on whether the Postal Service's methods and application of the half-mile rule were reasonable and non-discriminatory across the two residences and concluded that they were, finding that the Postal Service had applied its methods and the half-mile rule consistently across the two residences and that Edwards had not shown otherwise. *See* JA201-202. The Commission reasonably adopted this analysis. *See* JA236-238.

By the same token, the Commission explained that the presiding officer did not impose an improper "reasonableness" requirement, as Edwards contends (Br. 28). *See* JA236-237. The statute that Edwards invokes prohibits the Postal Service from making "any undue or unreasonable discrimination among users of the mails" or from granting "any undue or unreasonable preferences to any such user." 39 U.S.C. § 403(c). Thus, if the Postal Service acted "reasonably," as the presiding officer found it did, it could not be acting in an "undue or unreasonable" manner. JA237 (quotation marks omitted). Thus, the Commission concluded that the presiding officer properly analyzed whether the Postal Service's application of the half-mile rule "was both a reasonable and a

non-discriminatory interpretation of the requirements of section 331.21 of the Rural Carrier Handbook."  JA237.

Nor did the Commission err by imposing a "temporal" requirement, as Edwards argues (Br. 28).  As the Commission explained, to show discrimination, Edwards had to show that he was being denied door delivery while a similarly situated customer was currently receiving it. *See* JA238.  Thus, the presiding officer did not err in assessing whether a similarly situated home was currently receiving door delivery of oversized packages.  *See* JA237-238.

To the extent Edwards renews his argument that the half-mile rule should be interpreted as a "radius" or "roundtrip," Br. 28, that argument is refuted by the text of the provision of the Rural Carrier Handbook that Edwards invokes, which states that if the carrier is unsuccessful in attracting the customer to the mailbox, the carrier "must deliver parcels to any residence or business that is on the line of travel, or within one-half mile *of the route*."  Rural Carrier Handbook § 331.21 (emphasis added).  In his exceptions to the presiding officer's decision, Edwards argued that "roundtrip distance" or "radius from the central delivery point" should be used "rather than driving distance," but as the

Commission explained in overruling this exception, "[n]either roundtrip nor radius appear[s] in the text of the regulation" in the Rural Carrier Handbook. JA239; *see also* JA203-04. Thus, as the Commission explained, because the regulation is unambiguous that the relevant measure for the half-mile rule is distance from the carrier route, the presiding officer's analysis was appropriate. *See* JA239.

Alternatively, Edwards contends that even if 565 Celestial Circle is one-half mile from the route, it is not "within .5 mile" of the carrier route. Br. 25 (quotation marks omitted). But this argument is refuted by the ordinary meaning of the word "within," which includes the limit the word precedes. *See Within*, Merriam-Webster Dictionary Online, https://perma.cc/R6RG-ZP2Y ("not beyond the quantity, degree, or limitations of" (definition 2.b)).

Edwards' reliance on *Egger v. U.S. Postal Service*, 436 F. Supp. 138 (W.D. Va. 1977), is no more persuasive. Edwards argues that in *Egger*, the Postal Service resumed delivery to an address "in accordance with Postal Service policy that carrier service once extended, even if extended erroneously, will not be terminated." Br. 11 (emphasis omitted) (quoting *Egger*, 436 F. Supp. at 139-40); *see also* Br. 19-20. But as the Commission

explained, and as Edwards recognizes (Br. 21), *Egger* is relevant to whether the Postal Service engaged in discrimination in violation of 39 U.S.C. § 403(c), which requires the complainant to show that he is receiving less favorable services than those provided to other postal customers, that the complainant is similarly situated to those postal customers, and that there is no rational or legitimate basis for denying the complainant the more favorable service provided to similarly situated postal customers. *See* JA195; *see also* JA76. And as explained, Edwards failed to establish that he was denied a more favorable service that is currently being offered to a similarly situated postal customer. *See* JA243-244. The court's ruling on remedy in *Egger* is inapplicable here: As the language from *Egger* that Edwards quotes (Br. 19-20) makes clear, *Egger* expressed no opinion on the Postal Service's then-operative policy that individual delivery service, once extended, would not be terminated—a policy that has since been superseded by the Rural Carrier Handbook, which governs here. *See* Br. 19-20.

Finally, the Commission reasonably concluded that the Postal Service's primary reason for discontinuing door delivery was that Edwards' residence was over half a mile from the carrier route, as evinced

by the Postal Service's submissions and notwithstanding the other reasons the Postal Service may have given at other points (Br. 24, 28). Thus, the Commission reasonably determined that postal management followed nondiscriminatory processes in discontinuing door delivery of oversized packages to Edwards' residence.  *See* JA243; *see also* JA208, JA211-12.

## CONCLUSION

For the foregoing reasons, the petition should be denied.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MICHAEL S. RAAB
AUGUST FLENTJE

 */s/ Urja Mittal*
 URJA MITTAL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7248*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-4895*
  *urja.mittal@usdoj.gov*

May 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,801 words.  This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Urja Mittal*
URJA MITTAL

**ADDENDUM**

# TABLE OF CONTENTS

39 U.S.C. § 401 ............................................................................ A1

39 U.S.C. § 403 ............................................................................ A2

39 U.S.C. § 3662 .......................................................................... A3

U.S. Postal Serv., *Rural Carrier Duties and Responsibilities*
§ 331.21.................................................................................. A5

U.S. Postal Serv., *Postal Operations Manual* § 631.81 ......................... A6

**39 U.S.C. § 401 – General powers of the Postal Service**

Subject to the provisions of section 404a, the Postal Service shall have the following general powers:

*   *   *

(2) to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title;

*   *   *

**39 U.S.C. § 403 – General duties**

\*   \*   \*

(c) In providing services and in establishing classifications, rates, and fees under this title, the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user.

**39 U.S.C. § 3662 – Rate and service complaints**

(a) In General.—

Any interested person (including an officer of the Postal Regulatory Commission representing the interests of the general public) who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter (or regulations promulgated under any of those provisions) may lodge a complaint with the Postal Regulatory Commission in such form and manner as the Commission may prescribe.

(b) Prompt Response Required.—

    (1) In general.—The Postal Regulatory Commission shall, within 90 days after receiving a complaint under subsection (a)—

        (A) either—

            (i) upon a finding that such complaint raises material issues of fact or law, begin proceedings on such complaint; or

            (ii) issue an order dismissing the complaint; and

        (B) with respect to any action taken under subparagraph (A)(i) or (ii), issue a written statement setting forth the bases of its determination.

    (2) Treatment of complaints not timely acted on.—

For purposes of section 3663, any complaint under subsection (a) on which the Commission fails to act in the time and manner required by paragraph (1) shall be treated in the same way as if it had been dismissed pursuant to an order issued by the Commission on the last day allowable for the issuance of such order under paragraph (1).

(c) Action Required if Complaint Found To Be Justified.—

If the Postal Regulatory Commission finds the complaint to be justified, it shall order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance (such as ordering unlawful rates to be adjusted to

lawful levels, ordering the cancellation of market tests, ordering the Postal Service to discontinue providing loss-making products, or requiring the Postal Service to make up for revenue shortfalls in competitive products).

\*   \*   \*

**U.S. Postal Service, *Rural Carrier Duties and Responsibilities*
§ 331.21 – Oversized Parcels, Attract Customer to Box**

If a parcel is too large for the box, make a reasonable effort to attract the customer to the box to receive the parcel. Do this by sounding the horn or by hailing the customer. If unsuccessful, you must deliver parcels to any residence or business that is on the line of travel, or within one-half mile of the route and has a passable road leading to it. You are required to dismount to effect delivery if there is no response to your efforts to have the customer come to the vehicle, or if the customer requests that you do so. In multi-tenant buildings, make every effort to deliver parcels to customers using existing building notification procedures.

**U.S. Postal Service, *Postal Operations Manual* § 631.81 – Correction of Improper Mode of Delivery, General**

In the event an improper mode of delivery is established or extended by a postal carrier or manager, the service will be withdrawn with a thirty (30) day advance notice to the affected customer(s), provided that the error is detected and the customer is notified within one (1) year. If the error is not detected and the customer is not notified within one (1) year of the date delivery is established or extended, the improper service remains in place unless the customer consents to the delivery mode change or a delivery point with improper modes of delivery in a vacant delivery is first identified during the vacant period per section 623.5. When the new customer(s) in these vacant deliveries are identified by Postal Service management and informed (within the first 30 days of occupancy) that the current mode of delivery was established incorrectly and will need to be corrected.

\*   \*   \*