# CASE NO. 24-1370

## UNITED STATES COURT OF APPEALS

## For the District of Columbia Circuit

*Petition for Review of Postal Regulatory Commission's Orders #6688 issued 18 September 2023, #7552 issued 19 September 2024 and #7845 issued 30 October 2024 under PRC Docket#2023-6*

ON APPEAL REVIEW FROM
POSTAL REGULATORY COMMISSION

## REPLY BRIEF OF APPELLANT

SUBMITTED BY:
Mark Allan Edwards
208 Celtic Lane
Clayton, GA 30525
703-439-0949
wandyryr@aol.com
Pro Se

CASE BEING CONSIDERED FOR TREATMENT PURSUANT TO RULE 34(j) OF THE COURT'S RULES.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ..........................................................................................1

CONCLUSION ....................................................................................17

CERTIFICATE OF COMPLIANCE....................................................18

CERTIFICATE OF SERVICE ............................................................19

i

# TABLE OF AUTHORITIES

**Cases, Page(s)**

*Eggers v USPS* (436 F. Supp.138 (W.D. Va. 1977)) p.16

*Edwards v Nichols,* Case # 2:22-cv-00160 p. 6

*Pontefract v. Federal Bureau of Prisons*, 2024 WL 5055838 (3rd Cir Dec. 10 2024) p.11, 12

*Whitman v. American Trucking Association, 531 US 457, 468, (2001)* p. 4, 5

**Statutes**

39 USC 401(2)   p. 3, 4, 9, 11, 12, 16, 17

39 USC 403(c)   p. 9

39 USC 3662 (a), (c)   p. 3, 4, 5, 6, 9, 10, 11

39 USC 3663   p.11

**Other Authorities**

Postal Operations Manual   p. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10,15, 16, 17

Rural Route Carrier's handbook (PO-603)   p. 1, 15, 16, 17

39 CFR 211.2 p. 3, 16, 17

39 CFR 3022.2 p. 10

Administrative Procedures Act p. 11, 12

# ARGUMENT

The USPS delivered oversized packages to the Petitioner's home for over two years without incident or issue from December 2019 to March 2022. Then in March 2022 the Clayton Post Office stopped delivery of oversized packages without notification or consent as dictated by Post Operations Manual (POM) 631.8 Correction of Improper Mode of Delivery:

 "If the error is not detected and the customer is not notified within one (1) year of the date delivery is established or extended, the improper service remains in place unless the customer consents to the delivery mode change"

This brief is in reply to the Respondent's Brief in the Review of Orders 6688, 7552, 7845 of the Postal Regulatory Commission denying the Petitioner's request that the Clayton Post Office abide by their own regulation POM 631.8 by resuming oversized package delivery to the Petitioner, that they discriminate by delivering to another home in the similar conditions as the Petitioner's and routinely exceed driving over one-half mile in delivery of packages to other homes in the Petitioner's neighborhood violating their own rule in the Rural Route Carrier's handbook (PO-603) paragraph 331.21 where the carrier shall only deliver oversized packages to home within one-half mile of their route.

The Respondent states in his brief that the mode of delivery for this "housing development" is centralized delivery to "cluster mailboxes at the entrance to the

community".[1] Then they define a cluster mailbox as "a collection of individually locked compartments." This is a misstatement given the availability of the information in the record, personnel available to confirm the information and length of time of this case. At the entrance to the neighborhood is a cluster of individual and disparate sized mailboxes and only one (299 Celestial Circle) is lockable. Cluster mailboxes often have parcel lockers. The parcel locker is used for items that are too large to fit in an individual box (compartment) within the Cluster Box"[2]. If this were the case then this case may never have been brought as oversized packages could be placed in a separate parcel locker and negate the need for the route carrier to deliver oversized packages to individual homes in the community. As the Petitioner has argued this placement created an unfair delivery of services to this housing development for homes farther from the mailbox cluster. However, for over two years the local postal office did extend delivery of oversized packages to the Petitioner invoking POM 631.8 and mandating notification requirements and consent of the home owner before stopping this mode of delivery.

---

[1] Respondent's Brief p 10.
[2] https://faq.usps.com/s/article/What-is-a-Cluster-Box. This is the same source the Respondent used.

The Respondent routinely gives short shrift to 39 USC 401(2) saying it only deals with "adopting, amending or repealing a rule or regulation inconsistent with Title 39"[3] But the full text of 39 USC 401(2) is necessary and important to this case.

39 USC 401(2) states: "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, **as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service** under any provisions of law outside of this title;" The Respondent readily admits this early in their brief that 39 USC 3662(a) extends the Commission's oversight authority to nonconformance encompassing rules promulgated under this statue necessary for the USPS to carry out its statutory duties.[4] The provision "as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service" refers directly to the Postal Operations Manual (POM) and is a regulation per the Respondent's own argument citing CFR 211.2 which explicitly states the POM is a regulation. The Respondent states that in the adoption, amending, or repealing "would include" CFR 211.2.[5] While CFR 211.2 addresses adopting, appealing, and revoking, its main purpose is to define what are specifically Postal Regulations and explicitly directs conformance ("take precedence over all regulations issued by other authority with regulations") in a hierarchical

---

[3] Respondent Brief p 12, 13, 24.
[4] Respondent's Brief p 4.
[5] Respondent's Brief, p 24.

manner. Further it states regulations "continue in effect" making the POM applicable and non-conformance under 39 USC 3662(a) actionable by the Postal Regulatory Commission. Even the Respondents' argument on the 3662(a)'s parenthetical phrase "regulations promulgated under any of the provisions", as the Respondent states "is properly understood to refer to regulations that carry out the preceding statutory provisions."[6] Thus, as 39 USC 401(2) states regulations that "may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service" necessarily includes the Postal Operations Manual.

The Respondent states it is unreasonable to read into the statute (39 USC 3662(a)) to "encompass all of the Postal Service's regulations (and effectively, all of its operations) via a parenthetical. Then cites *Whitman v. American Trucking Association, 531 US 457, 468, (2001)* where "Congress does not ….hide elephants in mouseholes".[7] In this case the court stated "respondents must show a textual commitment of authority to the EPA to consider costs". That textual commitment while not existing in the *Whitman* case as the EPA had inferred commitment. In this case there is concrete textual commitment from Congress under 39 USC 3662(a) that:

---

[6] Respondent's Brief p 24.
[7] Respondent's brief p 26.

Any interested person (including an officer of the Postal Regulatory Commission representing the interests of the general public) who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter (or regulations promulgated under any of those provisions)

The "parenetical" is not a "mousehole" but a clear textual commitment as per

*Whitman v. American Trucking Association* as non-conformance with regulations

promulgated under **any** of those provisions (401(2) in this argument).

The Respondent argues that there was no intent for Postal Accountability and

Enhancement Act to "adjudicate individual disputes about the Postal Service's

compliance with all of its regulations" but a plain reading of 3662(a) above clearly

individualizes complaints using the singular language "Any interested person". In

this case the Petitioner's complaint, an interested person, is complaining about the

Postal Service not conforming with its own regulations, to wit: POM 631.8

Correction of Improper Mode of Delivery which directs the Postal Service to

continue a Mode of Delivery that has already been extended for over one year even

if improper.

The Respondent states[8] there is "no language in 39 USC 3662(c) that suggests

Congress contemplated the Commission policing the Postal Service's everyday

compliance with its own regulations." As the Petitioner has already argued above

---

[8] Respondent's Brief p 29.

3662(a) clearly states any individual may lodge a complaint. And "regulations promulgated under any provision "in 39 USC 3662(a) refers to all regulations necessary for the Postal Service to conduct its mission, of which is clearly the POM. Under 39 USC 3662(c) the PRC can direct the Postal Service to conform with its own regulations in any instance.

The Respondent argues that the two-tiered complaint adjudication format established by the PRC is sufficient to address this issue. While the Petitioner whole heartedly agrees with handling disputes at the lowest level in this case it failed repeatedly. The original complaint was lodged in person with the Clayton Post Office in which the Post Master, denied resumption of oversized package delivery due to the petitioner's home being over .5 from the "route". The Petitioner then filed an online complaint via the USPS website that was again referred back to the local Post Office without investigation into POM violations. The Clayton Post Master in a letter to the Petitioner just restated their previous rationale of the Petitioner's home being .5 from the carrier's route.[9] The Petitioner then filed in the United States District Court for Northern District.[10] This was eventually dismissed without prejudice for lack of subject matter jurisdiction and because the Petitioner had

---

[9] JA p 38 is the online complaint that was simply referred back to the Original Post Office for reply and that reply was from Post Master Gabrels reply, JA p 43.
[10] *Edwards v Nichols*, Case # 2:22-cv-00160

6

simultaneously filed an online compliant with the PRC.[11] The online PRC complaint was referred back to the same Post Office through its District Office for a third time and seemingly just accepted Clayton Post's Office's new rationale for not delivering oversized packages. The reply denial now stated that the cause for the denial of oversized package delivery was due to the driveway being too narrow for a safe turnaround even though the Post Office has delivered oversized packages for "period of time."[12] This can only be construed as an excuse to avoid complying with POM 631.8 and according to discovery[13] this rationale was provably false.[14] The Respondent states that the Commission's two-tiered process "strikes an appropriate balance between ensuring that the postal management receives increased flexibility while providing the accountability and transparency" Three levels of complaints were referred back to the origin of the denial without question or accountability and this is where the Respondent feels the process should end for the Petitioner's attempt at a remedy. And when the Petitioner filed his 'formal' complaint with the PRC the rationale changed back to the Petitioner's home being over .5 mile from the carrier's

---

[11] Online complaint reply is JA p 44 on 7 April 2023. The District Manager simply referred the complaint back to the Original Post Office who now concocted a false safety issue of a narrow driveway, proof of which is JA p55. This falsehood was further exacerbated by the fact that the LPO (local Post Office) stated it "repeatedly" told the Petitioner that this was the reason but never did JA p73 via the USPS Salesforce messaging software.

[12] JA p44. District Manager acknowledge that delivery of oversized packages was indeed a mode of delivery extended for a "period of time." Acknowledged by the USPS to be over two years. This was a tacit admission of the applicability of POM 631.8's authority and the safety falsehood was an attempt to circumvent that regulation.

[13] JA p 73.

[14] JA p 55.

route. Both the PRC's Presiding Officer and the Respondent's brief minimalizes this changing of the rationale to a safety falsehood. The PRC Presiding Officer stated:

"Perhaps even more concerning is Edwards' documented difficulty in obtaining a clear answer from the Postal Service as to exactly why door delivery of oversized packages was discontinued."

and

"when Edwards tried to obtain an explanation from the Postal Service, he was given inconsistent reasons."[15]

The Respondent states of the Commission's rationale in supporting the USPS' discontinuation of oversized pack deliveries to the Petitioner's home for being over .5 mile from the route was reasonable and dismissed the safety falsehood as "notwithstanding the other reasons the Post Office may have given".[16] These excuses for the change in rationales are belied by the Respondent's own evidence submitted under discovery wherein the local Post Office double downed on the safety falsehood of a narrow driveway in a messaging application where the Local Post Office told the USPS District Office in April 2023:

"Although packages were previously delivered to the customer door by another carrier, management determined that the driveway was too narrow for a safe turnaround. LPO advised that this information has been repeatedly relayed to the customer."[17]

---

[15] JA p 152, 154.

[16] Respondent's Brief p 56-57.

[17] JA p 73. The Post Office's description of 'another carrier' appears to try and separate that Carrier's actions from the Post Office when in actuality that carrier represents the Post Office whether they knew or not as the carrier is an agent of the Post Office and is specifically detailed in POM 631.8 where the delivery is extended by the "Carrier or Manager".

Even if one could believe that the Local Post Office erroneously believed the driveway was too narrow for a safe turnaround the statement that this was "repeatedly relayed to the customer" is patently false. Then the Respondent says the process should end there for an individual as the PRC should only take complaints with "broad applicability".[18]

The Respondent does not provide any context for following rules and regulations or the when or why the Post Office can ignore them only that complaints under 39 USC 401(2) only applies if questioning adopting, amending, or repealing regulations. The full text of 39 USC 401(2) includes "as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service". This allows the Post Service to promulgate regulations and rules necessary to carry out all "functions" under all of the provisions under 3662(a) including 401(a), 403(c) and 404(a) and for the PRC to direct conformance with any of such regulations as necessary for the Postal Service to function. The POM is clearly necessary for the Postal Service to function.

The Respondent states that PRC Order 1327 in PRC Docket C2011-2 "considering a claim implicating the Postal Service's interpretation of its own regulations under 401(2)" that a regulation was "not necessary in the execution of the Postal Service's

---

[18] Respondent's Brief p 31.

functions". In that case the PRC disagreed with an interpretation of POM 631.451 not that the PRC didn't have authority over non-conformance. The PRC ironically adjudicated a case on interpretation of the POM not associated with "adopting, amending or repealing". In this case the Respondent doesn't express an opinion on whether Postal Service conformed with the POM only that it wasn't required to do so without any argument about POM 631.8's interpretation.

The Respondent states that citing 39 CFR 3022.2 from the Amicus brief:

 "the Commission's regulation does not support the notion that a complaint may be based on alleged noncompliance with *any* regulation that the Postal Service promulgates via an exercise of its general rule making authority."[19]

And yet 39 CFR 3022.2 states:

Any interested person (including a duly appointed officer of the Commission representing the interests of the general public) may file a written complaint with the Commission if that person believes that the Postal Service is not operating in conformance with:

(a) The provisions of 39 U.S.C. chapter 36, or 39 U.S.C. 101(d), 401(2), 403(c), 404a, or 601; or

(b) Any rule, order, or other regulatory requirement based on any of these statutory provisions.

This mimics 3662(a) in wording without the parenthetical concerning "is not operating in conformance with…. Any rule, order, or other regulatory requirement based on any of these statutory provisions."

---

[19] Respondent's Brief p 35.

The Respondent states that lack of the "final agency action" in 3662(a) indicates the PRC does not have authority to receive complaints on Postal Service's non-compliance with its own regulations.[20] However, the opposite is true. Appeal of final agency action is adjudicated at Federal Court level not the PRC as indicated in 39 USC 3663:

A person, including the Postal Service, adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission may, within 30 days after such order or decision becomes final, institute proceedings for review thereof by filing a petition in the United States Court of Appeals

The PRC has authority under 3662(a) to address the Postal Service non-conforming with its own regulations in the plain reading of the statute. Further the Respondent suggests that a final agency action is necessary "subject" to the Administrative Procedures Act to which the Postal Service is not generally subject. And later the Respondent later states explicitly that the review of Postal Service action under the APA was barred by Congress.[21] The Respondent ignores the plain language reading of the 3662(a) in that Congress authorized individuals to make complaints directly to the PRC for the USPS non-conforming with its own regulations, literally all of them "necessary" for the Postal Service to perform its functions. Further the Respondent quotes *Pontefract v. Federal Bureau of Prisons*, 2024 WL 5055838 (3rd

---

[20] Respondent's Brief p 36.
[21] Respondent's Brief p 42-43.

Cir Dec. 10 2024) that the 3rd Circuit concluded that claims against the Postal Service could not be brought under the APA.[22] It was decided that

" Claims against USPS agents solely challenge the quality and efficiency of the postal services provided to him. U.S.C. §§ 101(d)–(e) & 401(2)). Jurisdiction to hear such claims lies exclusively with the Postal Regulatory Commission (PRC)"

So, it follows that, per the Respondent's own case citation, the PRC has authority to address claims against the Postal Services' services under 401(2). It does not state that it only applies when questioning adopting, amending or repealing regulations but rather quality and efficiency of services delivered.

The Respondent makes a claim that the Petitioner found 565 Celestial Circle to be 91 feet over the one-half mile from the mailboxes "calculated by taking the Google Maps directions, converting the mileage for each individual step to feet, and then adding the steps to arrive at a total distance." This is a misstatement not supported by the record. As submitted in the Petitioner's Opening Brief before the PRC Docket #2023-6 Exhibit 10 a screen shot from Google Maps[23], one of two methods used by the USPS to measure distance was submitted. The screen shot showed the "detail" of how Google Maps measured the distance from the mailboxes to 565 Celestial Circle. It displayed 52 feet from the Mailboxes to a left turn on Celestial Circle, .3

---

[22] Respondent's Brief p 44.
[23] JA p 48.

miles from there to another left turn on Celestial Circle, .2 from there to a third left on Celestial Circle, then 39 feet to 565 Celestial Circle. The Petitioner did no conversions rather only displayed Google Maps measurements similarly used by the USPS. The USPS chose to ignore this detail in their own Discovery submission.[24] What is not in question is that 565 Celestial Circle is clearly outside one-half mile from the Carrier's route by Google Maps measurements.

The Respondent also alludes to the USPS' driving the distance[25] and presenting a picture of 565 Celestial Circle in windscreen with the odometer reading .5 mile short of the home. The picture could have been taken from the driveway but the USPS chose not to do so. The USPS later admitted they achieved .5 mile on the odometer before reaching 565 Celestial Circle.[26] What the Petitioner also argued was that while the picture showed the odometer reading .5 mile it is unknown how far before the picture was taken did the vehicle achieve .5 mile making this measurement by the USPS clearly over .5 mile. The Petitioner has always maintained that 565 Celestial Circle was over .5 mile by a very small amount. The Respondent further

---

[24] JA p 123. Had the USPS "clicked" the details tab below the distance to see how the distance was determined it would have seen that 565 Celestial Circle was outside .5 mile. However, in the light of the statement of the owner of 565 Celestial Circle that the Post Office told her that her home was over .5 mile and couldn't receive delivery of oversized packages this ignorance of true distance now seems self-serving.

[25] Respondent's Brief p 49.

[26] JA p 178, Footnote 21. The Respondent argued that the Petitioner, without evidence, stated the "3 or 4 feet" remaining to reach the residence would put the odometer over .5 mile. This statement ignores the plain fact that having already achieved .5 on the odometer at or **BEFORE** the picture being taken **ANY** further travel is **OVER .5 mile.** Of note the "3 or 4 feet" is also without evidence.

states that the "Commission explained that after recognizing that "each measurement system had an unknowable margin of error," the Presiding Officer concluded that the measurements were reasonable and not discriminatory.[27] The fact that both of the USPS measurements, as stated above, were over one-half mile the PRC's orders were clearly capricious and arbitrary in ignoring objective fact.

There are two additional points that counter the Respondent's argument that the PRC correctly determined that 565 Celestial Circle was not over one-half mile from the Carrier's Route. One - the statement of the owner of 565 Celestial Circle[28] that the local USPS told her home was over one-half mile and therefore couldn't receive oversize package delivery. Two – evidence the Petitioner submitted that when driving the full loop of Celestial Circle, the USPS carrier routinely exceeds driving over one-half mile from the Carrier Route[29] for deliveries making the USPS' adherence to one-half mile limitation moot.[30]

---

[27] US Government degree of error for GPS is 16 feet. GPS is a known component of Google Maps measurements. This makes the measurements in Google Maps Detail measuring feet from the route of travel to 565 Celestial Circle outside the margin of error. The Presiding Officer, the PRC and the USPS ignored this point as it obviated their arguments. https://www.gps.gov/gps-accuracy.
https://support.google.com/maps/answer/2839911?hl=en&co=GENIE.Platform%3DAndroid
[28] JA p 81, Letter submitted by the Owner of 565 Celestial Circle. Of particular note is the irony in the PRC's contention that in order to resume delivery to the Petitioner's Home it would have to stop delivery to 565 Celestial Circle is now moot as they have delivered to that home for over two years now invoking the same case under POM 631.8 for which the Petitioner has brought this case.
[29] JA p 46, 47-48.
[30] JA p 82-87.

The Respondent explains that the PRC's Presiding Officer and in PRC's subsequent orders did not impose a "reasonableness" standard[31] on the Petitioner stating that the statues the Petitioner invokes prohibits the USPS from making any "unreasonable discrimination among users" and any "undue or unreasonable by preference to such user." The Petitioner acknowledges the methods the USPS used in measuring distances are reasonable. What the Petitioner argues is that proving, by all evidence presented, all measurements were over one-half mile and that presenting them as otherwise is clearly unreasonable, arbitrary and capricious.

The Respondent echoes the PRC's argument in its' Order #7552 that it wasn't discriminatory to adhere to the one-half mile rule in PO-603 Rural Route Carrier's handbook paragraph 331.21. However, the Issue of Fact Two under Order PRC #6688 states:

"Whether postal management followed non-discriminatory processes in the discontinuation of door delivery of oversized packages to Complainant's residence."

This clearly invokes POM 631.8 Correction of Improper Mode of Delivery. However, the Presiding Officer dismisses the very process by which the USPS is to correct an improper mode of delivery by stating in his intermediate decision:

"the Commission has already determined that it lacks jurisdiction over Edwards' claims alleging violations of the POM. See Order No. 6688 at 6. So in my role as the

[31] Respondent's Brief p 53.

Presiding Officer exercising the authority delegated to me by the Commission, I cannot entertain such claims now."

Further the PRC, in reference to PO-603 paragraph 331.21's one-half mile rule, states:

"Ordering the Postal Service to defy its own regulations would contravene the objectives of 39 U.S.C. § 3662(c) and defy the boundaries of the Commission's powers as prescribed by Congress."[32]

The PRC argues that it cannot order the USPS to follow its own regulation even though POM 631.8 specifically states, and *Egger v USPS* (436 F. Supp.138 (W.D. Va. 1977)) reinforces:

"If the error is not detected and the customer is not notified within one (1) year of the date delivery is established or extended, the **improper service remains in place** unless the customer consents to the delivery mode change.

The Respondent argues that *Egger* only applies to the discrimination complaint[33] vice the precedent clearly presented in the USPS' delivery to 583 Brandon Ave in that decision, that even if in violation of USPS policy, delivery service was restored.

The Respondent argues that *Egger's* statement that service to 583 Brandon Ave was restored has been superseded by PO-603 Rural Route Carrier's Handbook without evidence or explanation.[34]  It does not. PO-603 also has no provision for Correction of an Improper Mode of Delivery while the POM explicitly does. POM 631.8 is still in effect and is a regulation explicitly stated in the Respondent's own reference to

---

[32] PRC Order 7552 p 32.
[33] Respondent's Brief p 56.
[34] Respondent's Brief p 56.

CFR 211.2 while the Rural Route Carrier's handbook PO-603 is not. By the Respondent's and the PRC's own argument it must follow the POM as a defined regulation under 39 USC 401(2) and 39 CFR 211.2 vice the PO-603.

**CONCLUSION**

Whether right or wrong USPS' delivery service to the Petitioner's home invoked Postal Operations Manual paragraph 631.8 which mandates the "improper service remains in place". The USPS should immediately resume delivery of oversized packages to the Petitioner's home.[35]

<div style="margin-left:50%">

SUBMITTED BY:
Mark Allan Edwards
208 Celtic Lane
Clayton, GA 30525
703-439-0949
wandyryr@aol.com
Pro Se

</div>

---

[35] The USPS safely delivered an oversized package to the Petitioner's home on 6 June 2026. USPS Tracking ID: 9339589745064747209803.

Certificate of Compliance

Pursuant to the federal Rules of Appellate Procedure 25, 27, 28, 29, and 32, I hereby certify this briefing complies with the aforementioned procedural rules and contains 4492 words according to Microsoft Word count.

/s/

Mark Allan Edwards

Pro Se

Certificate of Service

I, Mark Allan Edwards, certify that on 17 June 2026 electronically filed the foregoing with the Clerk of the Court for the US Court of Appeals for the District of Columbia by using appellate CM/ECF system. Counsel for the Respondent (Postal Regulatory Commission) are registered CM/ECF users and will be served by the same service. A copy of this briefing was mailed first class mail Clerk of the Court for the US Court of Appeals for the District of Columbia.

/s/

Mark Allan Edwards

Pro Se